BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant ARIAS-ORDONEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 07-00738 MMC |
|---|---|---|
| Plaintiff, | ) ) ) | **DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT** |
| v. | ) ) | |
| | ) ) ) | Date: April 2, 2008
Time: 2:30 p.m.
Court: Hon. Maxine M. Chesney |
| NOE ARIAS-ORDONEZ, | ) ) | |
| Defendant. | ) ) | |

TO: UNITED STATES OF AMERICA, PLAINTIFF; AND JOE RUSSONIELLO, UNITED STATES ATTORNEY; AND OWEN PETER MARTIKAN, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on April 2, 2008 at 2:30 p.m., before the Honorable Maxine M. Chesney, defendant Noe Arias-Ordonez (hereinafter "Mr. Arias-Ordonez") will move this Court to dismiss the indictment on grounds that the one prior deportation order at issue in this case was entered after constitutionally defective removal proceedings; therefore, it cannot serve as a predicate for a prosecution under 8 U.S.C. § 1326 in light of the Fifth Amendment.

DEF. MOT. TO DISM. INDICT.
No CR 07-00738 MMC

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Mr. Arias-Ordonez is charged in a one count indictment with a violation of 8 U.S.C. § 1326, illegal reentry after deportation. The indictment against Mr. Arias-Ordonez should be dismissed on the grounds that his deportation in 2003, as a matter of law, cannot constitute the prior lawful deportation order necessary for the government to establish the deportation element of a violation of 8 U.S.C. § 1326. Although the Immigration and Naturalization Service (hereafter "INS") had been given both his residential address and mailing address, Mr. Arias-Ordonez never received notice of his deportation hearing and was deported in absentia. Because Mr. Arias-Ordonez did not receive notice of the deportation hearing and because he was eligible for prehearing voluntary departure but was never told of such relief, the underlying in absentia order was fundamentally unfair. Under these circumstances, the underlying deportation order cannot serve as a predicate for a prosecution for illegal reentry. This Court should accordingly dismiss the indictment in this matter.

## STATEMENT OF FACTS

### A.  Mr. Arias-Ordonez' Background

Mr. Arias-Ordonez entered the United States as a young boy. *See* Declaration of Noe Arias-Ordonez (hereinafter "Arias Dec"), attached to Declaration of Elizabeth Falk Authenticating Documents (hereinafter, "Falk Auth. Dec") as Exhibit I, at ¶ 1. He believes he may have been 10 years old. *Id.; see also* Immunization Records, attached to Falk Auth. Dec. at Exhibit J. He attended elementary school in Sonoma, California and grew up there with his family. *See* Arias Dec, Exhibit I, at ¶ 2. He lived with his mother and father and brothers and sisters. *Id.* As a child, he participated in the Youth Conservation Corps and received recognition for his hard work and outstanding leadership. *See* Letter of Reference, Award and Certificate of Achievement, attached to Falk Auth. Dec. as Exhibit L. As an adult, Mr. Arias-Ordonez often had more than one job. Prior to his incarceration and at the time of his deportation, he was a general manager at one restaurant and an assistant

