JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

OWEN P. MARTIKAN (CABN 177104)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7241
    Facsimile: (415) 436-7234
    E-Mail: owen.martikan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>   v. <br> NOE ARIAS-ORDONEZ, <br>     Defendant. | No. CR 07-0738 MMC <br><br> **THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Date: April 2, 2008 <br> Time: 2:30pm <br> Place: Courtroom 7, 19th Floor |

**INTRODUCTION**

Defendant Noe Arias-Ordonez claims that the Court should dismiss the indictment in this illegal re-entry by a previously deported alien case under 8 U.S.C. § 1326 because the Immigration Court allegedly failed to notify him of the date and time of his first deportation hearing in 2003. The Court should deny this motion because its premise is false: the Immigration Court did notify Arias-Ordonez of the date and time of his deportation hearing, he simply failed to show up.

USA'S OPPOSITION TO DEF'S MOTION TO DISMISS
CR 07-0738 MMC

1

The Court has two further reasons to deny Arias-Ordonez's motion.  Arias-Ordonez failed to exhaust administrative remedies after missing his deportation hearing, and he has failed to show that he was improperly deprived of the opportunity for judicial review.

## FACTUAL BACKGROUND

As Arias-Ordonez acknowledges in his motion, he is a Mexican national who is in the United States illegally.  He was convicted of a misdemeanor drug offense in 2002 and sentenced to six months in the Sonoma County jail.  Falk Decl., Exhibits A & B.  At the end of Arias-Ordonez's jail term, immigration officials took him into their custody and began deportation proceedings against him.  *Id*., Exhibit C.  Arias-Ordonez's mother bailed him out of ICE custody on March 5, 2003, and informed ICE officials that her mailing address, and the address of Arias-Ordonez, was P.O. Box 1060, Boyes Hot Springs, California 95416.

On March 13, 2003, the clerk of the Immigration Court sent Arias-Ordonez a Notice of Hearing in Removal Proceedings via regular mail to the mailing address that both Arias-Ordonez and his mother had provided.  Martikan Decl., Exhibit A.  The notice provided that Arias-Ordonez's hearing would take place on June 6, 2003 at 1:30pm, at 550 Kearny Street, 7th Floor, Room 703, San Francisco, California 94108.  Arias-Ordonez does not dispute that the hearing took place at the noticed time and place, and that he did not show up for it.

The Immigration Judge noted Arias-Ordonez's non-appearance, noted that he had been served with a notice of the hearing, and ordered him removed *in absentia*.  Lucas Decl., Exhibit A.  On October 2, 2003, ICE sent Arias-Ordonez a notice informing him that based on the Immigration Judge's removal order, he would be deported to Mexico on November 4, 2003, with transportation to be provided by the United States Government.  Falk Decl., Exhibit E.  Arias-Ordonez's mother signed for this letter.  *Id*.  On the appointed day, Arias-Ordonez presented himself to an ICE deportation officer and was

1  deported to Mexico.  Arias-Ordonez Decl., ¶¶17-21.

2  Since then, Arias-Ordonez illegally re-entered the United States at least six times,
3  as he was deported at least an additional five times, and was then found in the United
4  States again, leading to the current case.  Falk Decl., Exhibit A.  Arias-Ordonez admits
5  that he did not challenge his first deportation either administratively or judicially, and
6  provides no evidence that he ever challenged any of his subsequent deportations.

## ARGUMENT AND AUTHORITIES

8  The statute that criminalizes illegal re-entry into the United States by a previously
9  deported alien, 8 U.S.C. § 1326, limits the ability of an alien to collaterally attack the
10 deportation order that underlies his or her criminal prosecution.  Under 8 U.S.C.
11 §1326(d), an alien may not challenge the validity of a deportation order that provides the
12 basis for prosecution unless the alien shows (1) exhaustion of administrative remedies; (2)
13 that the challenged deportation proceedings improperly deprived the alien of the
14 opportunity for judicial review; and that (3) the entry of the deportation order was
15 fundamentally unfair.

