1  BARRY J. PORTMAN
   Federal Public Defender
2  ELIZABETH M. FALK
   Assistant Federal Public Defender
3  450 Golden Gate Avenue
   San Francisco, CA  94102
4  Telephone:  (415) 436-7700

5  Counsel for Defendant ARIAS-ORDONEZ

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10 UNITED STATES OF AMERICA,              )   No. CR 07-00738 MMC
                                          )
11              Plaintiff,                 )   **DEFENDANT'S REPLY TO**
                                          )   **GOVERNMENT'S OPPOSITION TO**
12                                         )   **MOTION TO DISMISS INDICTMENT**
        v.                                 )
13                                         )   Date:   April 2, 2008
                                          )   Time:   2:30 p.m.
14                                         )   Court: Hon. Maxine M. Chesney
   NOE ARIAS-ORDONEZ,                     )
15                                         )
                Defendant.                 )
16 _____)

17                           **INTRODUCTION**

18         Without legal support, the government makes numerous arguments in its Opposition to

19 Defendant's Motion to Dismiss that are without merit.  First, unless the government has further

20 discovery that has yet to be disclosed,[1] the government cannot accurately state that it has provided

21  _____

22         [1]   Contrary to the government's recollection, defense counsel, in a voicemail message,
   notified the government of the basis of the Motion to Dismiss the week of February 18, 2008.  At
23 that time, defense counsel specifically requested any and all information regarding Mr. Arias-
   Ordonez that could possibly bear on the notice issue, separate and apart from the already disclosed
24 A-file.  After receiving no response from the government, defense counsel filed a FOIA request on
   March 3, 2008 with the Office of the General Counsel of the Executive Office for Immigration
25 Review.  *See* attached Exhibit AA, Declaration of Elizabeth Falk.  As of the date of the filing of
   defendant's initial motion, the government had not disclosed the IJ's court file.  *See* Govt. Opp. at
26 4:21-23.

   DEF. REPLY TO GOVT. OPP.
   No CR 07-00738 MMC

the Court with conclusive proof that Mr. Arias-Ordonez was actually served; the Notice provided is not the end of the due process test.   Service by mail is only *presumptively* effective if the address was accurate; here, the address was inaccurate.  Moreover, even if applicable, the presumption that Mr. Arias-Ordonez was served has been rebutted by Mr. Arias-Ordonez with credible evidence.  This Court should find that Mr. Arias-Ordonez' due process rights were violated when he failed to receive notice of the deportation hearing; that he was prejudiced by that defect, and accordingly meets the collateral attack requirement under 8 U.S.C. § 1326(d)(3).

The government's responsive argument that Mr. Arias-Ordonez does not meet the requirements of 8 U.S.C. § 1326(d)(1-2) because he 1) failed to exhaust administrative remedies and 2) was not deprived any opportunity for judicial review is also flawed, as Mr. Arias-Ordonez was deported hours after he self-surrendered, and had no opportunity to apply for administrative remedies or receive any sort of judicial process. Because the entry of the deportation order was fundamentally unfair and because Mr. Arias-Ordonez should be deemed to be exempted from the exhaustion bar, Mr. Arias-Ordonez meets the requirements for a collateral attack under 8 U.S.C. § 1326(d)(1-3). This Court should accordingly grant his Motion to Dismiss.

**ARGUMENT**

I.    **MR. ARIAS-ORDONEZ' DUE PROCESS RIGHTS WERE VIOLATED BY THE DEPORTATION PROCESS BECAUSE HE DID NOT RECEIVE PROPER NOTICE OF THE DEPORTATION HEARING DATE**

A.    **At Most, the Notice Supplied by the Government Creates a Rebuttable Presumption that Mr. Arias-Ordonez Was Served, But Does Not Constitute Concrete Proof that He Was Actually Served**

Post IIRIRA, the INS is no longer required to send a notice of hearing via certified mail.  *See Sembiring v. Gonzales*, 499 F.3d 981, 985 (9th Cir. 2007).  Instead, pursuant to 8 U.S.C. § 1229(a)(1), regular first class mail is permitted to be used.  *Id.*  Service by regular first class mail is presumptively

1    sufficient where there is proof of an attempted delivery to the last address provided by the alien. *Id.* at

2    982-83. Here, the government provides the Court with a Notice of Hearing addressed to Mr. Arias-

3    Ordonez on which appears a certificate of service indicating that the initialee had served a copy of the

4    Notice by mail to the 'Alien' and to the INS. *See* Notice of Hearing, attached to Gov. Oppn.,

5    Martikan Dec. as Exhibit A.  However, this does not prove that the Notice was *actually* sent to Mr.

6    Arias-Ordonez.[2]  The government cannot possibly know whether "the Immigration Court *did in fact*

7    notify Arias-Ordonez of his upcoming hearing" (*see* Government's Opposition at 4:13-15 (emphases

8    added); 1:25-27) or that it was "the *clerk* of the Immigration Court [who] sent Arias-Ordonez a Notice

9    of Hearing in Removal Proceedings via *regular mail* . . . ." *See* Government's Opposition at 2:14-16

10   (emphases added).

