BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA  94102
Telephone:  (415) 436-7700

Counsel for Defendant ARIAS-ORDONEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 07-00738 MMC |
|---|---|---|
| Plaintiff, | ) ) ) | **DEFENDANT ARIAS-ORDONEZ' SUPPLEMENTAL MOTION TO DISMISS INDICTMENT IN RESPONSE TO REQUEST FOR FURTHER BRIEFING** |
| v. | ) ) ) | |
| NOE ARIAS-ORDONEZ, | ) ) ) | Date:  May 7, 2008
Time:  2:30 p.m.
Court: Hon. Maxine M. Chesney |
| Defendant. | ) ) | |

## INTRODUCTION

At the last proceeding, this Court requested briefing on the following issues:

● Is there a due process violation when the government takes all reasonable steps to provide notice but the defendant does not get actual notice?

● Is the defendant excused from exhausting administrative remedies if ICE records show that he was informed of his right to file a motion to reopen after failing to appear for

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR  07-00738 MMC                                     1

       his hearing?

- Can the Court presume prejudice from defendant's absence from his removal hearing and resulting inability to request voluntary departure?

Mr. Arias-Ordonez' responses to the Court's inquiries are provided herein.

## ARGUMENT

### I. MR. ARIAS-ORDONEZ' DUE PROCESS RIGHTS WERE VIOLATED

**A. Mr. Arias-Ordonez Has a Fifth Amendment Right to Due Process that Encompasses Both A Right to Notice And An Opportunity to Be Heard**

Contrary to the government's position at the April 5, 2008 hearing, a due process violation can still exist if the government has complied with all statutory requirements regarding notice. This is because an alien's right to due process protection in deportation proceedings originates with the Fifth Amendment, not by statute, and includes *both* the right to a full and fair hearing as well as notice of the hearing. U.S. Const. amend. V; *Landon v. Plasencia*, 459 U.S. 21, 32-33 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). The procedure itself must meet "the essential standards of fairness." *Bridges v. Wixon*, 326 U.S. 135 (1945). To meet this fairness standard, due process has long required that an alien facing deportation receive both 1) notice of his deportation hearing and 2) an opportunity to be heard at that hearing. *See Plasencia*, 459 U.S. at 32-33; *Wixon*, 326 U.S. at 154 (1945); *see also Kwong Hai Chew v. Colding*, 344 U.S. 590 596-98 (1953)("Although Congress may prescribe rules conditions for his expulsion and deportation, not even Congress may expel him without allowing him a fair opportunity to be heard").

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC         2

Here, the government argues that the INS complied with its statutory notice requirement, and as such, no due process violation exists. Implicit in the government's argument is that by sending a letter containing notice of a hearing and subsequently holding that hearing, the INS technically provided Mr. Arias-Ordonez with an "opportunity" to be heard, and it's "too bad" that he missed his chance (even though the U.S. Postal Service could well be at fault.) This argument ignores the fact that absent *receipt* of actual notice, Mr. Arias-Ordonez was not afforded a *fair and meaningful* opportunity to be heard. See *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976)(due process requires notice and a right to be heard at a meaningful time and in a meaningful way.) Due process is not ensured simply because the government complies with statutory requirements of notice; due process is only ensured when the alien *receives* actual notice, and accordingly knows that he has an opportunity to be heard. See *Andia v. Ashcroft*, 359 F.3d 1181, 1185 (9th Cir. 2003)("Had petitioners not *received* any notice satisfying constitutional requirements – actual or constructive – of the deportation proceedings, it would be a violation of their rights under the Fifth Amendment of the Constitution to deport them *in absentia*")(emphasis added). Absent the *receipt* of notice, the deportation itself is unlawful because the opportunity to be heard provided by the government to the alien is not meaningful – although the government may technically provide a hearing, an alien cannot meaningfully defend himself if he is unaware that the hearing is taking place.

