1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  OWEN P. MARTIKAN (CABN 177104)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102
       Telephone: (415) 436-7241
7      Facsimile: (415) 436-7234
       owen.martikan@usdoj.gov
8
   Attorneys for Plaintiff
9

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,          )    No. CR 07-0738 MMC
                                       )
15          Plaintiff,                 )    **SUPPLEMENTAL BRIEFING RE:**
                                       )    **THE UNITED STATES'**
16      v.                             )    **OPPOSITION TO DEFENDANT'S**
                                       )    **MOTION TO DISMISS**
17  NOE ARIAS-ORDONEZ,                 )
                                       )    Date: May 7, 2008
18          Defendant.                 )    Time: 2:30pm
    _____)    Place: Courtroom 7, 19th Floor
19

20

21

22

23

24

25

26

27

28

1

# INTRODUCTION

The Court ordered supplemental briefing in this case to address three issues that arose at the initial hearing on defendant Arias-Ordonez's motion to dismiss. Those issues are (1) whether a due process violation exists where the government takes all reasonable steps to provide a defendant with notice of a removal hearing but the defendant does not get actual notice; (2) whether a defendant is excused from exhausting administrative remedies if he was not informed of his right to file a motion to reopen after being removed *in absentia*; and (3) whether the Court may presume prejudice if a defendant was not present at his removal hearing and thus could not request pre-hearing voluntary departure there.

The United States answers these questions as follows:

1.      No. Under controlling Ninth Circuit precedent, if the government mails notice of a removal hearing to the correct last address provided by an alien, then its notice comports with due process, regardless of whether the alien actually received the notice.

2.      No. Although there is no evidence in the record that Arias-Ordonez was told specifically about his right to file a motion to reopen, he was given a list of organizations and attorneys providing free legal services on March 3, 2003, and he had seven business days (nine days total) from October 28, 2003, the date his mother signed for the Notice of Deportation until he was taken into ICE custody, on November 6, 2003. This was a reasonable period of time for Arias-Ordonez to seek legal advice.

3.      No. In this case, Arias-Ordonez expressly waived pre-hearing voluntary departure on the form requesting a removal hearing. Thus, it would be illogical for the Court to presume that he would have requested it at his hearing.

# ARGUMENT AND AUTHORITIES

## I.    ARIAS-ORDONEZ CANNOT SHOW A DUE PROCESS VIOLATION.

As this Court noted at the initial hearing on this matter, one part of the three-part statutory test that alien criminal defendants must meet to mount a collateral attack on a prior deportation is to show that the entry of the prior deportation order was

**1**  "fundamentally unfair." 8 U.S.C. § 1326(d)(3). To make this showing, the Ninth Circuit

**2**  has held that the defendant must show both a violation of due process based on defects in

**3**  his underlying deportation proceeding, and prejudice suffered because of the due process

**4**  violation. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

**5**       This due process requirement is the source of the Court's requested additional

**6**  briefing regarding whether Arias-Ordonez's claimed failure to have received notice of his

**7**  deportation hearing resulted in a due process violation. It does not, as the discussion

**8**  below will show.

**9**       **A.    The Mailed Notice to Appear Complied With Due Process.**

**10**      Arias-Ordonez's argument that his due process rights were violated because he did

**11**  not actually receive notice to appear at his deportation hearing is directly contrary to

**12**  controlling Ninth Circuit precedent. In at least two published opinions, the Ninth Circuit

**13**  has held that mailed notice to the last known address provided by an alien comports with

**14**  due process, regardless of whether the alien actually received the mailed notice. *Dobrota*

**15**  *v. Immigration & Naturalization Service*, 311 F.3d 1206, 1211 (9th Cir. 2002); *Farhoud v.*

**16**  *Immigration & Naturalization Service*, 122 F.3d 794, 796 (9th Cir. 1997).

**17**      The *Dobrota* opinion, relying on *Farhoud*, makes this point directly, and in doing

**18**  so rejects arguments such as those made by Arias-Ordonez here:

**19**            An alien does not have to actually receive notice of a deportation hearing in
           order for the requirements of due process to be satisfied. Rather, the INS
**20**            may generally satisfy notice requirements by mailing notice of the hearing
           to an alien at the address last provided to the INS, or if she is represented, to
**21**            her attorney's address of record.

