1   BARRY J. PORTMAN
    Federal Public Defender
2   ELIZABETH M. FALK
    Assistant Federal Public Defender
3   450 Golden Gate Avenue
    San Francisco, CA  94102
4   Telephone:  (415) 436-7700

5   Counsel for Defendant ARIAS-ORDONEZ

6

7               IN THE UNITED STATES DISTRICT COURT

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,      )  No. CR 07-00738 MMC
                           )
11               Plaintiff,  )  **DEFENDANT ARIAS-ORDONEZ'**
                           )  **SUPPLEMENTAL REPLY BRIEF IN**
12                           )  **SUPPORT OF MOTION TO DISMISS**
       v.                  )  **INDICTMENT**
13                           )
                           )
14                           )  Date:  May 7, 2008
   NOE ARIAS-ORDONEZ,         )  Time:  2:30 p.m.
15                           )  Court: Hon. Maxine M. Chesney
                           )
16             Defendant.  )
    _____)
17

18

19

20

21

22

23

24

25

26

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     Mr. Arias-Ordonez' Due Process Rights Were Violated . . . . . . . . . . . . . . . . . . . 2

           A.     Due Process Encompasses A Two-Part Test: A Right to Notice *and* A Full and Fair Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

           B.     In Terms of the Notice Requirement, Pre-AEDPA Caselaw Regarding Adequate Notice Only Applies in a Certified Mail Regime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           C.     In Addition to The Fact that Mr. Arias-Ordonez Did Not Receive Adequate Notice, His Due Process Rights Were Plainly Violated Through the Receipt of Form I-166 That Contained Erroneous Information About Mr. Arias-Ordonez' Potential Remedies, As Well as Through His Immediate Deportation . . . . . . . . . . . . . . . . . . . . . 7

    II.    Mr. Arias-Ordonez Should Be Deemed Excused from Exhausting Administrative Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    III.   Mr. Arias-Ordonez Did Not "Turn Down" Voluntary Departure and Was Prejudiced by the Due Process Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

1

2

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

3

4

*Andia v. Ashcroft,*
    359 F.3d 1181 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5

*Dobrata v. INS,*
    311 U.S. 1206 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

6

*Farhoud v. INS,*
    114 F.3d 867, 869 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7

8

*Farhoud v. INS,*
    122 F.3d 794 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 7

9

*Fong v. Ashcroft,*
    317 F. Supp. 2d 398 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

10

11

*Landon v. Plasencia,*
    459 U.S. 21 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

12

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13

14

*Sembiring v. Gonzalez,*
    499 F.3d 981 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15

*United States v. Estrada-Trochez,*
    66 F.3d 733 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6

16

17

*United States v. Hinojosa-Perez,*
    206 F.3d 832 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

18

*United States v. Mendoza-Lopez,*
    481 U.S. 828 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 8

19

20

*United States v. Ubaldo-Figueroa,*
    364 F.3d 1042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21

22

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

23

24

25

26

# FEDERAL STATUTES

8 U.S.C. § 1326 ......................................................... 1, 2

U.S. Const. amend. V ...................................................... 2

1    BARRY J. PORTMAN
     Federal Public Defender
2    ELIZABETH M. FALK
     Assistant Federal Public Defender
3    450 Golden Gate Avenue
     San Francisco, CA  94102
4    Telephone:  (415) 436-7700

5    Counsel for Defendant ARIAS-ORDONEZ

6

7                     IN THE UNITED STATES DISTRICT COURT

8               FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,              )    No. CR 07-00738 MMC
                                            )
11                   Plaintiff,             )    **DEFENDANT ARIAS-ORDONEZ'**
                                            )    **SUPPLEMENTAL REPLY BRIEF IN**
12          v.                              )    **SUPPORT OF MOTION TO DISMISS**
                                            )    **INDICTMENT**
13                                          )
                                            )
14   NOE ARIAS-ORDONEZ,                     )    Date:  May 7, 2008
                                            )    Time:  2:30 p.m.
15                                          )    Court: Hon. Maxine M. Chesney
                                            )
16                   Defendant.             )
     _____)
17

