Exhibit A

1  BARRY J. PORTMAN
   Federal Public Defender
2  ELIZABETH FALK
   Assistant Federal Public Defender
3  450 Golden Gate Avenue
   19th Floor
4  San Francisco, CA. 94102
   Counsel for Defendant Noe Arias Ordonez
5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,                )
                                             )
11                        Plaintiff,         )      DECLARATION OF ANGELA BEAN IN
                                             )      SUPPORT OF Noe Arias Ordonez
12  vs.                                      )
                                             )
           Noe ARIAS ORDONEZ,               )
13                        Defendant.         )
   ──────────────────────────────────────── )
14                                           )
                                             )
15                                           )

16

17     I, Angela Bean, declare:

18     1.    I am an attorney admitted to practice in all courts of the State of California and in

this Court. I have personal knowledge of the facts set forth in this declaration, and, if called as a

19  witness, could testify to those facts under oath. I am submitting this declaration as an expert

20  witness and certified specialist in Immigration and Nationality Law.

21     2.    This declaration supplements my initial statement, and addresses the

22  Government's contention that because Mr. Arias Ordonez pursued his right to seek a hearing in

23  front of an immigration judge, rather than acquiesce to his immediate departure from the United

24  States without further proceedings, he could not reasonably have sought pre-hearing voluntary

25

26     BEAN DECL.                                 1

1   departure at his removal hearing.

2      3.    As a point of clarification, despite its name, "pre-hearing voluntary departure", is

3   available at any point prior to the completion of removal proceedings.  INA § 240B(a)(1).

4   Accordingly, "pre-hearing voluntary departure" would have been a possible remedy for Mr. Arias

5   Ordonez at his June 6, 2003 hearing.

6      4.    Regarding the government's argument, there are several reasons for Mr. Arias

7   Ordonez to exercise his right to a hearing in front of an immigration judge, and even if he would

8   have ultimately sought pre-hearing voluntary departure.  Accepting departure without appearing

9   before an immigration judge is a distinct, and lesser, benefit than pre-hearing voluntary departure

10  granted at a removal hearing.

11     5.    First, the consequences of accepting a prompt departure are ambiguous and not

12  explained on the form presented to Mr. Arias Ordonez.  Notably, the option is not specifically

13  designated "voluntary departure".  Furthermore, in my experience, the processing of the prompt

14  departure option is inconsistent, and it is not clear that Mr. Arias Ordonez would have ultimately

15  been able to avoid removal by ICE officers had he elected this option.

16     6.    Further, if he did not request a hearing, Mr. Arias Ordonez explicitly would have

17  accepted departure "as soon as arrangements can be made", and to remain in custody until

18  departure.  In contrast, the immigration judge can grant a pre-hearing voluntary departure period

19  of up to 120 days, and Mr. Arias Ordonez was eligible to be free on bond during this time.  He

20  would have also been able to make his arrangements for departure, whereas those who elect to

21  depart instead of a hearing may be removed in ICE custody.

22     7.    Finally, even though Mr. Arias Ordonez likely would have been eligible only for

23  pre-hearing voluntary departure in front of an immigration judge, he was not in a position to make

24  such a determination when provided with a Request for Disposition.  Notably, he was in DHS

25  custody when given the form, making access to counsel much more burdensome.  Non-citizens are

26  BEAN DECL.                          2

1    given the form shortly after there are taken into DHS custody, and usually before they are able to

2    seek counsel. In fact, non-citizens are advised of their right to counsel on the same form as the

3    Request for Disposition, sometimes in the first instance.

4         8.    In addition to usually lacking counsel, non-citizens are encouraged to make a

5    decision regarding how they choose to proceed relatively quickly. If they do accept a prompt

6    departure, such an election is very difficult to rescind, while they are at greater liberty to return to

7    their home countries if they initially elect to see an immigration judge.

8         9.    Since Mr. Arias Ordonez would not have been released from custody without

9    requesting a hearing, such step permitted him to fully investigate any potential relief from removal.

