

Exhibit A

Declaration of Angela Bean

BARRY J. PORTMAN
1   Federal Public Defender
ELIZABETH FALK
2   Assistant Federal Public Defender
450 Golden Gate Avenue
3   19th Floor
San Francisco, CA. 94102
4   Counsel for Defendant Noe Arias Ordonez

5

6               IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   UNITED STATES OF AMERICA,          )   DECLARATION OF ANGELA BEAN IN
                                       )   SUPPORT OF Noe Arias Ordonez
10                 Plaintiff           )
                                       )
11        vs.                          )
                                       )
12        Noe ARIAS ORDONEZ,           )
                             Defendant.)
13   ─────────────────────────────────

14        I, Angela Bean, declare:

15   1.   I am an attorney admitted to practice in all courts of the State of California
          and in this Court. I have personal knowledge of the facts set forth in this
16        declaration, and, if called as a witness, could testify to those facts under oath.
17        I am submitting this declaration as an expert witness and certified specialist in
          Immigration and Nationality Law.

18
     2.   This declaration supplements my prior two statements, and addresses concerns
19        which I understand have been raised by the Court. Specifically, this discusses
          the circumstances under which Mr. Arias Ordonez would have been advised
20        of voluntary departure had he appeared before the immigration court *pro se*,
          and why he likely would have accepted such an option.
21

22   3.   In addition to my previous statement of qualifications, I wish to clarify my
          experience with removal and deportation matters. I have practiced
23        exclusively immigration and nationality law for over twenty-four years,
          handling deportation and removal matters during the entire period. I have
24        personally represented hundreds, if not thousands, of non-citizens in removal
          and deportation proceedings.
25

     4.   Furthermore, the type of proceeding which Mr. Arias Ordonez failed to attend
26

is known as a Master Calendar hearing. A Master Calendar hearing is both a
scheduling hearing, and one in which the parties determine what defenses the
respondent will seek. Mr. Arias Ordonez would have been presented the
opportunity seek pre-hearing voluntary departure at a Master Calendar
hearing.

5.   As the individual hearings are fairly short, Immigration Judges schedule
dozens of respondents for a single Master Calendar session. Therefore,
attorneys usually witness several unrelated cases while waiting for their
clients' hearings. I have easily witnessed thousands of Master Calendar
hearings, for both *pro se* respondents and those with counsel, in the course of
representing my own clients.

6.   Moreover, in review of the file, I have noted that the immigration judge who
ordered Mr. Arias Ordonez removed was Miriam Hayward. I have personally
appeared in front of Judge Hayward on numerous occasions, and am very
familiar with how she conducts removal proceedings.

7.   Even if Mr. Arias Ordonez had appeared without counsel to his June 6, 2003
Master Calendar hearing, he probably would have still been able to avail
himself of an attorney for two reasons. First, Master Calendar hearings in San
Francisco frequently have *pro bono* attorneys who will represent respondents
for that hearing only. Having served in this capacity before, I can verify that
*pro bono* attorneys advise the respondent of the nature of the proceedings,
discuss any possible relief, and provide representation at the hearing.

8.   Based upon a review of the materials which would have been available to a
*pro bono* attorney, it would have been apparent that Mr. Arias Ordonez likely
did not have any form of relief other than voluntary departure. A *pro bono*
attorney therefore, would have advised Mr. Arias Ordonez of this opinion, and
explained voluntary departure. When presented with respondents such as Mr.
Arias Ordonez while serving as a *pro bono* counsel, I advise them to seek an
attorney for a full consultation, but relay that their best option may ultimately
be to apply for voluntary departure.

9.   Additionally, immigration judges will usually also permit at least one
continuance for an unrepresented respondent to retain counsel. I have
appeared in front of Immigration Judge Hayward on numerous occasions, and
can state with near certainty that she would have provided Mr. Arias Ordonez
at least one continuance for him to retain an attorney.

10.  Had Mr. Arias Ordonez proceeded without counsel, then Judge Hayward
would have assessed the possibility of any forms of relief, usually in
consultation with the attorney for Immigration and Customs Enforcement
("ICE"), and the *pro bono* attorney, if there is one. While such analysis would
have been presented on the record, it is frequently preceded by a less formal

discussion.

11.    First, Judge Hayward would have asked Mr. Arias Ordonez whether he had any fear of return to Mexico. This is due to requirements relating to asylum protections not directly relevant here. Assuming that he did not express a fear of return, Judge Hayward would note that Mr. Arias Ordonez was not *prima facie* eligible for any benefit other than voluntary departure.

12.    In that case, Judge Hayward would explain to Mr. Arias Ordonez that there was no apparent way in which he would be able to remain in the United States. She would most likely then see if the attorney for ICE had any objection to voluntary departure. As explained previously, ICE attorneys usually do not object to pre-hearing voluntary departure as it permits a cheaper alternative to removal at government expense. Similarly, pre-hearing voluntary departure benefits the Executive Office for Immigration Review, because pre-hearing voluntary departure is contingent upon waiving all appeal rights.

13.    Assuming there was no objection voluntary departure, Judge Hayward would explain that since there were no apparent defenses which would permit Mr. Arias Ordonez to remain in the country, he would have a choice between a removal order or voluntary departure. She would explain the benefits of voluntary departure, such as being permitted to remain free from custody during the voluntary departure period and avoiding the bars to returning to the United States associated with a voluntary departure order. She would also make clear the requirements for pre-hearing voluntary departure, such as conceding removability, waiving appeal rights, and acknowledging the penalties for failure to comply with the order.

14.    Judge Hayward would also answer questions Mr. Arias Ordonez might have about his options, and make sure that he understood his choices. She would then ask if Mr. Arias Ordonez knew how he wished to proceed.

15.    If Mr. Arias Ordonez did not know immediately what he wanted to do, there would also be additional safeguards to ensure that Mr. Arias Ordonez made a well-considered decision. As explained, he likely would have had the option of consulting with a *pro bono* attorney. Further, when possible, judges will frequently give respondents unsure of how to proceed some additional time, by excusing them and calling them at the end of the docket.

16.    Finally, when Judge Hayward proceeded she would have summarized any off the record conversations, which again would explain the options available to Mr. Arias Ordonez. If Mr. Arias Ordonez chose to proceed with voluntary departure, she would ask if he accepted all of the requirements for such relief, and then enter a voluntary departure order if he consented. If he chose not to accept voluntary departure, then she would have asked Mr. Arias Ordonez a

series of questions about his citizenship and immigration status. She then would have found him removable, and entered a removal order. Mr. Arias Ordonez would then be given the opportunity to appeal the removal order.

17.    In my experience, respondents such as Mr. Arias Ordonez usually accept voluntary departure. Because of its benefits, immigration judges will frequently counsel pro se respondents to accept this option. Presented with the realization that they will have to leave the United States, most respondents reasonably accept the option as the lesser of two evils, since it carries the fewest penalties and permits the least unpleasant method of departure.

18.    Therefore, even had Mr. Arias Ordonez appeared at his removal hearing *pro se*, he would have been thoroughly advised of his opportunity for voluntary departure, and likely would have taken that option.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED Wednesday, May 14, 2008, Oakland, California.

Angela M. Bean
Attorney at Law
Oakland, California