JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

OWEN P. MARTIKAN (CABN 177104)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7241
    Facsimile: (415) 436-7234
    owen.martikan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NOE ARIAS-ORDONEZ, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR 07-0738 MMC <br><br> **THE UNITED STATES' SECOND SUPPLEMENTAL BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS** <br><br> Date: May 28, 2008 <br> Time: 2:30pm <br> Place: Courtroom 7, 19th Floor |

## INTRODUCTION

In his previous filings and arguments before the Court, defendant Noe Arias-Ordonez has argued that the Court should dismiss the indictment in this case because his first deportation violated his due process rights, and prejudiced him by denying him the opportunity to receive pre-hearing voluntary departure under 8 U.S.C. § 1229c. During the last hearing, the Court noted that it was inclined to find that Arias-Ordonez's first deportation violated due process and caused him prejudice, but offered the parties the chance to supplement the record.

Regardless of how the Court rules with respect to Arias-Ordonez's first deportation, the Court should not dismiss the indictment because Arias-Ordonez has been deported a total of nine times, and under current Ninth Circuit law, each of those deportations may serve as the predicate for a prosecution for illegal re-entry under 8 U.S.C. § 1326, independent of whether the first deportation comported with due process. And while Arias-Ordonez may argue that he was entitled to pre-hearing voluntary departure during his first deportation under 8 U.S.C. § 1229c, this statute only allows an alien to receive pre-hearing voluntary departure once. 8 U.S.C. § 1229c(c). Thus, Arias-Ordonez cannot show that any of the reinstated deportations prejudiced him by failing to offer him pre-hearing voluntary departure, because he would not have been eligible for it. Moreover, each of these reinstatements comported with due process.

The Court should deny Arias-Ordonez's motion to dismiss because he cannot show that all of his deportations violated due process or caused him prejudice.

### STATEMENT OF FACTS

Arias-Ordonez has been deported from this country nine times: in November, 2003; June, 2004; April, 2006; July, 2006 (three times); January, 2007; and July, 2007. Each of these deportations is charged as a predicate deportation in the indictment. The first time that Arias-Ordonez was deported from the United States, in 2003, he was deported by an immigration judge after an *in absentia* hearing. The following eight times, Arias-Ordonez was deported by an Immigration & Customs Enforcement (ICE) officer who reinstated the 2003 deportation.

Each time that he was deported through the reinstatement procedure, an ICE officer served Arias-Ordonez with a Notice of Intent to Reinstate Prior Order. The notice informed Arias-Ordonez that he had been identified as an alien subject to deportation who had illegally re-entered the United States. Kaiser Decl. Exhibits 2, 5, 7, 9, 11, 13, and 15. Each notice informed Arias-Ordonez that he had the right to make a written or oral statement contesting ICE's determination. *Id*. Arias-Ordonez signed and dated a

statement on each of these notices stating that he did not wish to make a statement contesting the determination of his deportability. *Id*. Only on November 2, 2007, after he was taken into ICE custody for the tenth time in four years, did Arias-Ordonez note that he wanted to contest his deportability. Kaiser Decl., Exhibit 16. He was not deported on that occasion, as it led to the current prosecution.

Each time ICE reinstated Arias-Ordonez's deportation (with one exception: July 15, 2006), Arias-Ordonez filled out a sworn Mirandized statement acknowledging that he was a Mexican citizen, that he had previously been deported, that he did not have the permission of the Attorney General or the Department of Homeland Security to enter the United States, and he did not fear persecution or torture if he were to return to Mexico. Kaiser Decl., Exhibits 3, 5, 7, 9, 11, 13, and 15. Although Arias-Ordonez did not make this sworn statement on July 15, 2006, it is notable that he did make the identical sworn statement three days later, on July 18, 2006. *Id*., Exhibit 11. On July 15, 2006, and again on July 18, 2006, Arias-Ordonez signed, initialed, and dated a statement in Spanish conceding that was illegally in the United States, that he had no fear of returning to his country, and affirmatively giving up his right to a hearing before an immigration judge. Kaiser Decl., Exhibits 9 and 12.

