BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant ARIAS-ORDONEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-00738 MMC |
| Plaintiff, | **DEFENDANT ARIAS-ORDONEZ' REPLY BRIEF TO GOVERNMENT'S SECOND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| v. | |
| NOE ARIAS-ORDONEZ, | Date: May 28, 2008<br>Time: 2:30 p.m.<br>Court: Hon. Maxine M. Chesney |
| Defendant. | |

INTRODUCTION

At the last proceeding on May 7, 2008, this Court requested that the parties submit supplemental declarations on the following issue:

- Had Mr. Arias-Ordonez been told that he had a right to voluntary departure, would he likely have accepted it? If so, why? Please provide the Court with additional facts regarding the way the hearing was likely to have progressed, including how voluntary

departure would have been raised and whether the benefits to voluntary departure would have been discussed with Mr. Arias-Ordonez.

In response to the Court's inquiry, Mr. Arias-Ordonez properly submitted a declaration that addressed the Court's inquiry. The government, on the other hand, did not. The government's filing provides no new evidence to this Court on the prejudice prong of the analysis. Accordingly, this Court should hold that Mr. Arias-Ordonez was prejudiced by the due process violation in his deportation proceeding, and dismiss the indictment against him.

Rather than submitting the evidence as this Court requested, the government instead elects to raise a new legal argument with this Court regarding the viability of Mr. Arias-Ordonez' reinstatements as an avenue for prosecution – a matter that this Court previously inquired about, and the government assured this Court was not an issue. Adding insult to injury, the government's brief is legally incomprehensible – it utilizes string cites for propositions that the cases do not comport with, and claims that the cases make legal holdings that they do not. Moreover, the government misinterprets *Morales-Izquierdo v. Gonzalez*, as somehow standing for the proposition that the government may constitutionally proceed in a criminal prosecution under 8 U.S.C. §1326 on a stand-alone reinstatement of a removal order, even if the underlying removal order violates due process. Gov. Resp. at 5-6. This case stands for no such proposition: not does any of the caselaw submitted by the government.

Mr. Arias-Ordonez has located no post *Morales-Izquierdo* case in the Ninth Circuit, appellate panel or district court, that has accepted the government's legal position. In contrast, at

DEFENDANT'S REPLY TO GOV. SECOND OPPN.
U.S. v. ARIAS-ORDONEZ
No. CR  07-00738 MMC                                       2

at least two district courts have rejected the government's position, including the Honorable Judge Alsup of this Court. A review of applicable caselaw reveals that the government may not constitutionally proceed with this prosecution utilizing a stand-alone reinstatement as a predicate element of a 1326 prosecution when the underlying deportation order is defective. Once again, Mr. Arias-Ordonez respectfully requests this Court to dismiss the indictment against him.

## ARGUMENT

### I. AS THE GOVERNMENT HAS NOT PROVIDED THE COURT WITH ANY ADDITIONAL EVIDENCE SUGGESTING MR. ARIAS-ORDONEZ WAS UNLIKELY TO ACCEPT VOLUNTARY DEPARTURE, THIS COURT SHOULD FINALIZE ITS TENTATIVE RULING DISMISSING THE INDICTMENT

The government has not submitted any additional evidence to this Court that challenges the evidence provided by Angela Bean, Esq. in Mr. Arias-Ordonez' Second Supplemental Brief, filed May 14, 2008. The government's arguments that Ms. Bean's declaration should be discounted seem to ignore the fact that this Court specifically asked the parties to provide the type of information that Ms. Bean provided. The information is therefore relevant to the Court's determination. The government also ignores Mr. Arias-Ordonez' sworn declaration that he would have accepted voluntary departure has it been offered to him. See Opening Motion, Falk Declaration, Exhibit I at ¶ 24. The record is thus uncontroverted that the due process violation in Mr. Arias-Ordonez' deportation proceeding prejudiced him. This Court should affirm its tentative ruling dismissing the indictment in this case.

