BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant ARIAS-ORDONEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>NOE ARIAS-ORDONEZ,<br><br>    Defendant. | No. CR 07-00738 MMC<br><br>**DEFENDANT ARIAS-ORDONEZ' RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION**<br><br>Date: June 4, 2008<br>Time: 2:30 p.m.<br>Court: Hon. Maxine M. Chesney |

**INTRODUCTION**

On May 28, 2008, this Court dismissed the indictment against Mr. Arias-Ordonez, and ordered his release to the Office of Immigration and Customs Enforcement ("ICE"). On May 29, 2008, the government moved the Court to reconsider its order for release. In a supplemental filing, the government seeks an order for this Court detaining Mr. Arias-Ordonez for the pendency of a "potential" appeal of this Court's order. This Court should reject the government's arguments. First, this Court currently has no jurisdiction to order Mr. Arias-Ordonez' detention,

DEFENDANT'S OPPOSITION TO GOV. MOT. FOR DETENTION
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                  1

as neither federal criminal charges nor an appeal is currently pending.  Second, assuming that a notice of appeal is filed prior to June 4, 2008, Mr. Arias-Ordonez is not a flight risk nor a danger to the community.  Although unstated by the government in its motion for detention, the burden of proof lies squarely on the government to detain Mr. Arias-Ordonez under 18 U.S.C. § 3142 on these grounds, and the presumption is in favor of the defendant's release.  As the government has not met its burden to show that the presumption for release under 18 U.S.C. § 3142 should not apply, the Court should deny its motion for detention pending appeal.

Further detention of Mr. Arias-Ordonez would also be a miscarriage of justice.  At this point, the case against Mr. Arias-Ordonez before this Court is closed.  He has already spent over six months in custody since his arraignment on November 21, 2007.  Had Mr. Arias-Ordonez been convicted of the charged offense under 8 U.S.C. § 1326, the government has assessed his applicable Guideline range as 15-21 months.  Factoring in a standard "good time" assessment as calculated by the BOP (15% of the sentence), and assuming that Mr. Arias-Ordonez theoretically received the benefit of a low-end Guideline sentence, Mr. Arias-Ordonez would have only spent 12 3/4 months in BOP custody had he been *convicted* of the charge at hand – only an additional 6 and a half months.  The government's proposal of detention pending appeal would accordingly result in Mr. Arias-Ordonez' detention for a longer period than his original Guideline range calls for.  Despite knowledge of this fundamentally unfair result, the government seeks Mr. Arias-Ordonez' detention in the face of just alternatives.  In addition to the factors under 18 U.S.C. § 3142, the Court should also reject the government's motion for detention under general principles of due process and the need for fundamental fairness in the criminal conviction process.

\\

\\

\\

DEFENDANT'S OPPOSITION TO GOV. MOT. FOR DETENTION
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                                                2

# ARGUMENT

**I. Both the Factors Under 18 U.S.C. § 3142(g) And General Due Process Considerations Should Be Considered by This Court in Assessing the Government's Motion for Detention**

As a legal matter, Mr. Arias-Ordonez concurs with government counsel that the Court should weigh the factors listed under 18 U.S.C. § 3142 when considering whether the government's motion for detention pending appeal under 18 U.S.C. § 3731 should be granted. *See* 18 U.S.C. § 3143(c). This assumes, however, that an appeal is active. As of now, there is no notice of appeal in this case, and no appeal pending. As such, as a technical matter, 18 U.S.C. § 3143(c) does not yet apply. Given the lack of any charges pending against Mr. Arias-Ordonez, as well as the lack of any notice of appeal, this Court does not have jurisdiction to detain Mr. Arias-Ordonez. Accordingly, he should be released from federal custody forthwith.