1  manager at another restaurant. *See* Arias Dec., Exhibit I at ¶ 3.  He had also recently received a
2  Certificate of Achievement from the Sonoma County Office of Education in recognition of his
3  achievement in Mathematics. *See* Certificate of Achievement, attached to Falk Auth. Dec. as Exhibit
4  M.
5       Mr. Arias-Ordonez met Christina Gonzalez, a United States citizen, who became his
6  girlfriend. *See* Arias Dec, Exhibit I at ¶ 4.  They had a child together, Marisa Sofia Gonzalez. *Id.*
7  Their daughter was born on May 8, 2000. *Id.*; *see also* Declaration of Paternity Statement attached to
8  Falk Auth. Dec. as Exhibit K.
9       In 2002, Mr. Arias-Ordonez was arrested and convicted of misdemeanor possession of a
10 controlled substance, a violation of California Health and Safety Code § 11377(a). *See* Criminal
11 Alien Processing Checklist attached to Falk Auth. Dec. as Exhibit A.  He was sentenced to serve six
12 months in custody. *Id.*  Near the end of his custodial term, an INS hold was placed on him. *See*
13 Immigration Detainer, attached to Falk Auth. Dec. as Exhibit B.  He was later picked up by the INS
14 and placed in removal proceedings. *See* Warrant for Arrest of Alien, attached to Falk Auth. Dec. as
15 Exhibit C.
16 **B.    Mr. Arias-Ordonez' Removal From the United States**
17      Sofia Sanchez-Ordonez, Mr. Arias-Ordonez' mother, bonded him out of INS custody. *See*
18 Immigration Bond, attached to Falk Auth. Dec. as Exhibit D.  She had borrowed the money from a
19 family friend. *See* Declaration of Sofia Sanchez Ordonez (hereinafter "Sanchez Dec."), attached to
20 Falk Auth. Dec. as Exhibit N at ¶ 13.  Mr. Arias-Ordonez knew that she had borrowed the money and
21 he told his mother that they would get the money back from INS after the hearing. *See* Arias Dec.,
22 Exhibit I at ¶ 9; Sanchez Dec., Exhibit N at ¶ 13.  He told his mother this because that is what the INS
23 told him. *See* Arias Dec., Exhibit I, at ¶ 9.
24      When he was in INS custody, Mr. Arias-Ordonez gave the INS his residential address. *Id.* at ¶
25 11.  Mrs. Sanchez-Ordonez also gave the INS the family's mailing address – P.O. Box 1060, Boyes
26

DEF. MOT. TO DISM. INDICT.
No CR 07-00738 MMC                           2

Hot Springs, California, 95416.  *See* Immigration Bond at Exhibit D; *see also* Sanchez Declaration, Exhibit N, at ¶ 12.  It appears however that the INS official who took the address wrote it as:  P.O. Box 1060, BOYES H SPITS, CA 95416.  *Id.*  This appears to have been later interpreted on another INS document as P.O. Box 1060, BOYS HOT SPRINTS, SONOMA, CA 95416.  *See* October 2, 2003 letter from Dept. of Homeland Security, attached to Falk Auth. Dec. as Exhibit E.

  Although both the aforementioned documents are in the A-file, neither are a Notice to Appear.  There are no documents noticing a hearing date and time in the A-file.  Mr. Arias-Ordonez had been given a Notice to Appear while in custody,  however on the form given to Mr. Arias-Ordonez, the time and date for the immigration hearing had not been set.  *See* Notice to Appear, attached to Falk Auth. Dec. as Exhibit F.  On the form, where time and date should have been entered, there was the phrase "to be set."  *Id.*  This is the only Notice to Appear that is present in Mr. Arias-Ordonez' A-file.  In addition, there is no indication in the A-file that proper notice of the hearing date was mailed – whether to either the residential address, the correct mailing address or an incorrect mailing address.

  On June 6, 2003, Mr. Arias-Ordonez was not present at his removal proceedings.  *See* IJ Order, attached to Falk Auth Dec. as Exhibit G; *see also* Transcription of Immigration Hearing, attached to Declaration of Amy Lucas attaching Transcription of Audio Recording and Audio File at Exhibits A and B, (filed herewith).  The immigration judge (hereafter 'IJ') noted that Mr. Arias-Ordonez had been personally served and marked the notice to appear as Exhibit 1.  *See id.* at 1.  The IJ also stated that the court had sent notice to the address given to the INS after Mr. Arias-Ordonez' had bonded out from service custody.  *Id.*  The IJ stated that notice of the hearing date was also sent to that address and marked the "bond-out notice" as Exhibit 2.  *Id.*  The notice of hearing that was sent to this address was marked into the record as Exhibit 3.  *Id.*  The IJ granted the government's motion to proceed in absentia and Mr. Arias-Ordonez was ordered removed to Mexico.  *Id.* at 1-2.