16 For the reasons set forth below, the Court should find that Arias-Ordonez has
17 failed to meet this standard.

### I.   THE IMMIGRATION COURT SENT ARIAS-ORDONEZ NOTICE OF HIS DEPORTATION HEARING.

20 The premise supporting Arias-Ordonez's motion is his allegation that he never
21 received notice of his deportation hearing, and thus never had the opportunity to show up
22 and request voluntary departure.  But this premise is flawed, because the Immigration
23 Court sent Arias-Ordonez notice of the date and time for his deportation hearing at the
24 mailing address that Arias-Ordonez and his mother had provided.  Martikan Decl.,
25 Exhibit A.  As Arias-Ordonez acknowledges in his motion, service of a hearing notice by
26 mail is statutorily sufficient under 8 U.S.C. § 1229(a), and the Ninth Circuit has held that
27 written notice of a deportation hearing, served by mail at the last address provided by the

USA'S OPPOSITION TO DEF'S MOTION TO DISMISS
CR 07-0738 MMC

3

1  alien, is presumptively sufficient notice.  Defendant's Brief at 6 (*citing Sembiring v.*
2  *Gonzales*, 499 F.3d 981, 982-83 (9th Cir. 2007)).

3  Given this evidence of notice, much of Arias-Ordonez's argument is beside the
4  point.  Arias-Ordonez notes, for example, that some of the transcriptions of his address on
5  various ICE forms were incorrect (for example, replacing the word "Springs" with
6  "Sprint" or "Spit").  Defendant's Brief at 3.  But the notice of hearing contains the correct
7  address.

8  Also, Arias-Ordonez claims that he suffered prejudice from his failure to appear
9  because he missed the opportunity to be advised of his potential eligibility for voluntary
10 departure, assuming that he would have qualified for and been granted this relief.
11 Defendant's Brief at 6-8.  But this argument assumes that Arias-Ordonez was denied
12 notice of his deportation, which in turn deprived him of the opportunity to be advised of
13 and request voluntary departure.  Given the evidence in the record that the Immigration
14 Court did in fact notify Arias-Ordonez of his upcoming hearing, his claim of prejudice
15 carries no weight.

16 Finally, Arias-Ordonez claims that he "has requested a copy of the [Immigration]
17 Court file from the government and has yet to receive it."  Defendant's Brief at 4.  If by
18 "the government" Arias-Ordonez is referring to this office, then this claim is incorrect.
19 He has never requested Immigration Court files from this office, and the United States
20 only ordered the Immigration Court files after Arias-Ordonez raised the issue for the first
21 time in his motion.  When those files arrived from storage in Virginia, on March 14,
22 2008, the United States immediately produced a copy to Arias-Ordonez's counsel, via
23 hand delivery.  Martikan Decl., ¶3.

24 The Court should reject Arias-Ordonez's claim that the Immigration Court failed
25 to notify him of his deportation hearing, and that he suffered prejudice because of it.
26 ///
27 ///
28

USA'S OPPOSITION TO DEF'S MOTION TO DISMISS
CR 07-0738 MMC

## II. THE COURT SHOULD NOT EXCUSE ARIAS-ORDONEZ FROM HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

To challenge his 2003 deportation, Arias-Ordonez must show that he exhausted any administrative remedies that were available to seek relief against the deportation order. 8 U.S.C. § 1326(d)(1). Arias-Ordonez admits that he failed to pursue any administrative remedies, but claims that the Court should excuse him because he was allegedly deported to Mexico before he could object. Defendant's Brief at 9.

The evidence in this case directly contradicts this argument. Arias-Ordonez was bailed out of ICE custody by his mother on March 5, 2003. Falk Decl., Exhibit D. He received notice from ICE on October 2, 2003 that as a result of his deportation hearing, he would be deported to Mexico on November 4, 2003. *Id*., Exhibit E. During the eight months between his release from custody and his deportation to Mexico, Arias-Ordonez never once inquired about his deportation hearing, despite his supposed interest in contesting his deportation. Even after Arias-Ordonez received the October 2, 2003 letter referencing a deportation hearing that he had obviously missed, and stating that he would be transported to Mexico on November 4 courtesy of the United States government (*see* Falk Decl., Exhibit E), Arias-Ordonez still failed to take any action to challenge the deportation order and simply showed up to be deported.