11        Just as the government does not know who initialed the certificate of service, the government

12   cannot know whether the notice was sent regular or certified mail or, *in fact*, that it was sent at all.

13   The government has submitted no proof of actual service.  The most the government can legally argue

14   is that *if* the address on the Notice is correct and *if* the Notice was indeed mailed, service by mail is

15   *presumptively* effective. *See Sembiring v. Gonzales*, 499 F.3d 981, 986 (9th Cir. 2007).  Even if

16   applicable, this presumption is not a "strong presumption" and can be rebutted by the alien. *Id.*

17        **B.    The  Address on the Notice of Hearing Is Incorrect and Thus, the Presumption of
              Service by Mail Is Not Applicable.**

18

19        In its Opposition, the government erroneously states that "the notice of hearing contains the

     correct address."  Although addressed to a Mr. Arias-Ordonez, the Notice has the wrong address;

20

     rather than Boyes Hot Springs, which is the city where Mr. Arias-Ordonez lived, the city is written as

21

     Boyes Hotspring. *Id.*  Regarding the likelihood of actual receipt, the United States Postmaster of the

22

23

24        [2] The certificate of service similarly indicates that the Notice was mailed to the INS.
     However, this Notice is not in Mr. Arias-Ordonez' A-file.  Had the INS actually received Mr. Arias-
25   Ordonez' Notice, the document should have been present in the defendant's A-file. As with the
     Notice allegedly sent to Mr. Arias-Ordonez, there is no indication other than the certificate of service
26   that the Notice was, in fact, ever sent to either Mr. Arias-Ordonez or the INS.

1   Boyes Hot Springs, California Post Office has stated, that even if the address was clearly printed on

2   an envelope, there was only an 85% chance that the post office would have received the letter. *See*

3   Declaration of Christine Miles, attached hereto as Exhibit BB at 2:9-11.  If delivery via regular mail

4   was indeed attempted and this incorrect address was utilized, service was not effected in a proper

5   manner and no presumption of receipt should apply.  *See Terezov v. Gonzales*, 480 F.3d 558, 565 (7th

6   Cir. 2007) (cited favorably in *Sembiring*, 499 F.3d at 988).   Because no presumption is triggered,

7   this Court should find that Mr. Arias-Ordonez' declaration regarding nonreceipt is sufficient to prove

8   that he never received notice of the hearing, and that his due process rights were violated.

9        **C.    Even if the Presumption Is Applied, the Declarations and Evidence Submitted to**
         **this Court in Support of the Motion to Dismiss Are Sufficient to Overcome the**
10       **Presumption of Service by Regular Mail.**

11           Pre-IIRIRA, when the INS was required to utilize certified mail, proof of attempted delivery

12   and notification of certified mail triggered " a strong presumption of effective service." *Sembiring*,

13   499 F.3d at 986.  This strong presumption is no longer applicable now that there is no requirement to

14   use certified mail. *Id.* (strong presumption "clearly has no application under a regular mail regime.")

15   Less evidence is now required to overcome the presumption of effective service via regular mail; this

16   reasoning is based upon the common experience that while "[m]ost letters are delivered . . . some

17   aren't." *Id.* (quoting *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2006) (inner quotations omitted)).

18   The test for determining when the presumption of effective service has been rebutted is "practical and

19   commonsensical, rather than rigidly formulaic." *Id.* at 988.