The basis for allowing aliens to file motions to reopen deportation proceedings on the ground that notice was not actually received is to ensure that deportation proceedings comport

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                    3

with due process.  If adequate government effort to notify aliens of their deportation dates was all that due process required, motions to reopen deportation proceedings would be limited to evidence that the government failed to comply with statutory requirements of notice.  Instead, immigration caselaw clarifies that many factors outside of the Immigration Service's control affect whether or not an alien actually receives notice, including the reality that "most letters are delivered, but some aren't."  *Sembiring v. INS*, 499 F.3d 981, 987 (9th Cir. 2007)(citing *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004)); *see also Salta v. INS*, 314 F.3d 1076, 1078 (9th Cir. 2002)(no issue raised by petitioner that INS failed to comply with mailing requirement, and no facts in decision indicating any INS error in mailing; remanded regardless for consideration of motion to reopen).[1]  Immigration caselaw permitting motions to reopen on grounds outside of INS error in the mailing of notice recognize that imperfections in the Postal Service should not curtail an alien's due process rights.

    Here, this Court has concluded that Mr. Arias-Ordonez has rebutted the presumption of adequate notice with credible evidence, including the actions he took to self-surrender to the INS once he received a certified mailing directing him to do so.  The Court found this action inconsistent with an individual who would dodge a Notice to Appear four months earlier.  In sum, this holding finds that Mr. Arias-Ordonez has successfully shown that he has rebutted the presumption that he is at fault for failing to show up at his deportation hearing (or, at least, the he has raised credible evidence sufficient to rebut the presumption of effective notice, such that he

---

[1] The Second Circuit has described this type of regular mail presumption as doing "no more than . . . shift[ing] a tie-breaking burden of proof to the alien claiming non-receipt." *Lopes v. Mukasey*, 517 F.3d 156, 160 (2d Cir. Feb. 21, 2008).

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR  07-00738 MMC                          4

should have been entitled to an actual hearing at which he could have pursued remedies to deportation). The fact that Mr. Arias-Ordonez did not receive notice of his hearing date through no fault of his own meant the opportunity to be heard provided to him was meaningless – regardless of what outside party is at fault. Under these circumstances, the *in absentia* deportation proceedings accordingly violated Mr. Arias-Ordonez' due process rights to be meaningfully heard by an IJ - and cannot now serve as a basis to prosecute him for illegal re-entry.

### B. "Governmental Error" Is Not Required to Prove A "Due Process Violation," As Evidenced By the Caselaw Deeming Ineffective Assistance of Counsel A Due Process Violation

"Governmental error" is simply not a part of the due process equation. As long as circumstances existed in Mr. Arias- Ordonez' deportation proceeding that prevented him from realizing his due process rights of *both* adequate notice *and* a meaningful opportunity to be heard, as explained above, a due process violation clearly exists. *Eldridge*, 424 U.S. at 348-49. It matters not "who is to blame" for the due process deficiency; the alien solely must show that circumstances existed at the time of his deportation hearing that interfered with either his right to notice and/or his meaningful opportunity to be heard.

This concept is made clear in immigration caselaw holding that an alien's due process rights have been violated through ineffective assistance of hired counsel. It is self-evident that ineffective lawyering may occur during deportation proceedings through no fault or error on the part of the government. Regardless, numerous Ninth Circuit cases have held that an alien's due process rights are violated when an attorney is ineffective during deportation proceedings. *See, e.g.*, *Castillo-Perez v. INS*, 212 F.3d 518, 526 (9th Cir. 2000)(alien showed due process violation

through counsel's ineffective performance); *Dearinger v. Reno*, 232 F.3d 1042 (9th Cir. 2000)(attorney error characterized as "due process violation" because the error deprived petitioner of an appellate proceeding entirely);   These decisions stand, despite the fact that there is no constitutional right to counsel in deportation proceedings, and the government is under no obligation to provide counsel to aliens facing deportation.  *See Castro-Nuno v. INS*, 577 F.2d 577, 578 (9th Cir. 1978).   If "governmental error" was required to recognize a due process violation in deportation proceedings, such cases would not exist.