**22**  *Dobrota*, 311 F.3d at 1211 (internal citations omitted). This Court found, at the last

**23**  hearing on this issue, that the United States mailed notice to Arias-Ordonez's address.

**24**  Indeed, the Court accepted that the United States took "all reasonable steps" to ensure

**25**  that Arias-Ordonez received notice of his deportation hearing. Thus, whether Arias-

**26**  Ordonez actually received this properly mailed notice does not affect the due process

**27**  analysis.

**28**      The Ninth Circuit authority set forth in *Dobrota* and *Farhoud* controls here. Arias-

1   Ordonez cannot separate his due process right to have notice mailed to him from his due

2   process right to receive that notice, as he attempts to do in his supplemental brief.  The

3   Ninth Circuit looks only at the mailing of notice, not to whether it was actually received.

4   Arias-Ordonez does not even address this authority in his supplemental brief, much less

5   contradict it.

6           Moreover, Arias-Ordonez's reliance on the Ninth Circuit's opinion in *Andia v.*

7   *Ashcroft*, 359 F.3d 1181, 1185 (9th Cir. 2003), is misleading and actually undercuts his

8   position.  *See* Defendant's Supplemental Motion at 3:13.  In his brief, Arias-Ordonez

9   argues that under the Ninth Circuit's holding in *Andia*, "due process is only ensured when

10  the alien *receives* actual notice, and accordingly knows that he has an opportunity to be

11  heard."  *Id*. (emphasis in original).  This is incorrect, and *Andia* makes no such holding.

12  Indeed, the Ninth Circuit in *Andia* found that the Immigration Judge had not made any

13  findings concerning the adequacy of notice, and had simply disregarded the issue of

14  whether the alien received notice because he thought the argument was untimely.  *Andia*,

15  359 F.3d at 1185.  The Ninth Circuit actually distinguished its holding in *Andia* from

16  *Dobrota* and *Farhoud*, the two decisions that do apply here.  *Id*.

17          The Court should reject Arias-Ordonez's argument that the United States violated

18  his due process rights because he did not receive actual notice of his deportation hearing.

19          **B.      Arias-Ordonez's New Due Process Challenges Are Irrelevant.**

20          In addition to the notice issue that the Court ordered the parties to brief, Arias-

21  Ordonez has raised two new due process arguments in his supplemental brief; arguments

22  that were not raised in his motion to dismiss, at the hearing, or in the Court's

23  supplemental briefing order.  These arguments are (1) that the United States violated

24  Arias-Ordonez's due process rights by sending him a Notice of Deportation that

25  inaccurately informed him that he had no further administrative remedies, and (2) that the

26  United States violated Arias-Ordonez's due process rights by deporting him to Mexico

27  within 72 hours of his self-surrender.  Defendant's Supplemental Motion at 7, 8.

28          These arguments are irrelevant because they have nothing to do with Arias-

1    Ordonez's underlying deportation proceeding.  Under the test set forth in 8 U.S.C. §

2    1326(d) and by the Ninth Circuit in *Ubaldo-Figueroa*, 364 F.3d at 1048, Arias-Ordonez

3    must establish that his due process rights were violated "by defects in his underlying

4    deportation proceedings," such that the entry of the deportation order was fundamentally

5    unfair.  Thus, alleged due process violations that occurred many months after the June,

6    2003 deportation proceedings and the entry of the June 6, 2003 deportation order have no

7    place in this analysis.  Indeed, these alleged due process violations have no logical

8    connection to the deportation order, because they could have taken place regardless of

9    whether Arias-Ordonez appeared at his hearing or not.  As the Ninth Circuit noted in

10   *United States v. Medina*, 236 F.3d 1028, 1031 (9th Cir. 2001), "to collaterally attack his

11   prior deportation, [an alien] must show that the deportation hearing was fundamentally

12   unfair and that he was prejudiced by the error."  Arias-Ordonez's newly raised due

13   process claims have nothing to do with his deportation hearing.[1]

14              **1.    Due Process Claim Based On The Deportation Notice.**

15        But beyond this basic flaw, Arias-Ordonez's new claims lack merit as due process

16   violations.  To show a violation of due process in the deportation context, Arias-Ordonez

17   must show "error and substantial prejudice.  A showing of prejudice is essentially a

18   demonstration that the alleged violation affected the outcome of the proceedings."