18                            **INTRODUCTION**

19          In *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), the United States

20   Supreme Court established the right of aliens facing criminal charges under 8 U.S.C. § 1326 to

21   collaterally attack their deportation orders.  In so ordering, the Court specifically held that "at a

22   minimum, the *result of an administrative proceeding* may not be used as a conclusive element of

23   a criminal offense where the judicial review that legitimated such a practice in the first instance

24   has effectively been denied." *Id.* at 839, n. 15 (emphasis added).  The rational for permitting

25   collateral challenges to deportation orders is grounded in the legal premise that defendants in

26

1   criminal cases enjoy heightened protection *vis a vis* civil litigants, due to the fact that the

2   government seeks to deprive the criminal alien of his most precious property - his freedom.

3          This Court should not allow the government to proceed with a criminal prosecution of Mr.

4   Arias-Ordonez for illegal reentry following deportation under 8 U.S.C. § 1326 because his

5   deportation was fundamentally unfair.  Because Mr. Arias-Ordonez was 1) deported in absentia

6   after receiving no notice of his deportation proceedings, 2) overtly mis-informed of his right to

7   contest the order, and 3) deported before he could do anything about either defect, this deportation

8   falls squarely within the ambit of *Mendoza-Lopez* . In simple terms, should this Court find that

9   Mr. Arias-Ordonez' deportation was far too flawed to now be used as a conclusive element of a

10  criminal prosecution.

## ARGUMENT

## I.     MR. ARIAS-ORDONEZ' DUE PROCESS RIGHTS WERE VIOLATED

13         The cases relied upon by the government in its argument that an alien's receipt of notice is

14  not required for due process to be completely satisfied are *Dobrata v. INS*, 311 U.S. 1206 (9th Cir.

15  2002) and *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997).  The government's limited reading

16  of these cases is misleading, because notice is only one component of a two part test for due

17  process requirements for *in absentia* deportation proceedings, as these cases set forth.  Moreover,

18  on the "notice" prong of this test, *Dobrata* and *Farhoud* solely address notice requirements pre-

19  AEDPA, when the INS was required to notify aliens of their hearings by certified mail.  Neither

20  case forecloses Mr. Arias-Ordonez' claim that the deportation hearing he never had post-AEDPA

21  violated due process requirements.

### A.  Due Process Encompasses A Two-Part Test: A Right to Notice *and* A Full and Fair Hearing

24         Due process includes *both* the right to a full and fair hearing (and an opportunity to be

25  heard at that hearing,) as well as notice of the hearing.  U.S. Const. amend. V; *Landon v.*

26

1   *Plasencia*, 459 U.S. 21, 32-33 (1982).  This two-part test is re-affirmed in *Dobrata*, 311 F.3d at

2   1210 ("Aliens facing deportation are entitled to due process under the Fifth Amendment of to the

3   United States Constitution, encompassing a full and fair hearing and notice of that

4   hearing.")(citing *Farhoud*, 122 F.3d at 796).  The *Dobrata* case then proceeds to discuss the

5   "notice" prong of the two-part test, and finds that the INS failed to adequately notice the alien.  *Id*.

6   at 1211.  Accordingly, Dobrata successfully made out his due process claim, and the Ninth Circuit

7   needed to go no further.  This case does not stand for the proposition that government compliance

8   with notice requirements ends the due process inquiry completely – such inquiry has nothing to do

9   with whether or not the alien was afforded a full and fair hearing.  Under a pre-AEDPA certified

10  mail regime (discussed below) governmental compliance with notice requirements ends the

11  inquiry on the "notice" prong of the due process test, but has no bearing on the "full and fair

12  hearing" part of the test.