10    Even if he did not seek counsel, the immigration judge would have been obligated to inform Mr.

11    Arias Ordonez of any potential remedies she was able to identify. 8 C.F.R. §1240.11(a)(2). It is

12    eminently reasonable that someone presented with a Request for Disposition would seek expert

13    immigration advice before departing the United States, rather than simply leaving on the

14    assumption that no relief was available.

15        10.    Notably, Mr. Arias Ordonez's immigration file indicates that on the same day he

16    was presented with his Request for Disposition, the government also determined he would be

17    released from custody upon posting a $5,000 bond. The file also indicates he was ultimately

18    released on bond two days later. Being free from custody prior to leaving the country, with the

19    opportunity to say good-bye to friends and family, as well as resolving one's affairs, is frequently

20    sufficient incentive alone to request a hearing.

21        11.    Therefore, it is usually highly preferable for non-citizens to exercise their right to a

22    hearing in front of an immigration judge, even if they ultimately accept pre-hearing voluntary

23    departure. The government inference that Mr. Arias Ordonez would not have accepted pre-hearing

24    voluntary departure simply because he chose to proceed with a hearing with an immigration judge

25    is wholly incorrect.

26    BEAN DECL.                                    3

1     12.    Had Mr. Arias Ordonez sought pre-hearing voluntary departure in front of the

2  immigration judge, it is highly probable his request would have been granted. While voluntary

3  departure is subject the immigration judge's discretion, the burden in such requests is much lower

4  than for benefits conferring a right to remain in the United States. Generally, the DHS attorneys

5  do not oppose requests for pre-hearing voluntary departure, as they ensure a timely departure and

6  save the government the expense of deporting the alien.

7     13.    Furthermore, by accepting pre-hearing voluntary departure, Mr. Arias Ordonez

8  would relinquish his right to appeal the immigration judge's decision, thereby requiring him to

9  leave the country within 120 days. A denial of voluntary departure, however, could be appealed to

10  the Board of Immigration Appeals. Mr. Arias Ordonez would be able to remain in the United

11  States while the appeal was pending, usually for several months even well beyond one year.

12  Accordingly, even an immigration judge holding a dim view of Mr. Arias Ordonez would likely

13  grant his pre-hearing voluntary departure request, rather than provide him with an opportunity to

14  extend his stay.

15     I declare under penalty of perjury under the laws of the United States that the foregoing is

16  true and correct.

17     EXECUTED Friday, April 25, 2008, Oakland, California.

18

19     _____

Angela M. Bean

20  Attorney at Law

Oakland, California

21

22

23

24

25

26    BEAN DECL.                   4

04/25/2008 17:17 FAX 510 433 1901          ANGELA BEAN & ASSOCIATES                    @004

1    12.    Had Mr. Arias Ordonez sought pre-hearing voluntary departure in front of the

2    immigration judge, it is highly probable his request would have been granted.  While voluntary

3    departure is subject the immigration judge's discretion, the burden in such requests is much lower

4    than for benefits conferring a right to remain in the United States.  Generally, the DHS attorneys

5    do not oppose requests for pre-hearing voluntary departure, as they ensure a timely departure and

6    save the government the expense of deporting the alien.

7    13.    Furthermore, by accepting pre-hearing voluntary departure, Mr. Arias Ordonez

8    would relinquish his right to appeal the immigration judge's decision, thereby requiring him to

9    leave the country within 120 days.  A denial of voluntary departure, however, could be appealed to

10   the Board of Immigration Appeals.  Mr. Arias Ordonez would be able to remain in the United

11   States while the appeal was pending, usually for several months even well beyond one year.

12   Accordingly, even an immigration judge holding a dim view of Mr. Arias Ordonez would likely

13   grant his pre-hearing voluntary departure request, rather than provide him with an opportunity to

14   extend his stay.

15   I declare under penalty of perjury under the laws of the United States that the foregoing is

16   true and correct.

17   EXECUTED Friday, April 25, 2008, Oakland, California.

18

19   _____
     Angela M. Bean

20   Attorney at Law
     Oakland, California

21

22

23

24

25

26   BEAN DECL.                                           4