## ARGUMENT AND AUTHORITIES

**I.   EACH REINSTATEMENT CAN SERVE AS THE PREDICATE FOR ARIAS-ORDONEZ'S PROSECUTION UNDER 8 U.S.C. § 1326.**

The Ninth Circuit has recently held that a prosecution under 8 U.S.C. § 1326 may be predicated upon a reinstatement, because the alien's physical removal is what matters for criminal immigration purposes, and a reinstatement accomplishes the aliens' physical removal from the United States. *United States v. Diaz-Luevano*, 494 F.3d 1159, 1161-62 (9th Cir. 2007). In *Diaz-Luevano*, an alien was first deported from the United States in 1996, and was removed from the United States pursuant to reinstatements in 1999 and 2000. *Id*. at 1160. In 2004, the alien was convicted under 8 U.S.C. § 1326 based on his

reinstatement in 2000. *Id*. Because the alien had been convicted of an aggravated felony before his removal in 2000, the district court found him eligible for a 16-point sentencing enhancement under the sentencing guidelines. *Id*. at 1161. The alien appealed, arguing that the 2000 reinstatement was not a "species of removal" that could serve as the predicate for a conviction and sentencing enhancement under 8 U.S.C. § 1326. *Id*.

The Ninth Circuit affirmed the alien's sentence, holding that he had incorrectly sought to distinguish between removal pursuant to a deportation hearing from removal pursuant to a reinstatement, since both resulted in the alien's physical removal from the country, and the physical removal is what counts under 8 U.S.C. § 1326:

> Section 1326 speaks only of "removal." All that the statute requires is that the alien re-enter the United States illegally after having been removed subsequent to an aggravated felony conviction. It plainly turns on the alien's physical removal - not the order of removal.

*Diaz-Luevano*, 494 F.3d at 1162. The Ninth Circuit has consistently followed this precedent since issuing its opinion in *Diaz-Luevano*. *See, e.g., United States v. Cano-Matus*, 2008 WL 1776973 (9th Cir. 2008); *United States v. Meda-Rodriguez*, 2008 WL 168663 (9th Cir. 2008); *United States v. Luna-Martinez*, 259 Fed.Appx. 991 (9th Cir. 2007); *United States v. Reyes-Caballos*, 235 Fed. Appx.590 (9th Cir. 2007); *United States v. Villegas-Cavada*, 235 Fed.Appx. 569 (9th Cir. 2007). In *United States v. Limon-Mora*, 249 Fed.Appx.569 (9th Cir. 2007), the Ninth Circuit held that for purposes of section 1326, "it is inconsequential that the reinstatement of [the alien's] prior removal was ordered by an immigration official, rather than an immigration judge."

Thus, the Court should find that Arias-Ordonez's conviction under 8 U.S.C. § 1326 may rest on any of his nine removals from the United States, not just the first one.

///
///
///
///

USA'S 2nd SUPP. BRIEF OPPOSING MOTION TO DISMISS
CR 07-0738 MMC

4

## II. ARIAS-ORDONEZ'S FIRST DEPORTATION DOES NOT "TAINT" HIS SUBSEQUENT REMOVALS.

If the Court decides that Arias-Ordonez's first deportation proceedings violated his due process rights and caused him prejudice because of his inability to seek pre-hearing voluntary departure, then any of his other deportations could support a conviction under U.S.C. § 1326. Any alleged flaw in the first deportation does not automatically taint the subsequent reinstated removals.