**II.    A REINSTATEMENT OF A CONSTITUTIONALLY DEFECTIVE DEPORTATION ORDER, STANDING ALONE, CANNOT SERVE AS THE PREDICATE ELEMENT FOR MR. ARIAS-ORDONEZ' PROSECUTION UNDER 8 U.S.C. §1326**

If this Court finalizes its tentative ruling granting Mr. Arias-Ordonez' motion to dismiss the indictment in this matter on the grounds that his 2003 deportation hearing (and its subsequent order) did not comport with due process, the government now argues that it may proceed with the prosecution because the indictment also alleges eight reinstatements of the constitutionally defective deportation order. Because the government's position is devoid of legal support, conflicts with the plain text of the reinstatement statute, is contrary to two district court orders in this Circuit, and is contradicted by the mandates of *United States v. Mendoza-Lopez*, 481 U.S. 828, this Court should reject the government's arguments.

**A.    *United States v. Diaz-Luevano* Does Not Allow the Government to Proceed with this Prosecution Alleging a Stand-Alone Reinstatement if the Underlying Deportation Order Denied the Defendant Due Process of Law**

The government first contends that "new" authority in *United States v. Diaz-Luevano*, 494 F.3d 1159, 1161-1162 (9th Cir. 2007) gives the government the authority to prosecute Mr. Arias-Ordonez under 8 U.S.C. § 1326, even if this Court were to find that the sole deportation proceeding applicable to Mr. Arias-Ordonez did not comport with due process. It claims that "the Ninth Circuit has recently held that a prosecution under 8 U.S.C. § 1326 may be predicated upon a reinstatement, because the alien's physical removal is what matters for criminal immigration purposes, and a reinstatement accomplishes the aliens' physical removal from the United States." Gov. Resp. at 3:21-24. Yet this case stands for no such proposition. Instead, the actual holding of

*Diaz-Luevano* is that "removals pursuant to reinstated orders of removal thus count for the purposes of [sentencing enhancements under] 8 U.S.C. § 1326(b) and the United States Sentencing Guidelines §2L1.2" *Diaz-Luevano*, 494 F.3d 1159, 1160 (9th Cir. 2007). This holding, clearly limited sentencing enhancements under 8 U.S.C. § 1326(b), is not "new" – it has been the law of this Circuit since 2003 – and has nothing to do with situations such as the instant case, where the deportation order that is the subject of the reinstatement has been shown to violate the U.S. Constitution.

The main point of *Diaz-Luevano* was to reaffirm the 2003 holding of *United States v. Luna-Madellega*, 315 F.3d 1224 (9th Cir. 2003). In that case, the Ninth Circuit held that the penalty enhancement under 8 U.S.C. § 1326(b)(2) for being removed subsequent to a conviction for an aggravated felony was applicable to aliens whose removals are accomplished pursuant to reinstatements of constitutionally permissible removal orders. *Id.* at 1225. *The underlying deportation order was not challenged in either case*. These cases are about sentencing enhancements authorized under 8 U.S.C. § 1326(b) – not criminal convictions imposed under 8 U.S.C. § 1326(a) – and certainly *do not hold* that "a prosecution under 8 U.S.C. § 1326 may be predicated upon a reinstatement," much less a reinstatement of a constitutionally defective deportation order. Gov. Oppn. at 3:21-22. The same is true of each case incorporated into the government's lengthy string cite. *See* Gov. Oppn. at 4:14-18. The first two pages of the government's brief are accordingly irrelevant to this Court's determination about whether or not the indictment against Mr. Arias-Ordonez can stand.

In direct contradiction to the government's arguments is the fact that post *Luna-*

*Madellaga,* the Ninth Circuit has permitted a defendant to raise a collateral attack to an underlying deportation in the face of multiple reinstatements - and has held that dismissal is required if the underlying deportation proceeding did not comport with due process. *See, e.g., United States v. Leon-Paz*, 340 F.3d 1003, 1004-1005 (9th Cir 2003).  In *Leon-Paz*, the defendant at issue was prosecuted for re-entering the United States after a 2001 reinstatement of his 1997 deportation order.  *Id.* at 1004.  The indictment alleged the 2001 reinstatement.  *Id*.  The defendant moved to dismiss the indictment via a collateral attack on his 1997 deportation order which, as the Ninth Circuit specifically noted, was the order "upon which all of his removals were based." *Id*.  The district court denied the motion.  After reviewing the facts of the case, the Ninth Circuit reversed the order of the district court and remanded for findings on the prejudice prong, indicating that "if [Leon-Paz] was prejudiced, the district court must dismiss the indictment." *Id*. at 1005.  Implicit in this holding is a rejection of any theory that the government could validly proceed with a criminal prosecution on the basis of the 2001 reinstatement if the underlying deportation order violated due process.