Assuming that, prior to the hearing, the government actually files a notice of appeal, Mr. Arias-Ordonez will proceed herein with the § 3142 analysis. The straight text of 18 U.S.C. § 3142 indicates a presumption for pretrial release. *See* 18 U.S.C. § 3142(a)-(c); *United States v. Salerno,* 481 U.S. 749 (1987). "Only in rare circumstances should release be denied." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)(citations omitted). "Doubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* (citations omitted). "The right to bail should be denied only for the strongest of reasons." *Id*. at 1407 (citations omitted). The burden of proof for pretrial detention lies squarely on the government, and it must prove to this Court that Mr. Arias-Ordonez is a flight risk by preponderance of the evidence. *See Motamedi,* 767 F.2d at 1405; *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990). The government's burden of proof in connection with whether or not Mr. Arias-Ordonez is a danger to the community is by clear and convincing evidence. *See* 18 U.S.C. § 3142(f). The factors that should be considered by this Court in determining whether or not the government has

met its burden of proof under 18 U.S.C. § 3142(g) are as follows:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or other dangerous device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of a sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*See* 18 U.S.C. § 3142(g). In addition to 18 U.S.C. § 3142(g), however, this Court must also consider whether or not a defendant's continued detention would violate general principles of due process. *See United States v. Shareef*, 907 F.Supp. 1482, 1483-1484. (D. Kan. 1995), *reversed on other grounds*, *United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996) ("prolonged pretrial detention may become excessive and consequently punitive so as to violate the person's right to due process as guaranteed by the Fifth Amendment to the Constitution")(citing *United States v. Theron*, 792 U.S. 1510 (10th Cir. 1986); *United States v. Zannino*, 798 F.2d 544 (1st Cir. 1986); *United States v. Orena*, 986 F.2d 628 (2nd Cir. 1993)). In *Shareef*, the magistrate court considered whether three defendants should be released pending the government's appeal of a motion to suppress the substantive evidence in the case. *Shareef,* 907 F.Supp. at 1483. Along with the factors listed under 18 U.S.C. § 3142(g), the court also considered the following issues related to whether or not the continued detention of the defendants in light of the government's interlocutory appeal violated the defendants' due process rights:

\\

> The length of detention in this case weighs in favor of release. Defendants Shareef, Smith, and Brown have been detained for almost nine months. By virtue of the government's appeal which will delay the disposition of this matter, defendants may be detained for several more months. The Speedy Trial Act, 18 U.S.C. 3161, requires that the defendants be tried within seventy days of their initial appearance before a judicial officer of the court in which the charge is pending, although the Act does provide for certain excludable periods of time, including delay due to interlocutory appeal. 18 U.S.C. § 3161(h)(1)(E). Among the purposes of the Act is to assure that persons are brought to trial without delay which is not of their own making and to minimize the injury which may accrue to a person who has been incarcerated pending trial but subsequently not found guilty of a crime. A period of detention equivalent to that already incurred in this case, without considering future confinement during appeal, could be expected to have a significant effect on a person's ability to reintegrate into society following release. This is a matter to be considered by the court.
>
> The court believes that it is also appropriate to consider the potential terms of imprisonment to which the defendants may be sentenced if ultimately found guilty of the charges as compared to the prospective length of pretrial detention in determining whether the due process rights of a person may be violated. While the court is not prepared to calculate with any degree of precision the possible terms of imprisonment to which these defendants would be subject under the sentencing guidelines, if convicted, the court has determined that it is possible that a range of only 18-24 months may be applicable to defendant Shareef. Defendants Smith and Brown may be subject to terms of imprisonment of 37-46 months. All defendants may be subject to substantially longer periods of incarceration based upon facts not immediately available to the court. Notwithstanding, fundamental fairness requires that defendants, presumed innocent, not be required to serve a major portion of the sentence to which he or she would be subject prior to a determination of guilt.

*Id.* at 1484. In the instant case, the due process issues raised by the *Shareef* court are similarly present, and this Court should strongly consider these additional factors in rendering its decision on the government's motion.

\\

**II.  The Government Has Not Met Its Burden to Establish that Mr. Arias-Ordonez is a Flight Risk**

In its motion for detention, the government cites four reasons to attempt to meet its burden to show that Mr. Arias-Ordonez is a flight risk. Each of the rationales provided by the government should be rejected by this Court.