  It remains unclear exactly what documents the IJ marked as exhibits and entered into the record.  There are no documents in the A-file provided by the government that indicate notice of a

DEF. MOT. TO DISM. INDICT.
No CR 07-00738 MMC       3

specific hearing date and time and there are no documents that indicate that service of the notice of hearing was attempted.  Defense counsel has requested a copy of the court file from the government and has yet to receive it.  Counsel has also filed a FOIA request for the court file with the Office of the General Counsel of the Executive Office for Immigration Review.  There has been no response from General Counsel as of the filing date of this motion.

**C.     Legal Flaws in the Removal Proceedings**

First, Mr. Arias-Ordonez never received any notice of his hearing from the INS.  *See* Arias Dec., Exhibit I at ¶ 14-15; Sanchez Dec., Exhibit N at ¶ 14-15.  There is nothing indicating otherwise in his A-file.  Had Mr. Arias-Ordonez received notice of the hearing date, he would have been present at the hearing.  Mr. Arias-Ordonez' parents, at that time, were in the process of becoming legal permanent residents.  *See* Arias Dec., Exhibit I at ¶ 22.  Mr. Arias-Ordonez wanted to be able to become a legal permanent resident as well.  *Id.* at ¶ 13, 22.  He would have gone to the hearing because he believed that speaking with the judge would present him with a chance to become a legal permanent resident.  *Id.*  He also did not want his family to lose the bond money that they had borrowed from the family friend and he did not want to do anything that would jeopardize his parents' own chance at becoming legal permanent residents.  *Id.* at ¶ 22.

Second, at no time during the removal proceedings was Mr. Arias-Ordonez told that he was eligible for prehearing voluntary departure under 8 U.S.C. § 1229c(a)(1) for a period of 120 days.  *See* Declaration of Angela M. Bean, Esq. ("Bean Dec."), attached to Falk Auth. Dec. as Exhibit 0, at 4.  Yet, Mr. Arias-Ordonez was clearly eligible for prehearing voluntary departure as he met all the requirements:  Mr. Arias-Ordonez had never been convicted of an aggravated felony at the time of his deportation; he had never been previously granted voluntary departure; and Mr. Arias-Ordonez could have financed his way out of the United States.  *Id*.  Although Mr. Arias-Ordonez came from a poor family, his family had already paid a $5000 bond on his behalf; they would have paid for transportation costs and given him further assistance with any bail amount.  *See* Arias Dec., Exhibit I

at 24; Sanchez Dec., Exhibit N at ¶ 18. According to expert immigration law witness Angela Bean, Mr. Arias-Ordonez was a candidate for voluntary departure, and he should have been so advised by the INS. *See* Bean Dec., Exhibit 0 at ¶ 4; *see also* 8 U.S.C. §1229c (aliens not eligible for voluntary departure). Had Mr. Arias-Ordonez received proper notice of the deportation hearing date, he would have been present and would have been advised of his eligibility for prehearing voluntary departure. *See United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1052 (9th Cir. 2003)("The duty of the IJ to inform an alien of eligibility for relief is mandatory, and the failure to do so constitutes a violation of the alien's due process rights.")

## ARGUMENT

**I.     Mr. Arias-Ordonez Was Denied Due Process When He Was Deported in Absentia Without Receiving Proper Notice.**

A prior deportation order cannot serve as a predicate for a subsequent prosecution under 8 U.S.C. § 1326 when the deportation proceedings giving rise to the order were fundamentally flawed. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). If a defendant succeeds in a collateral attack on the predicate deportation order, the indictment against him must be dismissed. *See United States v. Andrade-Partida*, 110 F.Supp.2d 1260, 1272 (N.D. Cal. 2000). To prevail in a collateral attack on a prior deportation on grounds that the deportation proceedings were fundamentally flawed, the defendant must show that (1) he exhausted administrative remedies that were available to him; (2) the deportation proceedings at which the order was issued denied the opportunity for judicial review; (3) the entry of the order was fundamentally unfair. *See United States v. Pallares-Galan,* 359 F.3d 1088, 1095 (9th Cir. 2004)(citing 8 U.S.C. § 1326(d)). "An underlying removal order is 'fundamentally unfair' if (1) an alien's 'due process rights were violated by defects in the underlying deportation proceeding' and (2) 'he suffered prejudice as a result of the defects.'" *Id.* (citing *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000)). Here, Mr. Arias-Ordonez' collateral challenge to his 2003 deportation order meets each of these three prongs.