The Seventh Circuit has held that an alien cannot avoid his duty to exhaust administrative remedies before collaterally challenging a prior deportation even if the deportation was expedited, because aliens have administrative recourse to challenge expedited removals. *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1019 (7th Cir. 2006). Similarly, Arias-Ordonez cannot claim that he should be excused from the administrative exhaustion requirements because he had no time to pursue them. Indeed, it was only after Arias-Ordonez had shown up to be transported to the border that he ran out of time to challenge his deportation. For the eight preceding months, he had done nothing. Given Arias-Ordonez's stated desire to remain in this country legally, he should

USA'S OPPOSITION TO DEF'S MOTION TO DISMISS
CR 07-0738 MMC

have at least spoken to an immigration lawyer or an immigration aid clinic.

The Court should find that Arias-Ordonez has failed to meet the requirement in 8 U.S.C. § 1326(d)(1) that he exhaust his administrative remedies before collaterally attacking a prior deportation order.

### III. ARIAS-ORDONEZ WAS NOT DEPRIVED OF THE OPPORTUNITY FOR JUDICIAL REVIEW.

To collaterally attack his first deportation, Arias-Ordonez must show that the deportation proceedings improperly deprived him of the opportunity for judicial review. Rather than present evidence on this point, Arias-Ordonez argues that this prong of the three-part test in section 1326(d) is no different from the exhaustion of administrative remedies prong, and that by meeting one prong he has met both. Defendant's brief at 10.

Putting aside for the moment whether Arias-Ordonez has met the exhaustion prong, a point that the United States disputes, the Court should reject Arias-Ordonez's attempt to conflate two parts of a three-part test. In the two Ninth Circuit cases and the one Northern District case that Arias-Ordonez relies on to merge the administrative exhaustion and judicial review prongs, the Immigration Judge made an affirmative error – either by failing to advise an alien of his or her rights or by failing to clarify an alien's ambiguous answer – that left the aliens confused about their appeal rights. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1098 (9th Cir. 2004); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004); *United States v. Andrade Partida*, 110 F.Supp.2d 1260, 1271 (N.D. Ca. 2000).

This case is different because the Immigration Judge made no such error. Moreover, the Ninth Circuit has held that even if an alien has failed to receive notice of a deportation hearing, the alien has both administrative and judicial remedies to challenge the deportation. In *Zapon v. U.S. Dept. of Justice*, 53 F.3d 283, 285 (9th Cir. 1995), the Ninth Circuit noted that an alien who was deported *in absentia* because he failed to receive notice of the deportation hearing could automatically stay deportation by filing a

1 motion to reopen. This is an administrative remedy that Arias-Ordonez failed to pursue.
2 The Ninth Circuit also noted that "federal courts regularly grant emergency relief against
3 arbitrary rulings in immigration procedures. . . ." *Id*. This is a judicial remedy that Arias-
4 Ordonez also failed to pursue.[1] These separate remedies do not depend on or substitute
5 for one another. And neither was improperly foreclosed to Arias-Ordonez based on any
6 action by the Immigration Court or ICE officials.
7     Finally, Arias-Ordonez was not without judicial remedies to contest his
8 deportation even after he was deported to Mexico. The Ninth Circuit held in *Walters v.*
9 *Reno*, 145 F.3d 1032, 1050-51 (9th Cir. 1998) that an alien could sue from outside the
10 United States to contest his removal, and the Court had the jurisdiction to order plaintiffs
11 to be paroled into the United States to pursue their rights. *Id*.
12     The Court should reject Arias-Ordonez's claim that the deportation hearing
13 improperly deprived him of the opportunity for judicial review.

## CONCLUSION

15     Defendant Arias-Ordonez has failed to satisfy the three-part test that is a
16 prerequisite to his collateral attack. The Immigration Court properly sent notice of Arias-
17 Ordonez's deportation hearing to the address that Arias-Ordonez provided. And during
18 the eight months between his release from detention and his deportation to Mexico, Arias-
19 Ordonez did nothing to protect his rights. The Court should deny his motion to dismiss.

21 DATED: March 19, 2008          Respectfully Submitted,

22                               JOSEPH P. RUSSONIELLO
                                 United States Attorney

25                                  /s/ Owen Martikan
                                 OWEN P. MARTIKAN
                                 Assistant United States Attorney

---

[1] Though the 2005 REAL-ID Act restricted aliens' ability to file habeas corpus petitions in the district courts, this avenue was still available to Arias-Ordonez in 2003.

USA'S OPPOSITION TO DEF'S MOTION TO DISMISS
CR 07-0738 MMC

7