20           In *Sembiring*, petitioner had overstayed her visa and later applied for asylum.  499 F.3d at 983.

21   After filing her application, the INS initiated removal proceedings against her, and petitioner was

22   personally served with a notice to appear at a hearing before an IJ. *Id.*  The INS thereafter

23   rescheduled her hearing to an earlier date. *Id.*  The administrative record on appeal contained 1) the

24   notice to appear, 2) the rescheduling notice and 3) an envelope that based on its placement in the

25   record was assumed to have been the envelope used to mail the notice. *Id.*  Although a return address

26

1   was discernible, there was "no indication whatsoever of a name or address of an addressee anywhere

2   on the envelope." *Id.*  The petitioner did not appear at the rescheduled hearing and she was ordered

3   deported in absentia. *Id.* at 984.  When petitioner appeared, *pro se*, on the original hearing date (six

4   days after a deportation order had been entered) she was told that she had been ordered deported. *Id.*

5   Eight days later, the petitioner submitted a letter stating that she had never received the notice

6   rescheduling the hearing and requested a motion to reopen. *Id.*   The IJ denied the petitioner's request

7   to reopen and the BIA upheld the denial. *Id* at 984-85.

8           On appeal, the Ninth Circuit initially determined that because the "notice to appear that

9   rescheduled her hearing was sent via regular mail (if it was sent at all), . . . the weaker presumption . .

10  . applies . . . ." *Id.* at 987.  The court held that the petitioner had successfully rebutted the

11  presumption where she had initiated the proceeding to obtain a benefit "thereby bringing herself to the

12  attention of the government," and noted that she had appeared on her originally scheduled hearing

13  date. *Id.* at 988-989.  The court also found that the government's evidence that the rescheduling

14  notice was *actually* mailed was weak based in part on the lack of any indication of an addressee's

15  name or address on the front of the envelope. *Id.* at 989-90.

16          In *Cao v. Mukasey*, 2008 WL 194921 (9th Cir. 2008), the Ninth Circuit remanded to the BIA

17  where the BIA had not properly considered relevant factors regarding a claim of lack of notice,

18  including "the sufficiency of the government's evidence supporting the government's contention that

19  the notice of hearing was mailed to [petitioner's] address; and whether [petitioner] had a motive to

20  avoid the hearing, given her potential eligibility for asylum, withholding of removal and protection

21  under the Convention Against Torture, and the $5,000 bond she paid." *Id.* at *1.  There, as here,

22  petitioner had produced evidence that the factors involved in her case made it more likely than not

23  that she would have shown up for her hearing had she known about it – and that petitioner had

24  sufficient motivation to attend the hearing, as was true with Mr. Arias-Ordonez in this case.

25          Here, the government has provided no proof of actual mailing; moreover, the address on the

26

1    Notice of Hearing is not accurate.  Regarding the likelihood of actual receipt with the address error,

2    the United States Postmaster of the Boyes Hot Springs, California Post Office has stated, that even if

3    the address listed was clearly printed on an envelope, there was only an 85% chance that the post

4    office would have received the letter.  *See* Exhibit BB at 2:9-11.  In contrast to this weak evidence of

5    effective mailing and service, Mr. Arias-Ordonez has provided credible evidence to the Court that 1)

6    he did not receive the Notice of Hearing, 2) had he received said Notice, he would have shown up to

7    the hearing as required.  Independent evidence from the INS in the form of printout detailing the

8    events of November, 2003 shows that Mr. Arias-Ordonez and his mother voluntarily went to INS

9    once they received actual notice of deficiency, and that Mr. Arias-Ordonez turned himself into the

10    immigration authorities voluntarily once he found out that he had missed his hearing.  *See* Opening

11    Motion, Supplemental Declaration of Elizabeth M. Falk at Exhibit P.  This independent evidence,

12    above and beyond Mr. Arias-Ordonez' testimony, shows that he did nothing to avoid INS process, but

13    instead presented himself to the INS when he finally did receive a directive telling him to.  *Id.*

14           Aside from this independent evidence, Mr. Arias-Ordonez states in his declaration that he

15    looked forward to speaking with the judge to determine how he could remain legally in the U.S with

16    his parents and daughter.  He also states that he, along with his mother, was determined to get the

17    $5,000 bond money back so that his family could repay the family friend from whom they had

18    borrowed the bond money.  He adds that he did not avoid the INS even after he finally received the

19    October, 2003, letter and even after they refused to let him enter the building.  *See* Declaration of Noe

20    Arias-Ordonez, Exhibit I at 3:25, 4:1-16.  Rather than simply disappearing, Mr. Arias-Ordonez, upon

21    receiving the first and only letter he received from the INS, went to the INS on the date he was told to

22    go.  *Id.* at 3:9-18.  When he was not permitted to enter the building without identification, he called

23    the INS to find out how he could get into the building and then returned exactly as instructed by the