Ineffective assistance of counsel constitutes a due process violation in the deportation context because faulty representation precludes the alien from an adequate or meaningful opportunity to be heard. *See Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir. 1985)( "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.") Attorneys who commit error thwart their client's ability to fairly present a case to the Immigration court, despite the government's best efforts to ensure that the process is fair.  In a similar vein, Mr. Arias-Ordonez' ability to present a case to the Immigration Court was thwarted – in this case, most likely by the U.S. Postal Service.  The government's "best efforts" to provide notice in this case does not cure the due process violation that resulted – Mr. Arias Ordonez' *in absentia* deportation proceeding that took place without his knowledge, and thus resulted in an alien being deported without any understanding that he had an avenue on June 3, 2003 to present a case.  The deportation of Mr. Arias-Ordonez under these circumstances violated his due process rights.

**C. Even If "Governmental Error" Is Required Before An Alien Can Prove a Due Process Violation, Such Error Occurred Here When the Government Deported Mr. Arias-Ordonez After 1) Affirmatively Misadvising Him That He Had No Avenue for Relief, and 2) Not Permitting Him an Opportunity to File a Motion to Reopen By Deporting Him Within Hours of Self-Surrender**

Even if this Court were to hold that Mr. Arias-Ordonez was required to show "governmental error" to make out a due process violation, Mr. Arias-Ordonez has done so here.

**1.      The October 28, 2003 INS Form I-166 Violated Due Process**

First, the INS Form I-166, sent by the INS to Mr. Arias-Ordonez via certified mail in October 28, 2003, is a clear misstatement of INS statutory law, as well as a misstatement of Mr. Arias-Ordonez' rights, remedies, and avenues for relief. By providing Mr. Arias-Ordonez with erroneous information and advice about his rights, the mailing of this form by the INS violated Mr. Arias-Ordonez' due process rights. The order indicated in the Form I-166 stated, in relevant part:

> As you know, following a hearing in your case you were found removable and the hearing officer has entered an order of removal. *A review of your file indicates there is no administrative relief which may be extended to you*, and it is now incumbent upon this Service to enforce your departure from the United States.

*See* Form I-166, Falk Declaration, Opening Motion, Exhibit E (emphasis added). At no point did the order indicate that aliens who have missed a deportation proceeding may have a statutory right to reopen their deportation proceedings. If anything, the form contradicts that statutory right.

As the parties now agree, Mr. Arias-Ordonez in fact had an avenue of statutory relief open to him at the time he received the October 28, 2003 mailing – the filing of a motion to reopen. At no place does the Form I-166 mention this form of relief. Instead, it erroneously states that no

relief is possible.

Numerous Ninth Circuit cases have held that a due process violation exists when an Immigration Judge affirmatively misadvises an alien that no relief is possible from deportation when relief in fact exists. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004)("here, Pallares was eligible for relief from deportation . . but the IJ erroneously advised him to the contrary); *see also United States v. Leon Paz*, 340 F.3d 1003, 1007 (9th Cir. 2003)(IJ erred when informing defendant that no relief was available; error amounted to due process violation). In Mr. Arias-Ordonez' case, the erroneous information arose from an INS I-166 form, rather than an IJ. This difference is of little import; its effect precluded Mr. Arias-Ordonez from receiving the correct information about his potential remedies. Had the form informed Mr. Arias-Ordonez that he could file a motion to reopen his deportation hearing, he could have done so upon receipt of the mailing. Instead, seven business days went by between the time Mr. Arias-Ordonez received the mailing and self-surrendered for deportation, unaware that he was passing up the opportunity to move to reopen his proceedings and explain the circumstances of his missed hearing. The mailing of the Form I-166 to Mr. Arias-Ordonez was governmental error containing erroneous advice to Mr. Arias-Ordonez; this mis-advice constitutes a due process violation under Ninth Circuit caselaw**.**

**2.    The Immediate Deportation of Mr. Arias-Ordonez Following Self-Surrender Violated Due Process**

Once Mr. Arias-Ordonez self-surrendered to the INS Instead, he was deported within hours following his arrest. In deporting him almost immediately, the INS foreclosed Mr. Arias-

Ordonez' ability to even assess what was happening to him, much less to pursue any potential remedies or make a credible argument that he needed to see an Immigration Judge. This action on the part of the INS directly violated its own statute that "an alien taken into custody either upon notice to surrender or arrest may not be deported within 72 hours thereafter without his or her consent." 8 C.F.R. § 241.22. At least one district court has held that this near-immediate deportation in and of itself is a violation of both INS regulations and due process. *See Fong v. Ashcroft*, 317 F.Supp.2d 398, 403-04 (S.D.N.Y. 2004), *amended order on other grounds*, 2004 WL 1348994 (2004).