19   *Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000) (quoting *Lata v. INS*, 204

20   F.3d 1241, 1246 (9th Cir. 2000)).  The Ninth Circuit will not "simply presume prejudice."

21   *Id*.  A fundamental part of this analysis is that the government must have some

22   constitutional duty to act before an error can rise to the status of a due process violation.

23   *See Balogun v. U.S. Attorney General*, 304 F.3d 1303, 1312 (11th Cir. 2002) (noting that

24

25        [1] An older district court case addressing collateral attacks on deportation orders prior to
26   the 1996 enactment of section 1326(d) makes this distinction, holding that an alien "may not
     collaterally attack his deportation on procedural grounds which relate to events occurring after
27   the deportation hearing . . . which have no bearing on the conduct of a fundamentally fair hearing
     or the merits of whether the alien is deportable."  *United States v. Floulis*, 457 F.Supp. 1350,
28   1357 (W.D. Penn. 1978).

1    the INS has no duty, constitutional or otherwise, to provide legal advice).

2            Arias-Ordonez cannot show that the government had any duty, constitutional or

3    otherwise, to inform him in its Notice of Deportation whether he had any further avenues

4    of administrative relief.  *See id.* (noting that the INS has no duty to provide legal advice).

5    Moreover, Arias-Ordonez cannot show prejudice because he cannot prove that the

6    government's error would have affected his deportation proceedings.  Arias-Ordonez

7    does not claim, and it would be sheer speculation to presume, that he was contemplating

8    filing a motion to reopen, and the government's letter persuaded him not to.  Arias-

9    Ordonez does not even claim that he was contemplating seeking legal advice, and the

10   government's letter affected that decision.  There is no evidence in the record to suggest

11   that Arias-Ordonez even read the government's letter in its entirety.

12           The Ninth Circuit has held that it will not presume prejudice in the due process

13   context.  This Court should reject Arias-Ordonez's invitation to presume prejudice here.

14               **2.      Due Process Claim Based On Deportation Within 72 Hours.**

15           The Court should also reject Arias-Ordonez's due process challenge based on the

16   fact that he was arrested and then deported in less than 72 hours.  Arias-Ordonez claims

17   this due process violation based on a regulation, 8 C.F.R. § 241.22, which requires the

18   government to wait 72 hours before deporting an alien who is taken into custody or self-

19   surrenders, unless the alien consents to earlier deportation in writing.  Arias-Ordonez does

20   not inform the Court that this regulation, by its own terms, only applies to deportations

21   prior to April 1, 1997.  8 C.F.R. § 241.20.  Thus, the regulation simply does not apply

22   here.

23           Second, the one district court decision that Arias-Ordonez relies on for this claim,

24   *Fong v. Ashcroft*, 317 F.Supp.2d 398, 402 (S.D.N.Y. 2004), completely ignores the pre-

25   1997 applicability of this regulation because the Court thought that any shorter time

26   period was too short.  Presumably, the district court's decision in *Fong* was based on the

27   egregious facts in that case, which are quite different from the facts here.  In *Fong*, the

28   plaintiff had no idea that she was subject to deportation, and appeared at an INS office for

the ostensible purpose of pursuing her application for adjustment in status. *Id*. at 403. When she arrived at the INS office, Fong was taken into custody and put on an airplane to Hong Kong the next day. *Id*. at 401-02.

In this case, Arias-Ordonez new from at least Tuesday, October 28, 2003, that he was going to be deported to Mexico if he showed up at the INS on the following Wednesday, November 4, 2003.[2]  In fact, Arias-Ordonez showed up two days later for his deportation, on Friday, November 6, 2003.  Thus, Arias-Ordonez had seven business days (nine total days) notice that he was going to be deported to Mexico, not counting the date of his surrender, November 6.

Finally, Arias-Ordonez can show no prejudice from the fact that he was arrested and deported in less than a 72-hour period.  Given that Arias-Ordonez did nothing to prevent his deportation during the nine days preceding his deportation, it would be sheer speculation for the Court to presume that an additional three days would have made any difference.  The Court should reject Arias-Ordonez's due process challenge based on the length of time between his arrest and his deportation.