13      This is where Arias-Ordonez' failure to receive notice comes to bear on the due process

14  analysis, because under both pre-AEDPA and post-AEDPA caselaw, an alien is entitled to re-open

15  *in absentia* deportation proceedings if he successfully rebuts the presumption of effective notice

16  (and thereby proves that the in absentia deportation proceedings was not a "full and fair" because

17  his failure to present himself was due to no fault of his own.)  The motion to reopen *in absentia*

18  proceedings is accordingly a statutory vehicle designed by Congress to ensure that due process

19  requirements are satisfied through the *in absentia* process – it is not, as the government claims, a

20  statutory construction that is irrelevant to the due process analysis here.

21      A close reading of *Farhoud* dictates the same result.  In evaluating *Farhoud,* this Court

22  should first turn to the Fifth Circuit case relied on by the Ninth Circuit in reaching its decision –

23  *United States v. Estrada-Trochez*, 66 F.3d 733 (5th Cir. 1995).  There, the Fifth Circuit found that

24  "holding a deportation hearing in absentia does not *per se* violate due process. . . an *in absentia*

25  hearing is permissible if the alien has been given a 'reasonable opportunity to be present at the

26

1   proceeding' and 'without reasonable cause fails or refuses to attend." *Id.* at 736 (citations

2   omitted).  In other words, both parts of the test must be met before due process concerns with in

3   absentia deportation proceedings are satisfied.  The Fifth Circuit then found that because Estrada-

4   Trochez had moved from his last known address, his failure to attend the hearing was his own

5   fault – the INS properly notified him under the requirements of the statute, and his failure to

6   attend was not reasonable.  Accordingly, the *in absentia* deportation process was both a "full and

7   fair" hearing despite his absence, and was properly noticed – thereby meeting due process

8   requirements.

9       *Farhoud* adopts the Fifth Circuit's reading of due process requirements for *in absentia*

10  deportation proceedings.  First, the Ninth Circuit reviewed whether notice was properly mailed as

11  required by statute.  *See* 122 F.3d at 796.  Next, the second prong of the due process test was

12  considered by the Ninth Circuit – to see if Farhoud met the "exceptional circumstances"

13  requirement (only applicable pre-AEDPA in a certified mail regime) to rebut the presumption of

14  actual receipt, which in turn would have rendered the in absentia deportation proceeding not "full

15  his residence signed for the certified notice, Farhoud did not rebut the stringent presumption and

16  fair" because Farhoud's absence would have been reasonably explained.  Because someone at

17  applicable pre-AEDPA.  There accordingly were no due process problems with Farhoud's *in*

18  *absentia* deportation.

19      As a last ditch effort to save his claim, the separate due process challenge raised by

20  Farhoud and addressed by the government's response was not related to his individualized

21  situation, as is Mr. Arias-Ordonez'.  Instead, Farhoud's challenged the entire notice procedure

22  under the Immigration and Nationality Act (i.e., the certified mail regime) as constitutionally

23  deficient.  In rejecting that particular claim, the Ninth Circuit held that the statute requiring notice

24  to aliens by certified mail comported with due process requirements because "service is conducted

25  in a manner 'reasonably calculated' to ensure that notice reaches the alien." *Id.* at 796.  This

26

1   language simply affirms that the certified mail regime adopted by Congress comports with due

2   process, and that the certified mail method in notifying aliens about their proceedings does not

3   violate the "notice" (first prong) component of the due process test.  As previously argued, this

4   holding has nothing to do with the case-by-case determination that reviewing courts must make as

5   to whether or not an *in absentia* deportation proceeding conducted in an alien's absence was also

6   'full and fair' – i.e., conducted with the alien's known absence or reckless indifference to service.