The Ninth Circuit addressed this issue *en banc* in *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497 (9th Cir. 2007), and expressly rejected the argument that a removal may not constitutionally be reinstated if the underlying removal proceeding itself violated due process. The Ninth Circuit noted that its ruling was a reversal of prior precedent suggesting the opposite, and held that reinstatement of a prior removal order, regardless of the process afforded in the underlying order, does not offend due process because the reinstatement does not change the alien's rights and remedies:

> Reinstatement of a prior removal order – regardless of the process afforded in the underlying order – does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies. The only effect of the reinstatement order is to cause [the alien's] removal, thus denying him any benefits from his latest violation of U.S. law, committed when he reentered the United States without the Attorney General's permission . . . .

*Morales-Izquierdo*, 486 F.3d at 497-98. The alien in *Morales-Izquierdo* had challenged the constitutionality of the regulation establishing the reinstatement procedure on the grounds that it deprived him of a hearing before an immigration judge. This holding does not deprive an alien of the opportunity to judicially challenge the due process afforded during the reinstatement process as it was applied to him, but it does prevent an alien from claiming that a deportation hearing that did violate due process necessarily taints any removal that followed it.

The United States anticipates that Arias-Ordonez may argue that this position is contrary to Judge Alsup's opinion dismissing the indictment in *United States v. Lopez-*

USA'S 2nd SUPP. BRIEF OPPOSING MOTION TO DISMISS
CR 07-0738 MMC

5

*Hernandez*, 2007 WL 608111 (N.D.Cal. 2007). However, the reasoning in that opinion has been effectively rejected by subsequent Ninth Circuit authority. For example, the district court in *Lopez-Hernandez* that a reinstatement could not serve as the predicate for a prosecution under section 1326(a) because that section required a removal order, rather than a physical removal. But in *Diaz-Luevano*, decided later that year, the Ninth Circuit held that "the alien's *physical* removal is what matters for purposes of criminal sanctions, regardless of the procedure employed. . . ." *Diaz-Luevano*, 494 F.3d at 1161-62. The Court in *Diaz-Luevano* addressed criminal sanctions under section 1326 generally; it did not distinguish between sanctions under section 1326(a) and (b), as the district court did in *Lopez-Hernandez*.[1]

Also, the district court in *Lopez-Hernandez* held that a reinstatement could not serve as the basis for a section 1326 prosecution because – unlike a reinstatement in the civil context – it would create new criminal penalties. *Lopez-Hernandez*, *7. But the Ninth Circuit also rejected this point in *Diaz-Luevano*, where it held that in the section 1326 context, the reinstatement does not create any new criminal penalties; it is the alien's illegal reentry into the country that creates the criminal penalties, not the reinstatement. *Diaz-Luevano*, 494 F.3d at 1162.

Finally, the Ninth Circuit's final *en banc* opinion in *Morales-Izquierdo*, issued several months after the district court's order in *Lopez-Hernandez*, makes clear that a due process flaw in an original deportation order does not invalidate subsequent reinstatements based on that order. *Morales-Izquierdo*, 486 F.3d at 497.

///

///

---

[1] The district court's distinction between section 1326 (a) and (b) appears also to have been based on a misreading of that statute. The reference to "order" in § 1326(a) refers to someone who "has departed the United States while an order of exclusion, deportation, or removal is outstanding" not to someone who "has been denied admission, excluded, deported, or removed . . ." Otherwise, the double use of the word "or" both before and after "removed" would make no grammatical sense.

USA'S 2nd SUPP. BRIEF OPPOSING MOTION TO DISMISS
CR 07-0738 MMC

6

Thus, if Arias-Ordonez intends a collateral attack on his deportations to result in dismissal of the indictment, then he must show that each of the removals alleged in the indictment violated his due process rights, and caused him prejudice.[2]

### III.  ARIAS-ORDONEZ'S REINSTATEMENTS DID NOT VIOLATE DUE PROCESS OR PREJUDICE HIM.

As the Ninth Circuit held in *Morales-Izquierdo*, "as a predicate to obtaining relief for a violation of procedural due process rights in immigration proceedings, an alien must show that the violation prejudiced him." *Morales-Izquierdo*, 486 F.3d at 495.  Arias-Ordonez cannot show prejudice arising out of these removals.