It is accordingly the government's burden now to try and persuade this Court that *Leon-Paz*' implicit holding is no longer good law – and that authority exists that specifically allows the government to proceed with a prosecution based on a reinstatement of a constitutionally defective deportation order.  Because the government cannot meet its burden in this regard, this Court should dismiss the indictment against Mr. Arias-Ordonez.

    **B.  *Morales-Izquierdo v. Gonzalez* Does Not Provide the Government With Authority to Charge an Alien Under 8 U.S.C. §1326(a) On the Basis of a Reinstated Deportation Order If the Underlying Deportation**

The government next attempts to convince this Court that *Morales-Izquierdo v. Gonzalez*, 486 F.3d 484 (9th Cir. 2007) has altered Ninth Circuit law by now allowing the government to prosecute aliens under 8 U.S.C. §1326 using reinstatements of constitutionally defective removal orders as an element of the offense.  This decision holds no such thing.  Instead, *Morales-Izquierdo* holds that in the civil deportation context, reinstatement of a prior deportation order does not offend due process "regardless of the process afforded in the underlying order." *Id*. at 497.  This decision has nothing to do with prosecutions under 8 U.S.C. § 1326, which must comport with the statute's language as well as the dictates of *Mendoza-Lopez*.

As two district courts have aptly noted, the government's theory has serious constitutional and statutory construction problems.  *See United States v. Lopez-Hernandez*, 2007 U.S. Dist. LEXIS 16251, 2007 WL 608111 (N.D. Cal. 2007)(attached hereto as Exhibit A); *see also United States v. Gomez-Hernandez*, No. CR-08-6005 FVS (unpublished)(attached hereto as Exhibit B). Both district courts in the aforementioned opinions considered the government's *Morales-Izquierdo* argument presented herein and have rejected it as utterly conflicting with *Mendoza-Lopez*' requirement that "the result of an administrative proceeding may not be used as a conclusive element of a criminal offense where the judicial review that legitimated such a practice in the first instance has effectively been denied." *Mendoza-Lopez*, 481 U.S. at 839.  Each court has noted that the reinstatement process offers the alien no avenue for judicial review; a position that the *Morales-Izquierdo* court concurred with.  *See Morales-Izquierdo*, 486 U.S. at 491 (referring to the reinstatement process as a "ministerial enforcement action"); *see also* Exhibit B

DEFENDANT'S REPLY TO GOV. SECOND OPPN.
U.S. v. ARIAS-ORDONEZ
No. CR  07-00738 MMC                             7

at 12:2-14 (noting that "the reinstatement process does not permit any judicial review of the underlying deportation order" and that the alien has no opportunity for judicial review); *see also Exhibit A, Lopez-Hernandez*, 2007 U.S. Dist. LEXIS at *19 (same).  As such, were this Court to adopt the government's position, it would not be following the constitutional requirements articulated in *Mendoza-Lopez*.  The government cites no authority for its novel proposition that a physical removal by virtue of a "ministerial enforcement action" suffices to satisfy the statutory requirements of 8 U.S.C. § 1326(a)(1).

### C. The Government's Arguments Regarding Judge Alsup's Order Are Not Well Founded

This Court should follow the sound reasoning of Judge Alsup, as the government's quarrels with his opinion in *Lopez-Hernandez* are specious.  While the decision itself needs no defense, Mr. Arias-Ordonez will respond to the government's specific points.