First, the government argues that Mr. Arias-Ordonez is "under an ICE detainer" and that "if this Court were to release him, he would be deported." Gov. Mot. at 3:3-4. Yet the fact that Mr. Arias-Ordonez has a pending ICE detainer does not deprive this Court of the ability to consider his release. *See United States v. Adomako*, 150 F.Supp.2d 1302, 1304-1307 (M.D. Fla. 2001). In essence, the government erroneously argues that Mr. Arias-Ordonez is a "flight" risk because he is at risk of deportation – a risk that should not be considered by this Court because it is of the government's own creation. The U.S. Attorney's Office is an executive branch function, as is the Office of Immigrations and Customs Enforcement. Both offices operate under the direction and command of the Attorney General, and the government can certainly terminate the "flight risk" posited by the deportation of Mr. Arias-Ordonez if it so chooses. If this Court releases Mr. Arias-Ordonez to ICE custody, the government is certainly not powerless to keep Mr. Arias-Ordonez here in the United States if it so desires. The government has made no showing whatsoever that Mr. Arias-Ordonez is not eligible for bail before the Immigration Court, and obviously has the power to order Mr. Arias-Ordonez' release on bail before that Court. Given its burden on the question of risk of flight, the factor of the ICE detainer that is ultimately in control of the government should not be considered by this Court.

Second, the government argues that "Mr. Arias-Ordonez clearly has no respect for international borders", and is accordingly a flight risk. Gov. Mot. at 3:12-13. This argument is counterintuitive. Mr. Arias-Ordonez' deportations, while not something to be proud of, obviously evidence a strong desire to *remain* in the United States - not to *leave* the United States. If anything, Mr. Arias-Ordonez' many deportations show a very strong will to live with his family in Sonoma County, rather than in Mexico. His history does not support the premise that he will flee to Mexico to avoid the possibility of an additional nine months in custody on a charge of 8 U.S.C. § 1326.

Third, the government cites, absent factual support, that an alleged firearms warrant exists in state court against Mr. Arias-Ordonez. Until the government produces actual evidence on this warrant, Mr. Arias-Ordonez asks this Court to disregard it; should the government produce it, Mr. Arias-Ordonez requests additional time to review the basis for the warrant. As the government admits, Mr. Arias-Ordonez was transferred to ICE custody in November, 2007 *after* alleged firearms charges were brought by the county of Sonoma in October, 2007. The government's statements suggest that Mr. Arias-Ordonez was turned over to ICE custody by the County of Sonoma, which makes it unlikely that said charges are still pending in Sonoma County. Jurisdictions attempting to convict defendants at trial ordinarily do not relinquish custody of defendants to immigration officials until the state court proceedings have concluded. Due to the dearth of information about said warrant, the Court should not consider it.

Finally, the government argues that Mr. Arias-Ordonez has failed to appear in state court, and that he does not have the type of strong family connections that would ensure his appearance

in Court. Mr. Arias-Ordonez submits that his failures to appear in Court were largely the result of his deportations to Mexico, which made his appearance in state court physically impossible. With respect to the government's latter contention, the record belies it. As this Court is already aware from the dispositive motion briefs, Mr. Arias-Ordonez is supported by a strong family network including his mother and father, Sofia and Ordonez and Delfino Arias, both legal permanent residents who scrapped together borrowed funds to pay for Mr. Arias-Ordonez' bail from ICE in 2003. In particular, Ms. Ordonez has attended each and every one of Mr. Arias-Ordonez' court proceedings, and has conveyed to defense counsel that she, her husband and her daughter Marta Arias, all of whom work legitimate jobs, will do whatever they can to assure this Court of Mr. Arias-Ordonez' continued presence in Court, including providing him with a supervised place to live in Sonoma County and signing on an unsecured bond. Moreover, the Court already has substantial evidence in its possession that Mr. Arias-Ordonez does seriously live up to his Court obligations – the documented fact that he voluntarily showed up to be deported in October, 2003 after receiving a certified notice to do so. *See* Falk Declaration to Opening Motion Authenticating Documents, Exhibit P (notes from ICE automated system, recorded in the ordinary course of business, documenting Mr. Arias-Ordonez' self-surrender).