DEF. MOT. TO DISM. INDICT.
No CR 07-00738 MMC                                    5

**A.    The Entry of the Deportation Order Against Mr. Arias-Ordonez was Fundamentally Unfair** (8 U.S.C. § 1326(d)(3)).

1. Due Process

"Aliens facing deportation are entitled to due process under the Fifth Amendment to the United States Constitution, encompassing a full and fair hearing and notice of that hearing." *Dobrata v. INS*, 311 F.3d 1206, 1210 (9th Cir. 2002); *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997). At the time of Mr. Arias-Ordonez' removal proceedings, written notice was required to be given in person to the alien unless it was not practicable to do so and then notice may be accomplished by mail. *See* 8 U.S.C. § 1229(a) (West 2003). If an alien was not in custody and had provided an address to the Attorney General, then service by mail is presumptively sufficient where there is proof of an attempted delivery to the last address provided by the alien. *See Sembiring v. Gonzales*, 499 F.3d 981, 982-83 (9th Cir. 2007).

Here, Mr. Arias-Ordonez did not receive any notice of his hearing date and time either via personal service or via delivery via the United States mail. *See* Arias Dec., Exhibit I at ¶ 14-16; Sanchez Dec., Exhibit N at ¶ 14-15. Although there are copies of a notice in the A-file, in the area where the time and date of the hearing should be entered, there is the phrase "to be set." *See* Notice to Appear at Exhibit F. Although Mr. Arias-Ordonez signed this and acknowledged service of this Notice, the Notice did not in fact provide any notice as to the date and time of his hearing. *Id.* There is no other Notice in the A-file providing an actual date and time of the hearing. Because Mr. Arias-Ordonez did not receive notice as to the hearing date and time, the deportation order entered in absentia violated his due process rights.

2. Prejudice

To satisfy a showing of prejudice, an "alien does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004) (quoting

DEF. MOT. TO DISM. INDICT.
No CR 07-00738 MMC                     6

*United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)). Although the Ninth Circuit has not defined the term "plausible", "this standard would seem to encompass borderline cases, perhaps even where the equities are in equipoise. Stated differently, it seems fair to interpret this standard as granting defendants in illegal entry cases the benefit of the doubt, even if they have a borderline claim of prejudice, as long as they establish that their deportation proceeding was procedurally deficient." Wible, Brent S., *The Strange Afterlife of Section 212(c) Relief: Collateral Attacks on Deportation Orders in Prosecutions for Illegal Reentry After St. Cyr*, 19 GEO. IMMIGR. L.J. 455, 475 (Summer 2005). Thus, under applicable law, Mr. Arias-Ordonez **need not** show that he actually would have been granted relief, or even that there was a reasonable probability that he would have been granted relief. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001). A showing of plausible or possible granting of relief is sufficient.

Here, Mr. Arias-Ordonez was eligible for prehearing voluntary departure, pursuant to 8 U.S.C. § 1229(c)(1); had he been granted that relief, he would not have been deported. *See* Bean Dec., Exhibit O at ¶ 4. No INS official ever advised Mr. Arias-Ordonez that he was eligible for voluntary departure for a period of 120 days, which was relief from deportation. Given the fact that the deportation hearing was less than 120 days from Mr. Arias-Ordonez' release date, he could have met the requirement that he depart the United States within 120 days of the hearing. Moreover, Mr. Arias-Ordonez' circumstances in 2003 demonstrate that it was more than plausible that he would have obtained voluntary departure had he known about that form of relief and applied for it. *See* Bean Dec., Exhibit O at ¶ 6. Mr. Arias-Ordonez had the financial resources to finance his trip out of the United States via family and family friends, was not an aggravated felon and had not previously availed himself of voluntary departure. *See* Bean Dec., Exhibit O at ¶ 4; Arias Dec., Exhibit I at ¶ 24.