24    INS.  *Id.*  These are not the actions of an individual who would have "dodged" the INS purposely

25    back in June, 2003.  All of Mr. Arias-Ordonez' actions taken *after receiving a certified mailing* in

26

1  October, 2003 show that he was responsible and driven to comply with the INS' directives.  In

2  addition, both Mr. Arias-Ordonez and his mother have filed declarations attesting to the fact that

3  neither ever received notice of the hearing.  *See* Exhibit I at 3:5-12; Declaration of Sofia Ordonez

4  Sanchez, attached to Falk Auth Dec. as Exhibit N at 2:19.

5          Given the government's weak evidence on actual service *vis a vis* the strength of the evidence

6  submitted by Mr. Arias-Ordonez regarding 1) lack of notice, and 2) his motivation to actually attend

7  his deportation hearing, this Court should find that, even if a presumption is applicable, Mr. Arias-

8  Ordonez has sufficiently rebutted the presumption of effective service.   Under 8 U.S.C. §1326(d)(3),

9  the entry of the deportation order against Mr. Arias-Ordonez was fundamentally unfair, because 1) his

10 due process rights were violated when he failed to receive notice, and 2) he was prejudiced through

11 the Immigration Court's failure because he was not permitted to apply for relief from deportation. [3]

12 *See Dobrata v. INS*, 311 F.3d 1206, 1210 (9th Cir. 2002) ("Aliens facing deportation are entitled to

13 due process under the Fifth Amendment to the United States Constitution, encompassing a full and

14 fair hearing and notice of that hearing.")  Mr. Arias-Ordonez accordingly meets the third requirement

15 of a collateral attack under 8 U.S.C. § 1326(d)(3).

16

17 **II.     MR. ARIAS-ORDONEZ ALSO MEETS THE REQUIREMENTS OF 8 U.S.C. §
18            1326(d)(1-2)**

         **A.     Mr. Arias-Ordonez Should Be Deemed to Have Exhausted Administrative
19               Remedies, Because He Had No Reasonably Opportunity to Pursue Them**

20         The government additionally argues that Mr. Arias-Ordonez "cannot claim that he should be

21 excused from the administrative exhaustion requirements because he had no time to pursue them."

22 *See* Govt. Opp. at 5:23-24.  In making this argument, the government ignores both the facts of Mr.

23 _____

24         [3]  Because Mr. Arias-Ordonez was not notified of his hearing date, he was ordered deported
   in absentia and was never told that he qualified for pre-hearing voluntary departure.  As Mr. Arias-
25 Ordonez did qualify for voluntary departure and would have received it had he received adequate
   notice of his hearing date, this Court should find Mr. Arias-Ordonez was prejudiced by the non-
26 receipt of the Notice of Hearing.  *See* Bean Declaration, Opening Motion Exhibit O.

1    Arias-Ordonez' deportation and relevant Ninth Circuit caselaw..

2    First, the government mistakenly states that Mr. Arias-Ordonez had eight months to

3    administratively appeal the IJ's entry of the in absentia deportation order. This is simply wrong.

4    Instead, Mr. Arias-Ordonez had, at best, mere hours to attempt to appeal. The deportation order was

5    entered on June 6, 2003. *See* IJ Order, attached to Falk Auth. Dec. as Exhibit G. At that time, Mr.

6    Arias-Ordonez had no idea he had been ordered deported; he was simply waiting for notice of his

7    hearing. Mr. Arias-Ordonez was then arrested when he delivered himself to the INS on November 6,

8    2003. *See* Arias-Ordonez Declaration, attached to Falk Auth. Dec. at Exhibit I at 3:19. Following his

9    arrest, Mr. Arias-Ordonez asked about court and when the hearing would be and INS officials found

10   this to be funny and began making jokes. *Id.* at 3:21-22. Rather, than taking the opportunity to

11   explain to Mr. Arias-Ordonez what had happened or to inform him of his right to administratively

12   appeal or seek judicial review, the INS officials stopped laughing long enough only to tell Mr. Arias-

13   Ordonez that he was going to Mexico. *Id.* At 3:19-22. He was deported hours later. *See* Warrant of

14   Removal/Deportation, attached to Falk Auth. Dec. as Exhibit H. Not only did the INS fail to provide

15   Mr. Arias-Ordonez with an opportunity to appeal; it also deported him within hours of his voluntary

16   surrender, thereby negating any reasonable opportunity he had to take any legal action.