In *Fong*, the alien at issue was similarly situated to Mr. Arias-Ordonez. She had failed to show for an asylum interview, and was subsequently ordered deported *in absentia*. *Id.* at 401. Ultimately, Fong did appear for proceedings scheduled by her daughter, absent knowledge that she had been ordered deported. *Id.* She was arrested on the spot. *Id.* Before her previously-retained attorney could take meaningful action and attempt to stay the deportation order, the INS deported Fong the same day she was arrested. *Id.* at 402.

In finding that the INS' actions constituted a due process violation by failing to adhere to the 72 hour rule, the *Fong* court stated:

\\

\\

\\

\\

\\

> There is no question that the policy embodied in the 72-hour requirement of 8 C.F.R. §§ 241.22 and 241.33(b) gives expression to the Fifth Amendment's due process mandates. Indeed, the INS said so itself; in adopting the rule, the INS explained that it was intended "to ensure that due process is accorded the detainee." 51 Fed. Reg. 23,041 (June 25, 1986). Just as the Constitution requires the government to afford notice of any action against an alien, so too it requires an opportunity for the alien to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950); *Fuentes-Argueta v. INS*, 101 F.3d 867, 872 (2d Cir. 1996); *United States v. Perez-Valdera*, 899 F. Supp. 181, 184 (S.D.N.Y. 1995). The opportunity to be heard must be "meaningful," *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999), that is, an "opportunity . . . granted at a meaningful time and in a meaningful manner." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 85 S. Ct. 1187 (1965)). A nearly instantaneous removal cannot provide such an opportunity. And, as the Second Circuit has made clear, *Montilla v. INS*, 926 F.2d 162 (2d Cir. 1991); *Waldron v. INS*, 17 F.3d 511 (2d Cir. 1994), immigration regulations which are derived from and intended to protect constitutional rights are to be liberally applied. *Waldron* indicates that "I must accord greater weight to a regulation grounded in "a fundamental right derived from the Constitution or a federal statute, . . . even when the regulation requires more than would the specific provision of the Constitution or statute that is the source of the right." *Id.* at 518; *see also Zadvydas v. Davis*, 533 U.S. 678, 689-90, 150 L. Ed. 2d 653, 121 S. Ct. 2491 (2001) (immigration statute which sets no time limits must be read in a manner reflecting due process limitations).

*Id.* at 402. The *Fong* court rejected the government's arguments to the contrary, also on due process grounds:

> The government's argument, that there should be no time limit whatever before the government can physically remove an alien from the United States, would raise serious due process implications. Presumably, under the government's argument, the agency could make a determination of removal and then deport the alien two minutes later, leaving the alien no opportunity even to file an appeal.

*Id.* at 402-403. As with the alien at issue in *Fong*, Mr. Arias-Ordonez' due process rights were violated by the immediate deportation following self-surrender on November 6, 2003, as he was unable to apply for meaningful relief on the sheer basis of lack of time. This was the INS' second

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR  07-00738 MMC                          10

error that precluded Mr. Arias-Ordonez from any meaningful opportunity to be heard, thereby depriving him completely of judicial review. This Court should adopt the sound reasoning of the *Fong* court and hold that the INS violated Mr. Arias-Ordonez' due process rights by 1) providing Mr. Arias-Ordonez a Form I-166 that contained erroneous advice that no relief was available, and 2) subsequently deporting him in violation of the 72 hour rule codified in 8 C.F.R. § 241.22. Under these circumstances, the deportation of Mr. Arias-Ordonez should not be permitted to serve as a predicate element for a criminal conviction under 8 U.S.C. § 1326.