## II.    ARIAS-ORDONEZ SHOULD NOT BE EXCUSED FROM THE REQUIREMENT THAT HE EXHAUST ADMINISTRATIVE REMEDIES.

The Court ordered the parties to brief the issue of whether Arias-Ordonez should be excused from exhausting administrative remedies because he did not receive explicit notice concerning his right to file a motion to reopen if he was ordered deported *in absentia*.  The United States has no evidence to suggest that Arias-Ordonez was explicitly informed of his right to file a motion to reopen if he missed his deportation hearing for some excusable reason.  Nevertheless, the record contains sufficient evidence to show that Arias-Ordonez had sufficient time and notice to discover and exhaust administrative remedies, had he chosen to pursue them.

Arias-Ordonez was ordered deported on June 6, 2003 after an *in absentia*

---

[2]  The undersigned consulted a 2003 calendar to determine the relevant days of the week.

1    deportation hearing.  On October 28, 2003, Arias-Ordonez's mother signed for a certified

2    letter from ICE informing Arias-Ordonez that he was going to be deported to Mexico at

3    the United States government's expense on November 4, 2003 and that he should report

4    to ICE in San Francisco at 8:00am on November 4, 2003 for that purpose.  Falk Decl.,

5    Exhibit E.  Arias-Ordonez reported to ICE on November 4, but was turned away because

6    he had no ID.  He returned on November 6 and was deported to Mexico that day.  Falk

7    Decl. Exhibits H, I.  Arias-Ordonez was bonded out of ICE custody in March, 2003, so he

8    was not in custody from the time he received the notice regarding his deportation until the

9    date he was actually deported.  Falk Decl., Exhibit D.

10         Thus, Arias-Ordonez had nine days, seven of them business days, during which he

11   had notice that he was about to be deported to Mexico, not counting November 6, the day

12   of his actual deportation.  During this time, he was out of custody, and had in his

13   possession a list of organizations and attorneys providing free immigration legal advice.

14   Falk Decl., Exhibit F, page 2 (noting that Arias-Ordonez was provided with this list on

15   March 3, 2003).  Arias-Ordonez had a reasonable amount of time in which to seek legal

16   advice and to file a motion to reopen his deportation proceedings.

17         In *United States v. Hinojosa-Perez*, 206 F.3d 832, 836 (9th Cir. 2000), the Ninth

18   Circuit refused to excuse an alien from exhausting administrative remedies when he was

19   taken into custody and held for eight days before being deported.  There, the Ninth

20   Circuit found that eight days was sufficient time to file a motion to reopen, and also noted

21   that Hinojosa-Perez had been told about his right to file a motion to reopen, and had

22   shown some familiarity with immigration proceedings.

23         Although Arias-Ordonez was not told explicitly about his right to file a motion to

24   reopen, and was perhaps not as schooled as Hinojosa-Perez in immigration procedures, he

25   did have access to free immigration legal advice, and had a reasonable amount of time to

26   pursue it.  Indeed, he does not even claim to have made a single phone call to an

27   immigration attorney or service provider during a nine-day period asking about how to

28   stop or stay his imminent deportation.  The Court should not excuse Arias-Ordonez from

1  exhausting his administrative remedies.

## III.    THE COURT SHOULD NOT PRESUME THAT ARIAS-ORDONEZ WAS PREJUDICED BY HIS FAILURE TO APPEAR.

The second part of the Ninth Circuit's test for "fundamental unfairness" in a deportation proceeding, after proof of a due process violation, is whether the defendant suffered prejudice as a result of the violation. *Ubaldo-Figueroa*, 364 F.3d at 1048. Arias-Ordonez asks the Court to find that he had a "plausible" ground to claim pre-hearing voluntary departure. Defendant's Supplemental Brief at 15. Arias-Ordonez attaches a declaration from an immigration law attorney – Angela Bean – stating that Arias-Ordonez was eligible for "pre-hearing voluntary departure," as opposed to voluntary departure that may be granted at the conclusion of proceedings. Falk Decl, Exhibit O at ¶4. The difference between these two forms of voluntary departure is that the former does not require a showing of good moral character, while the latter does. *Id*.