7            In other words, under the "full and fair" part of the test, an *in absentia* deportation hearing

8   is only "full and fair" if an alien fails to receive notice of the hearing through fault of his own or

9   knows about the hearing but has no reasonable excuse for failing to show up.  The motion to

10  reopen authorized by statute is the vehicle through which the alien and the government can ensure

11  that the "full and fair hearing" due process requirement is satisfied – by meeting the motion's

12  requirements, the alien proves that he was not recklessly indifferent to service or that his absence

13  is reasonably explained.  In the pre-AEDPA years of a certified mail regime, it was extremely

14  difficult for aliens to explain their absence from hearings when certified mailings were delivered

15  and signed for at their homes – which is why Farhoud was out of luck with his legal challenge.

16           The same is *not* the case with Mr. Arias-Ordonez, whom this Court has already found has

17  successfully rebutted the far-lesser presumption of having received the notice of hearing in a post-

18  AEDPA, non certified mail regime (addressed below).  *See Sembiring v. Gonzalez*, 499 F.3d 981,

19  982-983 (9th Cir. 2007)(lesser showing required under regular mail regime to reopen deportation

20  proceedings, thereby cancelling and order of removal entered *in absentia*.)  Because this Court has

21  already found that Mr. Arias-Ordonez had grounds to file a motion to re-open and has rebutted the

22  applicable presumption, this Court cannot conclude that the deportation proceedings conducted in

23  his absence were "full and fair" (regardless of whether or not the government meets the "notice"

24  prong of the due process test.)  Indeed, Mr. Arias-Ordonez' deportation proceeding was not full

25  and fair, because he has convinced this court, with credible evidence, that he genuinely did not

26

1   receive the non-certified mailed notice, by showing the Court that he took action to self-surrender

2   to the INS once he received a certified mailing directing him to do so.  This Court reasonably

3   found Mr. Arias-Ordonez' actions in this regard inconsistent with an individual who would dodge

4   a Notice to Appear four months earlier.  Accordingly, Mr. Arias-Ordonez was deported

5   unknowingly, and through no fault of his own did not have an opportunity to be heard by the

6   Immigration Judge.  He thus has "reasonable cause" for his "failure to attend," and the *in absentia*

7   deportation proceeding did not comport with due process.  *See Estrada-Trochez*, 66 F.3d at 736.

8       In sum, contrary to the government's argument in its Supplemental Opposition, the

9   question of whether or not the government adequately complied with the "notice" prong of the

10  due process test is not the end of the due process inquiry - it is solely one prong of a two-step

11  analysis that has been recognized since *Mathews v. Eldridge*, 424 U.S. 319 (1976).[1]  This Court's

12  holding as to whether or not the government met its notice obligations in this case does not end

13  the inquiry as to whether Mr. Arias-Ordonez' in absentia proceedings were "full and fair."  As the

14  proceedings in this case were not "full and fair", Mr. Arias-Ordonez has successfully mounted a

15  due process challenge to the order of deportation entered against him.

16  //

17  //

18  //

19

20      [1] The government's complaints about Mr. Arias-Ordonez' citation to *Andia v. Ashcroft*, 359
    F.3d 1181 (9th Cir. 2004) for this proposition are not well founded.  As a starting place, *Andia* does
21  not distinguish *Dobrata* and *Farhoud* – it merely cites these cases as support for the proposition that
    aliens facing deportation are entitled to the two-part due process test identified above - notice of the
22  hearing and a full and fair hearing.  *Id*. at 1185.  According to the plain language of the case, the
    issue requiring remand to the BIA was whether or not the alien petitioners *received* actual notice.  In
23  that case, there was no dispute that the INS properly *sent* notice by certified mail to the address on
    file of the alien  – 2130 Crescent Avenue.  Were it true that the end of the due process inquiry is
24  limited to the draconian question of whether or not the government *sent* notice in a proper manner, as
    the government's argument before this Court urges, there would have been no reason for the Ninth
25  Circuit to remand for a determination by the BIA on the merits as to whether or not Andia *received*
    notice.  Mr. Arias-Ordonez accordingly cites *Andia* for the valid proposition that statutory
26  compliance on the part of the INS with mailing the notice does not end the due process inquiry.