Each of the eight times that Arias-Ordonez was removed from the United States under the reinstatement procedure, he signed a statement indicating that he did not wish to contest his removal.  Kaiser Decl., Exhibits 2, 5, 7, 9, 11, 13, and 15.  Before two of the removals by reinstatement – on July 15 and July 18, 2006 – Arias-Ordonez signed and initialed a Spanish-language statement acknowledging that he was in the United States illegally, that he did not fear persecution in Mexico, and that he was waiving a hearing before an immigration judge.  Kaiser Decl., Exhibits 9 and 11.  Before all but one of the removals by reinstatement, Arias-Ordonez signed a sworn, Mirandized statement acknowledging that he was a Mexican citizen, that he had previously been deported, that he had re-entered the United States without government permission, and that he did not fear persecution or torture in Mexico.  *Id*., Exhibits 3, 5, 7, 9, 11, 13, and 15.

Indeed, Arias-Ordonez does not appear to contest that he is, and always has been, a removable alien who entered and re-entered this country illegally.  Bean Decl., ¶4 ("<u>Despite his removability</u>, had Mr. Arias-Ordonez been present at his removal hearing,

---

[2] During the May 7 hearing on this motion, counsel for the government incorrectly stated that a deportation hearing that violated due process would automatically taint any reinstatements that followed it.  This statement was made without knowledge of the Ninth Circuit's recent reversal of position in *Morales-Izquierdo*, which is addressed here.  Counsel for the government regrets any confusion or delay this may have caused.

USA'S 2nd SUPP. BRIEF OPPOSING MOTION TO DISMISS
CR 07-0738 MMC

7

he would have been able to request voluntary departure in lieu of removal.") (emphasis added).

Moreover, the one basis for prejudice that Arias-Ordonez claimed with respect to his first deportation hearing – his inability to claim pre-hearing voluntary departure – would be precluded in any subsequent removal. By statute, an alien is only eligible for pre-hearing voluntary departure once. 8 U.S.C. § 1229c(c) ("The Attorney General shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so depart after having been found inadmissible under section 1182(a)(6)(A) of this title."). If Arias-Ordonez had been granted pre-hearing voluntary departure during his first deportation hearing, he would have been ineligible for this privilege at all of his subsequent eight removals.

As Judge Breyer noted in denying a motion to dismiss a section1326 indictment in *United States v. Gutierrez-Rodriguez*, 2007 WL 2778917, *2 (N.D.Cal. 2007), even if an alien can show that his due process rights were violated, "the indictment can only be dismissed if [the alien] can show that he suffered prejudice as a result of the defects in his deportation proceeding." In this case, Arias-Ordonez cannot show that any of the eight reinstatement proceedings prejudiced him. He was removable, he admitted as much, he did not contest the proceedings, he twice waived a hearing before an immigration judge, and he was ineligible for voluntary departure.

The Court should find that Arias-Ordonez cannot show that his eight removals by reinstatement were "fundamentally unfair," and thus subject to collateral attack under 8 U.S.C. § 1326(d).

**IV. THE UNITED STATES DOES NOT CONCEDE THAT THE ORIGINAL DEPORTATION VIOLATED DUE PROCESS.**

The United States does not intend, by focusing here on the eight reinstatements of removal rather than the first deportation, to concede that the first deportation violated due process. If Arias-Ordonez intends to introduce evidence on this point in his supplemental

filing, then the United States will address it in its opposition.  The purpose of this brief is to bring to the Court's attention recent Ninth Circuit authority supporting the use of the eight reinstatements as predicate removals under 8 U.S.C. § 1326.

## CONCLUSION

The Court should deny Arias-Ordonez's motion to dismiss because he cannot show that his nine removals from the United States violated due process.

DATED: May 14, 2008                    Respectfully Submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


         /s/   Owen Martikan
OWEN P. MARTIKAN
Assistant United States Attorney