First, the government is flatly incorrect that *Diaz-Luevano* rejected Judge Alsup's reasoning.  As cited above, the plain text of *Diaz-Luevano* limits the decision to the enhanced sentencing provisions of 1326(b), and nowhere states that physical removals accomplished through reinstatements of constitutionally defective deportation orders may serve as predicate elements in 1326 prosecutions *or* as a basis to enhance an alien's sentence.

In a footnote, the government appears to argue that a valid order of deportation is *not* required to prosecute someone for illegal re-entry under 8 U.S.C. §1326 – just some sort of physical removal.  Gov. Oppn. at 6:26-28.  This incredible argument is utterly unsupported by any precedent – Ninth Circuit or otherwise.  Under the government's theory, the government could

simply employ a set of vigilantes to round up aliens at will, drive them over the border, and then prosecute them under 8 U.S.C. § 1326 if they return, irregardless of their unlawful ejection. Such a result would grossly flout *Mendoza-Lopez*. The very reason "physical removals" via reinstatements are permissible grounds for sentencing enhancements under 8 U.S.C. § 1326 is because of the due process contemplated by 8 U.S.C. §1326(a) and (d) – including a valid order of deportation and an avenue to challenge that order. *See* 18 U.S.C. §1326(d) (referring to "the deportation order described in subsection (a)(1)").

Nor did *Diaz-Luevano* overturn Judge Alsup's order regarding his finding that permitting the government to proceed on stand-alone reinstatements "would create additional criminal penalties." *Lopez-Hernandez* at *19-20. As previously argued, the reason physical removal and subsequent illegal re-entry is a permissible avenue for heightened criminal penalties at sentencing is because the illegal re-entry *violates an underlying order of removal* that must be found to comport with due process under *Mendoza-Lopez*. By their very statutory construction, reinstatements have no foundation in law without the underlying order; they do not independently exist. See 8 U.S.C. § 1231(a)(5) (reinstatement statute); *see also Morales-Izquierdo*, 486 F.3d at 491 ("Given the different layout of the two sections and their very different scope, we conclude that Congress did not consider removal and reinstatement to be equivalent"). Were this Court to allow the government to proceed on a stand-alone reinstatement, it would enable a new species of prosecution under 8 U.S.C. § 1326 that is not authorized by Congress.

Finally, the government claims, absent any explanation whatsoever, that Judge Alsup's order is somehow inconsistent with the final *en banc* opinion in *Morales-Izquierdo*. Gov. Oppn.

DEFENDANT'S REPLY TO GOV. SECOND OPPN.
U.S. v. ARIAS-ORDONEZ
No. CR  07-00738 MMC                                9

at 6:18-21.  Yet only two lines were changed in the entire order between its February 6, 2007 and May 8, 2007 iterations.  The sea change of reasoning that the government appears to argue that Judge Alsup did not have the benefit of considering is the deletion of a sole line from the decision: "In short, reinstatement of the removal order leaves Morales in the same position as on the date of the original removal." *United States v. Morales-Izquierdo*, 477 F.3d 691, 704 (9th Cir. 2007)(as compared to *Morales-Izquierdo*, 468 U.S. at 497).  It is quite unclear how the omission of this one line somehow undermines Judge Alsup's lengthy discussion of the issue at hand.  The Court should accordingly reject the government's dismissive treatment of *Lopez-Hernandez,* and rule in accordance with Judge Alsup's reasoning.

## CONCLUSION

For all the reasons discussed in the motion, reply brief, supplemental motion, supplemental reply, in consideration of the declarations and attachments to said motions and all the arguments presented at the April 2, 2008 and May 7, 2008 hearing, Mr. Arias-Ordonez requests this Court to grant his motion to dismiss the indictment.

Dated: May 14, 2008                    Respectfully submitted,
                                       BARRY J. PORTMAN
                                       Federal Public Defender
                                            /S/
                                       ELIZABETH M. FALK
                                       Assistant Federal Public Defender

DEFENDANT'S REPLY TO GOV. SECOND OPPN.
U.S. v. ARIAS-ORDONEZ
No. CR  07-00738 MMC                   10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANT'S REPLY TO GOV. SECOND OPPN.
U.S. v. ARIAS-ORDONEZ
No. CR  07-00738 MMC                              11