Considering all of the aforementioned factors, the government has failed to meet its burden to prove that Mr. Arias-Ordonez would flee this jurisdiction if released.

\\

\\

DEFENDANT'S OPPOSITION TO GOV. MOT. FOR DETENTION
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                                8

## III. The Government Has Not Met Its Burden By Clear and Convincing Evidence to Prove that Mr. Arias-Ordonez is a Danger to the Community

The government's evidence on danger to the community is woefully inadequate, and does not come close to meeting the standard of clear and convincing. As a defendant charged in a 1326 case, Mr. Arias-Ordonez' record is comparatively light. He has only been convicted of one felony for receiving stolen property – and has no weapons or assault convictions. His other criminal convictions are misdemeanors - two of which involve driving with a suspended license. This relatively minor criminal history is reflected in the fact that Mr. Arias-Ordonez' low Guideline range upon conviction for the instant offense: 15-21 months.

The government's sole proffer in connection with danger to the community is "a potential federal firearms offense," about which it has provided no evidence whatsoever. Gov. Mot. at 4:12-13. Given the fact that the Court has no information about the circumstances of these charges, the extent to which Mr. Arias-Ordonez was allegedly involved, or whether these charges were dropped and for what reason, the government's proffer does not come close to meeting the clear and convincing standard. "Clear and convincing" means proof that a particular defendant actually poses a danger – not that a defendant in theory may pose a danger. *See United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991). Even assuming Mr. Arias-Ordonez is eligible for prosecution under 18 U.S.C. §922(g)(1) – a stretch on this record – such a charge is not a crime of violence categorically, as this Court cannot assume that any weapons possessed by Mr. Arias-Ordonez were used or possessed for violent activity. *See United States v. Bowers*, 432 F.3d 518, 534 (3rd Cir. 2005)("felon-in-possession does not imply a substantial risk of violence and there is

DEFENDANT'S OPPOSITION TO GOV. MOT. FOR DETENTION
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                    9

not a direct relationship between the offense and the risk of violence.")(citations omitted). The government accordingly has not met its burden.

**IV. Significant Due Process Concerns Mandate Mr. Arias-Ordonez' Release from Federal Custody**

As stated in the Introduction to this opposition brief, Mr. Arias-Ordonez only faces a Guideline range of 15-21 months if convicted of the offense with which he is initially charged. As stated by the Shareef court, "fundamental fairness requires that defendants, presumed innocent, not be required to serve a major portion of the sentence to which he or she would be subject prior to a determination of guilt." *Shareef*, 907 F.Supp at 1484. Given the 6 months that Mr. Arias-Ordonez has already spent in federal custody, any and all addition time he is detained pretrial has a punitive, rather than a regulatory effect. This is particularly true given the United States' power to set conditions of release, both before this Court and before the Immigration Court, if it truly desires to keep Mr. Arias-Ordonez in the United States for the purposes of prosecution in the unlikely event that this Court's order, set forth in detail over the course of three separate legal proceedings and three rounds of legal briefing and argument – is overturned by the Ninth Circuit. The United States can also persist in its appeal of the Court' s legal rulings on the applicability of *Morales-Izquierdo* and *Diez-Luevano* to the instant case even if Mr. Arias-Ordonez is deported. Given all the aforementioned factors and the remedies available to the United States that would ensure its appellate rights as well as Mr. Arias-Ordonez' due process rights, the government's motion for detention pending the notice of appeal that the government claims it will file in the future should be denied.

**CONCLUSION**

For all the aforementioned reasons, Mr. Arias-Ordonez requests this Court to deny the government's motion for detention pending decision to file a notice of appeal.

Dated: June 2, 2008

Respectfully submitted,
BARRY J. PORTMAN
Federal Public Defender

/S/

ELIZABETH M. FALK
Assistant Federal Public Defender

DEFENDANT'S OPPOSITION TO GOV. MOT. FOR DETENTION
U.S. v. ARIAS-ORDONEZ
No. CR 07-00738 MMC                                    11