Mr. Arias-Ordonez' declaration that he would have sought voluntary departure had he known about it is credible. In Mr. Arias-Ordonez' case, a grant of voluntary departure would have preserved

his ability to return to the United States legally. This was extremely important to Mr. Arias-Ordonez because he wanted to do everything he could to adjust his status like his parents were attempting to do at that time and continue to live in the United States to be with his family including Marisa, his U.S. citizen daughter. *See* Arias Dec., Exhibit I at ¶ 22. Mr. Arias-Ordonez thus suffered substantial prejudice since he met the requirements of voluntary departure and it is plausible that he would he have applied for and received voluntary departure had he been properly advised that he was eligible for it.

Numerous Ninth Circuit panels have found an alien proved prejudice on a collateral attack in a prosecution under 8 U.S.C. § 1326 when they were denied their right to apply for voluntary departure. *See, e.g., United States v. Basulto-Pulido*, 219 Fed. Appx. 717, 719 (9th Cir. 2007)(district court erred in denying motion to dismiss indictment, because IJ failed to advise defendant about right to voluntary departure; reversing district court's denial of motion); *United States v. Nungaray Rubalcaba*, 228 Fed. Appx. 436, 438 (9th Cir. 2007)(district court erred in denying motion to dismiss indictment, because IJ failed to advise defendant about his eligibility for voluntary departure; reversing district court's denial of motion); *United States v. Alonza-Mendoza*, 239 Fed. Appx. 330 (9th Cir. 2007)(holding that defendant's due process rights were violated when the IJ did not individually inform him of his right to fast-track voluntary departure under 8 U.S.C. § 1229c(a) and his right to appeal).

Here, the failure of the Immigration Judge to advise Mr. Arias-Ordonez of his right to voluntary departure rests in the failure of the INS to issue proper notice of the deportation hearing to Mr. Arias-Ordonez. Had Mr. Arias-Ordonez known of the date and time, he would have shown up to apply for this important relief. The failure of the INS to properly notice the hearing date and time accordingly prejudiced Mr. Arias-Ordonez.

\\

**B.  Mr. Arias-Ordonez Should Be Deemed to Be Exempted from the Exhaustion Bar Because He Never Received Notice of His Deportation Hearing and He Was Deported Hours after He Was Arrested, without Access to an Immigration Judge.**
(8 U.S.C. § 1326(d)(1))

Title 8 U.S.C. § 1326(d)(1) requires that an alien exhaust all administrative remedies before a collateral attack will succeed.  Here, however, although the INS had both the residential and mailing addresses for Mr. Arias-Ordonez, Mr. Arias-Ordonez never received notice of his deportation hearing.  *See* Arias Dec. at Exhibit J.  Months after the deportation hearing had been held and a deportation order entered, Mr. Arias-Ordonez received the first and only letter he had received from the INS up to that point.  *See* October 2, 2003 letter at Exhibit E.  The letter instructed him to present himself to the INS on November 4, 2003.  *Id.*  When he did so, the INS officials would not permit him to enter the building.  *See* Arias Dec., Exhibit I at ¶ 17.  He went home and called the INS to ask how he should present himself if they would not let him in the building.  *Id.*  The INS told him to come back two days later on November 6, 2003.  *Id.* at ¶ 18.; *see also* DACS Case Comments from A-File, attached to Supplement to Falk Authentication Dec. as Exhibit P.  Mr. Arias-Ordonez did so – he turned himself in and was later termed "stupid" by INS officials for doing so.  *Id.* at ¶ 20-21.; *see also* DCAS Notes, Exhibit P.

Upon turning himself in, Mr. Arias-Ordonez was immediately handcuffed and arrested.  *Id.*  He did not see a judge and when he asked about court, he was told that he was going to Mexico.  *Id.*  Hours later on that same day, he was deported.  *See* Warrant of Removal, attached to Falk Auth. Dec. as Exhibit H; *see also* Supp. Falk Authentication Dec., Exhibit P.