17   In *United States v. Hinojosa-Perez*, the defendant claimed that he had not received proper

18   notice of his hearing and thus, the deportation order entered in absentia could not serve as the basis

19   for a prosecution of a violation of 8 U.S.C. § 1326. *See id.* at 206 F.3d 832, 834 (9th Cir. 2000). In

20   that case, the government similarly argued that the defendant could not collaterally attack the

21   underlying deportation because he had not exhausted his administrative remedies. *Id.* at 835. There,

22   the defendant had been arrested based on the outstanding deportation order after appearing with his

23   wife for an INS interview in connection with his application to adjust his immigration status based on

24   the marriage. *Id.* at 834. He was deported *eight days later*. *Id.* The Ninth Circuit determined that,

25   because the defendant had previously received free legal assistance and had prior experience with the

26

1   appellate process, "the eight days [between his arrest on the outstanding order and his deportation]

2   was a sufficient period for Hinojosa to have challenged the order for lack of proper notice." *Id.* at

3   836. Under these circumstances, the defendant was deemed to have failed to exhaust his

4   administrative remedies. Although the Ninth Circuit has therefore held that *eight days* is a sufficient

5   amount of time in which to file a Motion to Reopen where the defendant is familiar with the appellate

6   process and had been represented by counsel, the Ninth Circuit has never held that *mere hours* is a

7   sufficient amount of time to seek administrative review especially where the defendant is not

8   represented by counsel and has no familiarity with the appellate process.

9       In contrast to the Ninth Circuit's focus in *Hinojosa-Perez* on the time between the arrest on

10  the deportation order and the actual deportation (which in this case, is a mere couple of hours), the

11  government instead argues about the time that passed between Mr. Arias-Ordonez' *initial* placement

12  into INS custody and the point at which he was deported. *See* Govt. Opp. at 5 ("For the eight

13  preceding months [from March, 2003 when the INS first took custody of Mr. Arias-Ordonez to

14  November, 2003, when he was deported], he had done nothing."). In essence, the government is

15  arguing that Mr. Arias-Ordonez should have had the foresight to file an appeal for relief from

16  deportation back in March, 2003, at which time he didn't even know whether or not he would be

17  deported! Because this Court cannot reasonably require that an alien appeal an order prior to its entry

18  (or that an alien appeal an order he or she does not know about), the government's efforts to compare

19  Mr. Arias-Ordonez' case to *Hinojosa-Perez* are flawed.

20      The government additionally argues, absent legal support, that Mr. Arias-Ordonez had both a

21  duty to inquire about the date and time of his deportation hearing and had a duty to challenge his

22  deportation without having received any notice that a deportation order had in fact been issued. *See*

23  Govt. Opp. at 5:11-14; 24-27. The government so argues, despite the fact that the INS had told Mr.

24  Arias-Ordonez that his deportation hearing was "to be set" and that *they* would contact *him* (*see*

25  Exhibit F, Notice to Appear, filed with initial Motion; Exhibit I at 3:5-6). This is in direct contrast to

26

existing case law.  Due process requires the INS to notify Mr. Arias-Ordonez of his hearing date –
there is no comparable duty on Mr. Arias-Ordonez' part to encourage, cajole or remonstrate the INS
on a day by day or month by month basis to ensure that they honor his right to due process.  *See*
*Dobrata,* 311 F.3d at 1210.   Moreover, in this case the INS specifically told Mr. Arias-Ordonez that
they would notify him as to the time and date of the hearing and that he should wait until he received
their letter.  *See* Declaration of Mr. Arias-Ordonez, attached to Falk Auth. Dec. as Exhibit I at 3:5-8.
Defendant could find no relevant caselaw to support the government's proposition that Mr. Arias-
Ordonez was somehow required to hire an "an immigration lawyer or an immigration aid clinic" to
ensure that his due process right to notice is honored or that the IJ dutifully notify him of all relief for
which he is eligible.  *See* Govt.'s Opp. at 5:27-6:1.

Finally, the Seventh Circuit case cited by the government is inapposite.  In *Santiago-Ochoa*,
the defendant, having been convicted of an aggravated felony, had been previously deported in an
expedited proceeding and upon reentry was charged with a violation of 8 U.S.C. § 1326.  *See id.* at
447 F.3d 1015, 1018 (7th Cir. 2006).  The court found that the defendant had been informed as to
potential applicable remedies and that by waiving his right to contest his removal, the defendant had
failed to exhaust his administrative remedies.  *Id.* at 1019.  Here, in contrast, Mr. Arias-Ordonez had
not been placed in expedited proceedings; he had a right to a hearing before an IJ and he had a right to
receive proper notice of that hearing.  He was 1) never informed of any relief from deportation, 2) was
not informed of any right to either administrative or judicial review, and 3) importantly, did not waive
his right to either appear at the hearing or contest the deportation order.  Instead, Mr. Arias-Ordonez
was deported hours after he was arrested, based on an in absentia process that took place without any
valid waiver of a hearing on his part.   He was not represented by counsel and had no experience with
appealing prior IJ orders.  Accordingly, the caselaw cited by the government does not successfully
show that Mr. Arias-Ordonez should be considered exempt from the exhaustion of administrative
remedies.