## II. MR. ARIAS-ORDONEZ WAS NOT INFORMED OF HIS RIGHT TO FILE A MOTION TO REOPEN AND SHOULD BE DEEMED TO HAVE EXHAUSTED ADMINISTRATIVE REMEDIES

As discussed at the April 5, 2008 hearing, Mr. Arias-Ordonez was not notified of his right to file a motion to reopen deportation proceedings, which moots the Court's second inquiry of the parties at this time.[2] To date, the documents identified by the parties that Mr. Arias-Ordonez actually received explaining his rights are 1) a Notice to Appear for Hearing, attached to Falk Declaration, Opening Motion, Exhibit F, and 2) Form I-166, sent by certified mail and received and signed for by Mr. Arias-Ordonez' mother on October 28, 2003, attached to the Falk Declaration, Opening Motion, Exhibit E. As previously argued at the April 5 hearing, neither document explains to Mr. Arias-Ordonez his right to contest an *in absentia* deportation order. If

---

[2] Mr. Arias-Ordonez has not located any document in the discovery that indicates he was ever notified of his right to reopen an *in absentia* deportation hearing. Until and unless such form is located by the government, the Court's second inquiry is not ripe. Mr. Arias-Ordonez hereby reserves his right to address this issue in his Reply Brief if the government submits any documentation indicating Mr. Arias-Ordonez was advised of his right to reopen the deportation proceedings.

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                 11

anything, as discussed above, this order erroneously *misinforms* Mr. Arias-Ordonez that he has no possibility for relief, including his right to file a motion to reopen deportation proceedings.  Once so informed that no avenue for relief is possible, an alien is discharged on a collateral attack from proving that he exhausted all administrative remedies available to him.  *See Pallares-Galan*, 359 F.3d at 1096 (failure on the part of Immigration Judge to advise of possible avenues of relief excuses alien from requirement of proving exhaustion of administration remedies.)  It makes no difference whether the erroneous advice arises from an Immigration Judge or an INS form; it is still erroneous advice that misadvises the alien as to the availability of potential remedies and fails to correctly inform him of possible avenues for relief.

Here, Mr. Arias-Ordonez undisputably received the Form I-166 containing the erroneous advice, followed the instructions contained therein, and was deported the same day he self-surrendered.  Once he received the Form, Mr. Arias-Ordonez erroneously believed he had no administrative remedies; moreover, the rapid timing of his deportation ensured he was denied any opportunity to reasonable pursue any appeals or avenues for relief.  Under this combination of circumstances, the Court should hold that Mr. Arias-Ordonez is excused from meeting the exhaustion and deprivation requirements.

This sequence of events differentiates the instant case from *United States v. Hinojosa-Perez*, 206 F.3d 832, 836 (9th Cir. 2000).  In that case, the Ninth Circuit rejected the defendant's collateral attack to his deportation order because "notwithstanding this specific written and oral notice [that Hinojosa-Perez could file a motion to reopen the deportation hearing], Hinojosa did not avail himself of this opportunity to file a motion to reopen." *Id.* at 836.  Here, Mr. Arias-

Ordonez had no idea that such a motion was even possible, given the conclusive finality of the October 28, 2003 I-166 indicating that no administrative relief was available. The other significant difference between the instant case and *Hinojosa-Perez* is the length of time actually spent in custody prior to deportation. While Hinojosa-Perez was in custody for 8 days prior to his deportation, Mr. Arias-Ordonez was in INS custody for mere hours on November 6, 2003, and had no time to consult with anyone at INS regarding his rights once he realized he was not going to see an immigration judge to explain what had happened. As such, Mr. Arias-Ordonez' deportation violated the 72 hour rule. Moreover, in contrast to Hinojosa-Perez, who was "familiar with the appeals process and had successfully used it to his advantage earlier in the same proceedings," Mr. Arias-Ordonez was not familiar with the deportation process or the immigration appeals process. *Id*. at 836. It would be unreasonable to expect Mr. Arias-Ordonez to know exactly what to do to stop the deportation process in the mere hours that he stayed in INS custody pre-deportation. The holding and logic behind the *Hinojosa-Perez* decision should accordingly not apply here.