The problem with Arias-Ordonez's argument is that the record shows that Arias-Ordonez was offered pre-hearing voluntary departure and turned it down in favor of a full deportation hearing. The Notice of Rights attached to the ICE warrant for Arias-Ordonez's arrest (attached hereto as Exhibit A; it is the continuation of the document at Falk Decl. Exhibit C) includes a checklist in which Arias-Ordonez has the opportunity to select a deportation hearing, pre-hearing voluntary departure, or a request for asylum. Arias-Ordonez checked and initialed the box requesting a deportation hearing, did not check the box for pre-hearing voluntary departure, and signed the form.

Given this evidence that Arias-Ordonez did not accept pre-hearing voluntary departure when it was offered to him, it would not be reasonable for this Court to presume that Arias-Ordonez would have changed his mind at his deportation hearing, especially given his stated interest in going through a deportation hearing. *See, e.g.,* Falk Decl., Exhibit I at ¶22.

It is also noteworthy that Arias-Ordonez appears to confuse pre-hearing with post-hearing voluntary departure, when he cites several unpublished Ninth Circuit decisions

concerning the Immigration Court's obligation to notify an alien of his right to post-hearing voluntary departure. As Arias-Ordonez's immigration expert admits, post-hearing voluntary departure requires a showing of good moral character, and given his two prior convictions at the time – one of them a narcotics offense – it would not be reasonable for the Court to presume that Arias-Ordonez would have met the good moral character requirement.

Arias-Ordonez had already rejected pre-hearing voluntary departure when he requested a deportation hearing. He still maintains that he wanted a deportation hearing. The Court should not find prejudice based on the presumption that he would have changed his mind and requested pre-hearing voluntary departure at the beginning of his deportation hearing.

## CONCLUSION

Arias-Ordonez cannot show a due process violation during his deportation proceedings, or prejudice resulting from any claimed violation. He had a reasonable time to pursue administrative remedies, and should not be excused from complying with them. The Court should find that Arias-Ordonez has not sustained the burden of proof on his collateral attack under 8 U.S.C. § 1326(d).

DATED: April 23, 2008                                  Respectfully Submitted,

                                                       JOSEPH P. RUSSONIELLO
                                                       United States Attorney


                                                        /S/ Owen Martikan
                                                       OWEN P. MARTIKAN
                                                       Assistant United States Attorney

# EXHIBIT A

U.S. Department of Justice
Immigration and Naturalization Service

**Notice of Rights and Request for Disposition**

File No:    A 79 637 965

Name:   ARIAS-Ordonez, Noe

---

## NOTICE OF RIGHTS

You have been arrested because immigration officers believe that you are illegally in the United States.  You have the right to a hearing before the Immigration Court to determine whether you may remain in the United States.  If you request a hearing, you may be detained in custody or you may be eligible to be released on bond, until your hearing date.  In the alternative, you may request to return to your country as soon as possible, without a hearing.

You have the right to contact an attorney or other legal representative to represent you at your hearing, or to answer any questions regarding your legal rights in the United States.  Upon your request, the officer who gave you this notice will provide you with a list of legal organizations that may represent you for free or for a small fee.  You have the right to communicate with the consular or diplomatic officers from your country.  You may use a telephone to call a lawyer, other legal representative, or consular officer at any time prior to your departure from the United States.

---

## REQUEST FOR DISPOSITION

*NA* ✔
Initials

I request a hearing before the Immigration Court to determine whether or not I may remain in the United States.

Initials

I believe I face harm if I return to my country.  My case will be referred to the Immigration Court for a hearing.

Initials

I admit that I am in the United States illegally, and I believe I do not face harm if I return to my country.  I give up my right to a hearing before the Immigration Court.  I wish to return to my country as soon as arrangements can be made to effect my departure.  I understand that I may be held in detention until my departure.

*Noe Arias Ordonez*
Signature of Subject

*03 03-03*
Date

---

## CERTIFICATION OF SERVICE

X  Notice read by subject

Notice read to subject by _____, in the _____ language.

*N. HAGEDORN*
Name of Service Officer (Print)

_____
Signature of Officer

Name of Interpreter (Print)

*3/3/03   1700.*
Date and Time of Service

Form I-826 (Rev. 4-1-97) N