**B.  In Terms of the Notice Requirement, Pre-AEDPA Caselaw Regarding Adequate Notice Only Applies in a Certified Mail Regime**

It is also important to note that the *Farhoud* and the *Dobrata* cases are pre-AEDPA holdings regarding the adequacy of notice in a *certified* mail regime.  Accordingly, this Court should only read these cases as properly holding that service conducted in accordance with pre-AEDPA statutes requiring certified mail is service conducted "in a manner 'reasonably calculated' to ensure that notice reaches the alien. *Farhoud*, 122 F.3d at 796.  Interestingly, the initial *Farhoud* decision was amended by the Ninth Circuit to reflect the fact that certified mail, not regular mail, comported with due process requirements.  Compare *Farhoud v. INS*, 114 F.3d 867, 869 (9th Cir. 1997)("we agree with the Fifth Circuit that notice of a deportation hearing sent by regular mail to the last address provided by the alien to the INS satisfies that requirements of constitutional due process under *Mullane*") with *Farhoud*, 122 F.3d at 796 (amended decision in which reference to regular mail service comporting with due process is omitted.)  Mr. Arias-Ordonez could not find a post-AEDPA published case in the Ninth Circuit that holds that regular mail service of a deportation order comports with the government's due process obligation to provide adequate notice, or that applies *Dobrata* or *Farhoud's* holding to a post-AEDPA, regular mail service case.  As such, it is not at all clear that the adequate notice holding of *Dobrata* and *Farhoud* even apply in this case, or that regular mail service to Mr. Arias-Ordonez  comported with the government's due process obligations on the "notice" prong in the instant case, which addresses post-AEDPA mailing standards.

**C.  In Addition to The Fact that Mr. Arias-Ordonez Did Not Receive Adequate Notice, His Due Process Rights Were Plainly Violated Through the Receipt of Form I-166 That Contained Erroneous Information About Mr. Arias-Ordonez' Potential Remedies, As Well as Through His Immediate Deportation**

Adding insult to injury in this matter is the fact that the INS sent out a Form I-166 that provided erroneous information to Mr. Arias-Ordonez, in contravention to his rights under the motion-to-reopen statute.  This INS action itself, standing alone, violated Mr. Arias-Ordonez' due

1    process rights, as it is erroneously misled Mr. Arias-Ordonez into believing that he had no avenue

2    for relief from deportation (and thus, no reason to ask for help in contesting the deportation order.)

3    The government contests this argument with a factually incorrect conclusion that this error "had

4    nothing to do with Arias-Ordonez' underlying deportation proceeding" as well as an unsupported

5    contention that a due process error must arise during an actual deportation hearing.

6         The government's first contention is factual error. By statute, Mr. Arias-Ordonez had a

7    right to move to reopen his *in absentia* deportation proceeding. As such, erroneous advice

8    provided through the Form I-166 after the hearing has everything to do with the entry of the final

9    deportation order. A successful motion to reopen would have vitiated the June 3, 2003 order of

10   deportation, and it would not exist today for the government to rely on in this § 1326 prosecution.

11   The Form I-166 overtly hides this important remedy from Mr. Arias-Ordonez by utterly and

12   completely misstating the law applicable to his case – for no valid reason.

13        As to the government's second contention, under the mandates of *Mendoza-Lopez*, it is the

14   result of the proceeding – not just the proceeding itself – that an alien challenges when raising a

15   collateral attack. "At a minimum, the *result of an administrative proceeding* may not be used as a

16   conclusive element of a criminal offense where the judicial review that legitimated such a practice

17   in the first instance has effectively been denied." *Mendoza-Lopez,* at 481 U.S. at 839, n. 15

18   (emphasis added). Here, the "result" that the government seeks to use is the order of deportation

19   entered against Mr. Arias-Ordonez – an order that would not have been entered had he been