In the hours between his arrest and his deportation, Mr. Arias-Ordonez had neither the opportunity nor the ability to file a motion to reopen the deportation hearing based on improper notice.  He was not familiar with the appeal process; he had not been represented by counsel at any stage of his removal proceedings.  *Cf. United States v. Hinojosa-Perez*, 206 F.3d 832 (9th Cir. 2000) (defendant deemed to have failed to exhaust administrative remedies where defendant had eight days

DEF. MOT. TO DISM. INDICT.
No CR 07-00738 MMC                                                    9

between arrest and deportation and failed to file motion to reopen where defendant was familiar with appeals process and had successfully used it to his advantage in same proceedings; and had benefitted from services of attorney at original deportation hearing). As Mr. Arias-Ordonez could not possibly have exhausted his administrative remedies when he was provided no opportunity to see a judge or otherwise stop the deportation process on November 6, 2003, he should be deemed to be exempted **from the exhaustion bar.**

   **B.**  **Mr. Arias-Ordonez was Also Deprived of An Opportunity for Judicial Review** (8 U.S.C. ¶ 1326(d)(2)).

  Although federal courts "regularly grant emergency relief against arbitrary rulings in immigration procedures . . ." a petitioner must first exhaust his administrative appeals. *Hinojosa-Perez*, 206 F.3d at 836 (quoting *Zapon v. United States Dept of Justice*, 53 F.3d 283, 285 (9th Cir 1995)). Because Mr. Arias-Ordonez had neither the time nor the ability to exhaust his administrative remedies, he was also deprived of an opportunity for judicial review. Courts in the Ninth Circuit have routinely held that an alien who successfully meets the first prong of a collateral attack (regarding exhaustion of administrative remedies) also meets the second prong's requirements that the alien was denied an opportunity for judicial review. *See, e.g, Pallares-Galan*, 359 F.3d at 1098 ("For the same reasons [as those stated to find that Pallares' waiver of appeal was procedurally defective] we hold that Pallares was deprived of a meaningful opportunity for judicial review"); *see also Ubaldo-Figueroa*, 364 F.3d at 1050; (holding same); *see also Andrade-Partida*, 110 F. Supp at 1271 (finding that the IJ's failure to advise of section 212(c) relief deprived the alien of judicial review).

  An alien who is deported the same day he is arrested, against his will, without the opportunity to present himself to the Immigration Judge and plead his case has been denied the opportunity for judicial review. Here, Mr. Arias-Ordonez was deported hours after he turned himself in to the INS. He failed to receive adequate notice of the date and time of his immigration hearing, which precluded him from presenting and arguing defenses to deportation that he had. The INS' failure to mail Mr.

Arias-Ordonez notice constituted a breakdown of the lawful deportation process, and resulted in a complete denial of Mr. Arias-Ordonez' right to judicial review as an undocumented person. Mr. Arias-Ordonez accordingly meets the second prong of the collateral attack requirement.

As Mr. Arias-Ordonez meets all three prongs of the collateral attack required under 8 U.S.C. § 1326, his motion to dismiss should be granted, and the indictment should be dismissed. By failing to mail him proper notice of the deportation time, date and location, the INS effectively denied Mr. Arias-Ordonez the opportunity to exhaust administrative remedies, and also denied him the opportunity for judicial review. This failure constituted a defect in the deportation process, and denied Mr. Arias-Ordonez the due process to which he was entitled as an alien facing deportation. Moreover, Mr. Arias-Ordonez had a lawful remedy to request at that hearing. He was both eligible for voluntary departure, and had a plausible claim to obtaining this relief. The INS' failure to notify Mr. Arias-Ordonez of the hearing accordingly prejudiced him, as the result of the deportation hearing could have been far different had Mr. Arias-Ordonez appeared, been informed of his right to voluntary departure, and applied for same.

## CONCLUSION

For the aforementioned reasons, Mr. Arias-Ordonez respectfully submits that he has met the requirements of a collateral attack listed in 8 U.S.C. § 1326(d). He requests this Court to dismiss the indictment in the instant case.

Dated: March 5, 2008

                                            Respectfully submitted,

                                            BARRY J. PORTMAN
                                            Federal Public Defender

                                            /S/

                                            ELIZABETH M. FALK
                                            Assistant Federal Public Defender