**B.    Mr. Arias-Ordonez Was Denied the Opportunity for Judicial Review**

For the same reasons cited above, Mr. Arias-Ordonez was also deprived of the opportunity for judicial review.  In an analogous context, the Ninth Circuit regularly conflates the two prongs of § 1326(d)(1-2) regarding administrative remedies and judicial review; the government's arguments to the contrary are without legal support.  *See* Govt. Opp. at 6:13-14 ("the Court should reject Arias-Ordonez' attempt to conflate two parts of a three-part test.").   For example, when a defendant is not told of his eligibility for relief from deportation by an IJ and he subsequently waives his right to appeal the entry of the deportation order, the Ninth Circuit has found both the "administrative remedies" prong and the "judicial review" prong of a collateral attack satisfied.  *See United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) ("where a waiver of the right to appeal a removal order is not 'considered and intelligent,' an alien has been deprived of his right to that appeal and thus to a meaningful opportunity for judicial review . . . .").  The "[e]ffective deprivation of an alien's administrative appeal serves to deprive him of the opportunity for judicial review as well." *Id.; see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049-50 (9th Cir. 2004)(same); *see also United States v. Lopez-Menera*, 2008 WL 413736, *4 (N.D.Cal. 2008) (Ilston, J.) ("Because the IJ failed to inform defendant that he could apply for such relief, defendant's waiver of his right to appeal was invalid. As such, the Court holds that defendant has satisfied the exhaustion and deprivation requirements in § 1326(d).").  No contrary caselaw has been presented to this Court.

Factually, Mr. Arias-Ordonez did not have the time nor the ability to file an administrative appeal or to seek judicial review in the hours between his arrest and his subsequent deportation. Upon his arrest after he presented himself to the INS, he inquired as to court and when his hearing would be held.  *See* Arias-Ordonez Declaration, attached to Falk Auth Dec. as Exhibit I at 3:19-22.  In response, no hearing or judicial process was provided.   Unlike the defendant in *Hinojosa-Perez*, Mr. Arias-Ordonez had hours, not days, to seek judicial review; he had never been represented by a lawyer and had no experience appealing an IJ's order.  This Court should accordingly find that Mr. Arias-

1  Ordonez was deprived of the opportunity for judicial review.

2  The government's reliance on *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) is misplaced.

3  *Walters* is a class action case dealing with a collateral challenge to INS practices and does not address

4  a merits challenge to the adjudication of deportation claims.  There, aliens alleged that they were

5  denied due process when they were given inadequate notice of deportation procedures.  The Ninth

6  Circuit upheld the district court's injunction which required the INS to parole class members into the

7  United States to attend hearings.  145 F.3d at 1051.  The Ninth Circuit found that the requirement

8  would be limited to those aliens who were entitled to reopen their document fraud proceedings and

9  that parole was permissible solely for the purpose of remedying that constitutional violation.  *Id.*  This

10  case does not stand for the government's proposition that Mr. Arias-Ordonez "could sue from outside

11  the U.S. to contest his removal" and be paroled into the U.S. to attend hearings associated with his

12  suit.  *See* Govt. Opp. at 7:7-11.  Nor has the Ninth Circuit ever reached the conclusion that post-

13  deportation remedies to attack a deportation from *outside the country* must be endeavored before the

14  administrative remedies prong is satisfied on a collateral attack in a 1326 case.

15  Because Mr. Arias-Ordonez meets all three prongs of § 1326(d), his motion to dismiss should

16  be granted, and the indictment should be dismissed.

**CONCLUSION**

17

18  For the aforementioned reasons, Mr. Arias-Ordonez respectfully requests this Court to dismiss

19  the indictment in the instant case.

20  Dated: March 26, 2008

21                                     Respectfully submitted,

22                                     BARRY J. PORTMAN
                                       Federal Public Defender
23

24                                        /S/

25                                     ELIZABETH M. FALK
                                       Assistant Federal Public Defender

26