### III. MR. ARIAS-ORDONEZ HAS MADE A SUFFICIENT SHOWING OF PREJUDICE

**A. Applicable Standard**

Mr. Arias-Ordonez has made the requisite showing of prejudice through the submitted declarations and documentation. In response to the Court's direct question, the Court does not merely "presume" prejudice on a collateral attack motion – the alien must make a showing that he was prejudiced by the due process violation. However, to satisfy such a showing, "alien does not have to show that he actually would have been granted relief. Instead, he must only show that he

had a 'plausible' ground for relief from deportation." *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004) (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)). Although the Ninth Circuit has not defined the term "plausible", "this standard would seem to encompass borderline cases, perhaps even where the equities are in equipoise. Stated differently, it seems fair to interpret this standard as granting defendants in illegal entry cases the benefit of the doubt, even if they have a borderline claim of prejudice, as long as they establish that their deportation proceeding was procedurally deficient." Wible, Brent S., *The Strange Afterlife of Section 212(c) Relief: Collateral Attacks on Deportation Orders in Prosecutions for Illegal Reentry After St. Cyr*, 19 GEO. IMMIGR. L.J. 455, 475 (Summer 2005). Under applicable law, Mr. Arias-Ordonez need not show that he actually would have been granted relief, or even that there was a reasonable probability that he would have been granted relief. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001). A showing of plausible or possible granting of relief is sufficient.

Ninth Circuit caselaw instructs the district court to review individual factors of each alien's case to determine if their claim to applicable relief was plausible. *See, e.g., Pallares-Galan*, 359 F.3d at 1104 (weighing positive and negative equities to determine whether the defendant would have qualified for 212(c) relief); *Ubaldo-Figueroa*, 364 F.3d at 1051(same).

**B. Mr. Arias-Ordonez Had a Plausible Claim to Obtain Voluntary Departure**

Albeit through unpublished caselaw, the Ninth Circuit has indicated that voluntary departure is a viable form of relief that can support a claim of prejudice on a collateral attack of an indictment under 8 U.S.C. § 1326. See *United States v. Basulto-Pulido*, 219 Fed. Appx. 717, 719

(9th Cir. 2007)(district court erred in denying motion to dismiss indictment, because IJ failed to advise defendant about right to voluntary departure; reversing district court's denial of motion); *United States v. Nungaray Rubalcaba*, 228 Fed. Appx. 436, 438 (9th Cir. 2007)(district court erred in denying motion to dismiss indictment, because IJ failed to advise defendant about his eligibility for voluntary departure; reversing district court's denial of motion). In support of his claim that Mr. Arias-Ordonez had a plausible claim to voluntary departure, he has submitted three declarations; his own (see Falk Declaration, Opening Motion, Exhibit I), his mother Sofia Sanchez' (Falk Declaration, Opening Motion, Exhibit N) and the declaration of Immigration law expert Angela Bean (Falk Declaration, Opening Motion, Exhibit O), along with documentary evidence supporting Mr. Arias-Ordonez' claims (Falk Declaration, Opening Motion, Exhibits J-M).

As a starting point, Mr. Arias-Ordonez met all the technical requirements for pre-hearing voluntary departure in 2003. He had the financial resources to finance his trip out of the United States via family and family friends, was not an aggravated felon and had not previously availed himself of voluntary departure. *See* Bean Dec., Exhibit O at ¶ 4; Arias Dec., Exhibit I at ¶ 24; Sanchez Dec., Exhibit N at ¶ 18.

In terms of positive equities, Mr. Arias-Ordonez had resided in the United States since he was ten years old. *See* Arias Dec, Exhibit I at ¶ 1; *see also* State of California Immunization Record, attached to Falk Declaration, Opening Motion at Exhibit J (proving California residence since 1991). At the time of the deportation, he resided with his mother, father and family members who were also present in the United States and had applied to be legal permanent

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                               15

residents. *See* Arias Dec, Exhibit I at ¶ 2, ¶ 22. Moreover, he would have shown gainful employment at two different jobs to the Immigration Court. *See id.* at ¶ 3; *see also* Sanchez Dec., Exhibit N at ¶4-5. Family ties in the United States, length of duration in the United States, and excellent work history have all been cited by the Ninth Circuit as factors this Court should consider when determining a claim of prejudice. *See Pallares-Galan*, 359 F.3d at 1104. Mr. Arias-Ordonez was also a father to a U.S. citizen daughter at the time of his deportation, and had a U.S. citizen girlfriend with whom he was raising his daughter. *See* Arias Dec. at ¶ 4; *Pallares-Galan*, 359 F.3d at 1104. Most importantly, on the basis of all these factors (as well as a $5,000 cash bond), the Immigration Court granted Mr. Arias-Ordonez bail pending his deportation hearing. Accordingly, he would have shown up for his deportation hearing out of custody, which strongly supports the premise that the Immigration Court would have granted him voluntary departure and allowed him to continue the deportation process out of custody.