20   provided with proper advice that he had an opportunity to cure the errors of the *in absentia*

21   deportation process by filing a motion to re-open. That order went unchallenged in part due to the

22   Form I-166's directive to Mr. Arias-Ordonez that it would be fruitless to challenge the order. This

23   error positions Mr. Arias-Ordonez in similar stead with the individuals who waived their appeals

24   to the BIA after being erroneously informed that no form of relief was available to them, such as

25   the aliens in *Pallares Gallan* and *Ubaldo-Figueroa*. The deportation process violates due process

26

when aliens are misinformed about their remedies, yet have valid remedies to pursue that would

have possibly resulted in their deportation orders being rescinded.  Mr. Arias-Ordonez accordingly

was prejudiced by this due process violation, as this Court has previously held that he had valid

grounds to file a motion to reopen and most likely would have rebutted the presumption of

effective service.  The erroneous advisement in the Form I-166 accordingly affected the outcome

of the proceedings to Mr. Arias-Ordonez' detriment, as he was deported under the misimpression

that he did not have any remedies available to him.  Furthermore, had he filed a motion to reopen

the proceedings and obtained a new deportation hearing, the IJ would have been required to

advise him about voluntary departure, for which he was eligible.  The circumstances at issue in

this case caused real harm to Mr. Arias-Ordonez.  The deportation order cannot be used in this

criminal prosecution as a result.

Contrary to the government's argument, INS forms provided to an alien facing deportation

that are erroneous or misleading can constitute a due process violation – there is no requirement

set forth in any Ninth Circuit case that the due process error must arise from either an Immigration

Judge's statements to an alien, or at the actual hearing only.  *See Walters v. Reno*, 145 F.3d 1032,

1042 (9th Cir. 1998).  In *Walters*, the Ninth Circuit affirmed a district court's holding that

"confusing and affirmatively misleading" forms provided to aliens violated the aliens' due process

rights.  *Id*. at 1043.  At no point did *Walters* hold that errors made by the INS by providing

misleading forms did not rise to due process violations because the forms were provided *outside*

of any deportation hearing or proceeding itself, as the government claims is the case.

With respect to the 72 hour rule, Mr. Arias-Ordonez asks this Court to hold, as did the

Court in *Fong v. Ashcroft*, 317 F.Supp. 2d 398, 402-403, that immediate deportation following

arrest constitutes a due process violation because it precludes the alien from taking any reasonable

action to remedy a defective *in absentia* deportation proceeding.  As noted by the *Fong* court,

were the government correct that the 72 hour rule has been eliminated, ICE can purportedly whisk

1    defendants away minutes after their deportation proceedings without providing them the

2    opportunity to even file an appeal. *Id.* at 403. This is precisely what happened to Mr. Arias-

3    Ordonez; directly after he self-surrendered and tried to absorb what was happening to him, he was

4    already on a bus to Mexico without having any opportunity to consult with family members or an

5    attorney. Due process considerations cannot allow this Court to ignore the Immigration and

6    Customs Enforcement's flagrant disregard for Mr. Arias-Ordonez' statutory right to file a motion

7    to reopen the proceedings.

8

9    **II.    MR. ARIAS-ORDONEZ SHOULD BE DEEMED EXCUSED FROM
            EXHAUSTING ADMINISTRATIVE REMEDIES**

10          The government's supplemental response concedes that it has no evidence that Mr. Arias-

11   Ordonez was informed of his right to file a motion to reopen. *See* Gov. Supp. Resp. at 6:21-22.

12   This concession succinctly answers the Court's second inquiry to the parties, because Mr. Arias-

13   Ordonez was not informed of the administrative remedies that were available to him.[2]

14          Mr. Arias-Ordonez can find no case in this Circuit that holds an alien responsible for

15   hiring an attorney to pursue administrative remedies after being explicitly misinformed that said

16   remedies do not exist, which is essentially what the government argues here. *See* Gov. Supp.