On the other side, the sole negative equities working against Mr. Arias-Ordonez' potential voluntary departure grant is an extremely minor criminal history – a 2000 conviction for driving with a suspended license, and a 2002 conviction for misdemeanor possession of a controlled substance. See Falk Declaration, Opening Motion, Exhibit A. These factors were unlikely to deprive Mr. Arias-Ordonez of voluntary departure. First, as previously argued, Mr. Arias-Ordonez was granted bail pending his deportation hearing, which shows that the Immigration Court did not consider him a flight risk or a danger to the community such that voluntary departure would not have been appropriate. Second, the pre-hearing voluntary departure statute itself only disqualifies aggravated felons. *See* 8 U.S.C. § 1229(c)(1). Here, Mr. Arias-Ordonez

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                    16

had not even been convicted of a *felony* at the time of his deportation. Given the fact that "Immigration Judges have 'broad authority to grant pre-hearing voluntary departure,'" *see Nungaray-Rubulcaba*, 229 Fed. Appx at 438 (citations omitted) it is more than plausible that Mr. Arias-Ordonez would have been granted voluntary departure on this record.[3] It is particularly noteworthy that in *Nungaray-Rubulcaba,* the Ninth Circuit found that the defendant was prejudiced in his inability to apply for pre-hearing voluntary departure despite two drug possession convictions – a far more serious criminal history than Mr. Arias-Ordonez had.[4] On the basis of all the aforementioned arguments, Mr. Arias-Ordonez has made an adequate showing that he had a "plausible" claim to pre-hearing voluntary departure, and was accordingly prejudiced by the defects in his deportation process.

## CONCLUSION

Due process requires fundamental fairness in the deportation process. Through no fault of his own, Mr. Arias-Ordonez missed his deportation hearing, was misadvised by an I-166 Form that he had zero possibility of relief, was not informed of the statutory relief that he had, and was deported faster than the applicable statute permitted, thereby precluding any reasonable opportunity

---

[3] At the April 5, 2008 hearing, this Court inquired whether or not the "prejudice prong" required the Court to hold that Mr. Arias-Ordonez would have been likely to accept voluntary departure. As the *Nungaray-Rubulcaba* and *Basulto-Pulido* cases demonstrate, the answer is no. *See, e.g., Basulto-Pulido*, 219 Fed. Appx at 719 (prejudice was shown because "Basulto-Pulido *might* have applied for an received this relief rather than conceding deportability, and its attendant harsh consequences.")(emphasis added). Regardless, Mr. Arias-Ordonez has stated in his declaration that he would have applied for such relief had he been presented to the IJ and informed that relief was possible; this evidence is uncontroverted by the government. *See* Arias Dec., Exhibit I at ¶ 24.

[4] Although the felony nature of Nungaray-Rubulcaba's convictions is not specified, it is implied through the discussion as to whether or not those convictions, taken together, constitute an aggravated felony.

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                    17

to explore remedies he had not been informed of. When Mr. Arias-Ordonez inquired about seeing a Immigration Judge, INS officials laughed at his request. Whether attributed to INS error, government error, or Postal Service error, the circumstances of Mr. Arias-Ordonez' deportation were not fair, and did not comport with due process. He was prejudiced by the due process violations because he had a viable remedy to pursue in lieu of deportation, which he was denied the opportunity to apply for. This flawed deportation should not serve as a predicate element for a criminal prosecution under 8 U.S.C. § 1326. For the reasons expressed both here and in the briefing already submitted, Mr. Arias-Ordonez respectfully requests that the indictment be dismissed.

Dated: April 16, 2008             Respectfully submitted,
                                  BARRY J. PORTMAN
                                  Federal Public Defender


                                           /S/

                                  ELIZABETH M. FALK
                                  Assistant Federal Public Defender

DEFENDANT'S SUPPLEMENTAL BRIEFING
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                        18