17   Resp. at 7:23-25 (arguing that Mr. Arias-Ordonez should not be deemed to have exhausted

18   administrative remedies because he could have called an attorney, but did not.) This argument

19   flies in the face of Ninth Circuit caselaw, particularly since Mr. Arias-Ordonez was explicitly

20   informed on the INS Form I-166 that he had no reason to call an attorney, because he had no

21   administrative remedies available to him. The situation faced by Mr. Arias-Ordonez in this regard

22   is akin to the aliens in *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, and *United States v.*

23

24          [2] According to the notes of the parties from the April 2, 2008 hearing, the second issue the
25   Court requested the parties to brief was "is the defendant excused from exhausting administrative
     remedies if ICE records show that he was informed of his right to file a motion to reopen after failing
26   to appear for his hearing?"

1    *Pallares-Galan*, who were deemed to have exhausted administrative remedies for collateral attack

2    purposes when the IJs in charge of their cases misinformed them that no relief from deportation

3    was available.  Were the government correct in its argument that aliens should be held responsible

4    for seeking out attorneys after receiving official, erroneous advice that no relief from deportation

5    is available, cases such as *Ubaldo-Figueroa* and *Pallares-Galan* would not exist.

6         The government's argument regarding *United States v. Hinojosa-Perez*, 206 F. 3d 832,

7    836 (9th Cir. 2000) ignores the fact that the Immigration Service's proper and timely advisement

8    of administrative remedies to the alien was central to the Ninth Circuit's decision.  While the

9    government acknowledges that Mr. Arias-Ordonez was not similarly situated with defendant

10   Hinojosa-Perez in terms of his lack of awareness of possible remedies, it incorrectly focuses on

11   the similarity of the time period in which the two defendants were aware that deportation was

12   inevitable (eight days for Hinojosa, seven days for Mr. Arias-Ordonez).  Yet logically, this time

13   period only becomes relevant once an alien is aware that relief is available – otherwise, the

14   *Hinojosa* court would not have devoted a lengthy paragraph to explain that defendant Hinojosa

15   was well aware of the remedies he could have exercised in the eight day period.  *Id*.  In contrast,

16   Mr. Arias-Ordonez was specifically told that no relief was available during the seven day period

17   between his receipt of the I-166 form and his deportation.  An alien is not required to disbelieve

18   an official advisement from ICE about the fruitlessness of administrative remedies to meet the

19   requirements of a successful collateral attack.  This Court should accordingly deem Mr. Arias-

20   Ordonez as having exhausted the "administrative remedies" prong.

21   **III.    MR. ARIAS-ORDONEZ DID NOT "TURN DOWN" VOLUNTARY DEPARTURE
            AND WAS PREJUDICED BY THE DUE PROCESS VIOLATIONS**

22

23        The government's response to Mr. Arias-Ordonez' supplemental briefing regarding the

     "prejudice" prong is both legally and factually incorrect.  Out of nowhere, the government
24
     suddenly argues that Mr. Arias-Ordonez was not prejudiced by the defects in his deportation
25
     proceeding because "Mr. Arias-Ordonez was offered pre-hearing voluntary departure and turned it
26

1   down in favor of a full deportation hearing." Gov. Supp. Brief at 8: 15-16.  The form relied on by

2   the government says no such thing.  *See id.* at Exhibit A, Notice of Rights.  This form contains no

3   explanation of "voluntary departure" nor indicates that any such "offer" of pre-hearing voluntary

4   departure was ever made to Mr. Arias-Ordonez.  *Id*.  The government's assumption that Mr.

5   Arias-Ordonez specifically "turned down" a voluntary departure option by requesting a hearing is

6   utterly unsupported by the plain text of the form.

7        Moreover, the space on the form that the government assumes is the "voluntary departure"

8   option is actually an agreement to accept deportation "as soon as arrangements can be made," and

9   also an agreement to remain in ICE custody.  This option is entirely different from the pre-hearing

10  voluntary departure remedy, which is allows an alien 120 days out of custody to say goodbye to

11  friends and family and resolve one's affairs.  *See* Declaration of Angela Bean, ("Bean

12  Declaration") attached hereto as Exhibit A, at ¶ 6, ¶10.  This remedy is only available when an

13  Immigration Judge grants a pre-hearing voluntary departure period of 120 days at a deportation

14  hearing.  *Id.* at ¶ 6.  In other words, the only way that an alien can obtain the benefits that come

15  from pre-hearing voluntary departure (versus removal) is by electing to have a hearing before an

16  IJ, as Mr. Arias-Ordonez did.  His request for a hearing was accordingly a *prerequisite* for

17  obtaining pre-hearing voluntary departure and release on bond – not a rejection of the voluntary

18  departure remedy.  If anything, Mr. Arias-Ordonez' request for a deportation hearing on the

19  Notice demonstrates that he was interested in pursuing all remedies available to him, rather than

20  simply allowing ICE to deport him to Mexico while in custody.  It is therefore the government,

21  not Mr. Arias-Ordonez, who is confused, both regarding the necessary steps an alien must take to

22  obtain a grant of pre-hearing voluntary departure, as well as the practical effect of a  alien's

23  election to waive a deportation hearing on the Notice of Rights form.

24        Nor is Mr. Arias-Ordonez confusing  pre-hearing and post-hearing voluntary

25  departure.  As set forth in detail by immigration law expert Angela Bean, "pre-hearing voluntary

26

1   departure is available at any point prior to the completion of removal proceedings." *See*

2   Declaration of Angela Bean, attached hereto as Exhibit A, at ¶ 3.  Had Mr. Arias-Ordonez 1)

3   properly received notice of his deportation hearing or 2) successfully moved to reopen deportation

4   proceedings after arrest, pre-hearing voluntary departure would have been a remedy available to

5   him in lieu of removal at that time.  *Id.*  The *in absentia* deportation order entered against Mr.

6   Arias-Ordonez thereby prejudiced him because he was denied the ability to apply for this form of

7   relief.

8         Notably, the government does not dispute that Mr. Arias-Ordonez' had a plausible case

9   for pre-hearing voluntary departure.  In the expert opinion of Ms. Bean, it was "highly probable"

10  that Mr. Arias-Ordonez would have been granted pre-hearing voluntary departure.  *See* Bean

11  Declaration, Exhibit A at ¶ 12-13.  As set forth in the opening Supplemental Brief, Mr. Arias-

12  Ordonez had many positive attributes that would have supported an IJ's determination that pre-

13  hearing voluntary departure was appropriate in his case.  The government offers no evidence to

14  the contrary.  This Court should therefore conclude that Mr. Arias-Ordonez meets the "prejudice"

15  prong of the collateral attack analysis, because he was eligible for a remedy that would have

16  allowed him to escape deportation, and he had a plausible claim to a grant of said remedy.  In

17  other words, the outcome of the proceedings could very well have been different had Mr. Arias-

18  Ordonez been provided the full and fair opportunity for a hearing in which his rights and remedies

19  were accurately explained to him.

20                                    **CONCLUSION**

21         For the reasons expressed both here and in the briefing already submitted, Mr. Arias-

22  Ordonez respectfully requests that the indictment be dismissed because the flawed order of

23  //

24  //

25  //

26

Supplemental Reply, *U.S. v. ARIAS-ORDONEZ*
No. CR  07-00738 MMC                              13

1  deportation cannot serve as a predicate of the instant prosecution for illegal reentry.

2

3  Dated: April 30, 2008

4                                          Respectfully submitted,

5                                          BARRY J. PORTMAN
                                           Federal Public Defender
6
                                                    /S/
7
                                           ELIZABETH M. FALK
8                                          Assistant Federal Public Defender

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26