1   JOSEPH P. RUSSONIELLO (CABN 44332)
    United States Attorney

2

3   BRIAN J. STRETCH (CABN 163973)
    Chief, Criminal Division

4   OWEN P. MARTIKAN (CABN 177104)
    Assistant United States Attorney

5

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102
        Telephone: (415) 436-7241

7       Facsimile: (415) 436-7234
        owen.martikan@usdoj.gov

8

    Attorneys for Plaintiff

9

10

11                      UNITED STATES DISTRICT COURT

                     NORTHERN DISTRICT OF CALIFORNIA
12
                        SAN FRANCISCO DIVISION
13

14  UNITED STATES OF AMERICA,          )    No. CR 07-0738 MMC
                                       )
15          Plaintiff,                 )    **THE UNITED STATES'**
                                       )    **SUPPLEMENTAL MEMORANDUM**
16      v.                             )    **SUPPORTING STAY OF ORDER OF**
                                       )    **RELEASE PENDING APPEAL**
17  NOE ARIAS-ORDONEZ,                 )
                                       )    Date:  June 18, 2008
18          Defendant.                 )    Time: 2:30
    _____)    Place: Courtroom 7, 19th Floor
19

20

21                            **INTRODUCTION**

22          On June 4, 2008, the Court allowed the parties until Friday, June 13, to present

23  supplemental material relating to the detention or release of defendant Noe Arias-

24  Ordonez pending the United States' appeal.  The parties agree that under 18 U.S.C. §

25  3143(c), this Court should consider the pre-trial detention factors set forth in 18 U.S.C. §

26  3142 in making its decision regarding detention.  The Court was particularly interested in

27  the Sentencing Guidelines range that would apply to Arias-Ordonez if he were convicted,

28

    USA'S SUPP. MEMO RE: DETENTION PENDING APPEAL
    CR 07-0738 MMC

so that his detention pending appeal would not implicate due process concerns by exceeding the length of any likely sentence that might be imposed on conviction.

This memorandum and the exhibits filed with it contain supplemental material bearing on Arias-Ordonez's detention, as well as court records showing the applicable Sentencing Guidelines range, were he convicted. As will be more fully described below, the applicable sentencing guidelines range based on Arias-Ordonez's criminal history and the applicable enhancements is 33-41 months, assuming a three-point reduction for acceptance of responsibility.

<b>ARGUMENT AND AUTHORITIES</b>

**I.    ARIAS-ORDONEZ WOULD POSE A SERIOUS DANGER TO THE COMMUNITY IF HE WERE RELEASED.**

In considering whether there are conditions of release that would reasonably ensure the safety of the community if a defendant were released, section 3142(g) provides that the Court shall consider the defendant's history and characteristics, past conduct, criminal history, history relating to drug and alcohol abuse, whether the current offense was committed while the defendant was on parole, probation, or other pre-trial release, and other factors that bear on the seriousness of the danger that the defendant poses to the community. 18 U.S.C. § 3142(g).

Evidence that the Sonoma County Sheriff's Department uncovered during the investigation of a gang-related murder in Sonoma County in October, 2007, and during a subsequent search warrant executed at Arias-Ordonez's home, shows that Arias-Ordonez has a connection to street gangs, to a murder, and to drugs and guns that militate strongly against his release pending appeal. His extensive criminal history over the last seven years (essentially since reaching majority), also shows that Arias-Ordonez is a habitual criminal who poses a serious threat to the community.

1

**A.    The Murder at Maxwell Park.**

2      On October 22, 2007, shortly before 7:00 in the evening, a masked man wearing

3  black clothing walked into a picnic area in Maxwell Farms Park, near Sonoma,

4  California, pulled a semi-automatic shotgun out of his sweatshirt and – in front of twenty

5  to thirty people – shot Luis Roberto-Miranda twice in the face, and then fired a third shot

6  into the crowd of onlookers.  Exhibit 1 at 1, 9.  Miranda was dead by the time sheriff's

7  deputies arrived on the scene.  *Id*. at 1.

8      Several witnesses identified the killer as a Sureno gang member named Juan

9  Manuel Calderon, who also goes by the street name of "Civic."  *Id*. at 10-12.  Calderon

10  gave a statement admitting to the shooting, and explaining how he had pulled his t-shirt

11  over his face, stepped into the picnic area with the shotgun at his hip, and began firing at

12  the crowd.  Exhibit 2 at 16.

13      Calderon also admitted that less than two hours before the killing, he and another

14  Sureno gang member, Juan Perez (also known by the street name "Puppet") had obtained

15  the shotgun used in the killing from Noe Arias-Ordonez, who Calderon refers to as

16  "Noel."  Exhibit 2 at 11-12.  Before picking up the shotgun, Calderon, Perez, and two

17  other individuals – Argelia Chavez and Javier Ceja – were driving around together,

18  smoking marijuana, when they spotted some people they thought were rival Norteno gang

19  members.  *Id*. at 10-11.  Calderon then heard Perez call Arias-Ordonez on his cell-phone

20  and say "Hey it's me, we need the gun cause we're going" (in Calderon's words) "to do a

21  drug deal or something like that."  *Id*. at 11.  They arrived at Arias-Ordonez's house,

22  parked in the driveway, and then Calderon saw Perez and Arias-Ordonez standing next to

23  a car with an open trunk.  *Id*. at 12.  Perez then returned with a semi-automatic shotgun,

24  which he put in the trunk of their car.  *Id*.  Ceja also gave a statement verifying the

25  address from which they picked up the shotgun, which was Arias-Ordonez's address.

26  Exhibit 1 at 28.

27      Calderon stated that he and Perez had also visited Arias-Ordonez earlier that day,

28

1  and that Arias-Ordonez had provided them with crystal methamphetamine, which they

2  had smoked.  Exhibit 2 at 10.  Calderon described Perez as "kinda at the top" of the

3  Sureno gang, and noted that he and Arias-Ordonez were friends.  *Id*. at 10, 15.

4  **B.     Guns and Drugs at Arias-Ordonez's House.**

5  Based on the information that Calderon had provided, Sonoma County sheriff's

6  deputies obtained a search warrant for Arias-Ordonez's house.  Exhibit 3 at 2.  They

7  executed this warrant on October 24, 2007, two days after the murder.  *Id*.  Arias-Ordonez

8  was at home with his mother when the deputies searched his home.  Exhibit 3 at 7.

9  In a bedroom that deputies identified as Arias-Ordonez's because it contained

10  letters and bills addressed to him, as well as two Sonoma County Jail ID cards containing

11  Arias-Ordonez's name and photograph.  Exhibit 3 at 3.  The deputies found three digital

12  scales hidden under drawers in Arias-Ordonez's dresser.  *Id*.  In his bedroom closet, the

13  deputies found a camouflage-pattern suitcase containing the following drugs:

14        1.     One bottle containing approximately 110 ml of liquid morphine;

15        2.     84 pills later identified as "Dolophine," in a bottle labeled
16               Hydrocodone;

17        3.     30 pills labeled as Gabapentin;

      4.     28 pills labeled as Prednisone;
18

19        5.     45 pills later identified as Dexamethasone;

20  *Id*.  At least two of these drugs, morphine and hydrocodone, are listed controlled

21  substances.  None of these drugs were prescribed to Arias-Ordonez.  *Id*.

22  The deputies also found a live round of .38 caliber ammunition in Arias-Ordonez's

23  closet.  *Id*. at 4.

24  In a bag in the garage of Arias-Ordonez's house, the deputies found a .38 caliber

25  Smith & Wesson revolver, and 9mm Makarov semi-automatic pistol.  *Id*. at 3.

26  Finally, in Arias-Ordonez's bedroom, the deputies found several photographs of

27  individuals throwing gang signs consistent with the Sureno street gang.  *Id*.  One of the

28

USA'S SUPP. MEMO RE: DETENTION PENDING APPEAL
CR 07-0738 MMC

1    individuals is also posing with a handgun.  Exhibit 5.

2        The deputies arrested Arias-Ordonez for violating California Penal Code sections

3    12021(a) Felon in Possession of a Firearm and 12316(b) Felon in Possession of

4    Ammunition, and California Health & Safety Code section 11350 Possession of

5    Narcotics.  Exhibit 3 at 4.

6        Those charges are still pending in the Sonoma County Superior Court, and a state

7    warrant is outstanding for Arias-Ordonez's arrest.  Exhibit 6.

8        **C.    Arias-Ordonez's Extensive Criminal History.**

9        Arias-Ordonez has had 23 criminal matters in the Sonoma County Superior Court

10   over the seven years preceding his arrest in this case, resulting in nine convictions and

11   two probation violations, not counting the pending charges described above.  Exhibit 4.

12   The next portion of this brief (addressing Arias-Ordonez's potential guidelines range) will

13   discuss these convictions in detail, but they include resisting arrest, trespassing, receipt of

14   stolen property, DUI, driving with a license under suspension for DUI, drug possession,

15   driving on a suspended license (twice), speeding, and driving without a license.  Arias-

16   Ordonez was also convicted of two probation violations, one for failure to report to jail,

17   and one apparently related to a burglary offense.  Exhibit 4 at 2, 18, 39, 52, 55, 60, 65, 70,

18   72.

19       While none of these crimes shock the conscience by themselves, together they

20   show a regular pattern of illegal activity throughout Arias-Ordonez's adult life, with the

21   severity of the conduct escalating until his final arrest on firearms and drug charges.

22       This Court has no reason to suspect that if Arias-Ordonez were released, he would

23   not revert to the constant stream of criminal behavior that occupied him until his arrest

24   last October.

1    **II.    ARIAS-ORDONEZ POSES A SERIOUS RISK OF FLIGHT.**

2    As this Court is aware, Arias-Ordonez concedes that he is a deportable alien, and

3    that he is subject to an ICE detainer.  If he were released into ICE custody, he would be

4    subject to deportation proceedings as a deportable alien under 8 U.S.C. § 1227(a).  Once

5    Arias-Ordonez is ordered removed, ICE must deport him within 90 days.  8 U.S.C. §

6    1231(a)(1)(A).

7    Because Arias-Ordonez is subject to an active warrant in Sonoma County, ICE

8    would first transfer him to that county for prosecution, subject to an ICE detainer.  If

9    Arias-Ordonez were to bail out of Sonoma County's custody, he would simply return to

10    ICE custody under the ICE detainer.  In either event, Arias-Ordonez would be subject to

11    deportation by ICE, once the deportation proceedings had concluded.

12    In addition to his immigration issues, the Court has other grounds to doubt that

13    Arias-Ordonez will appear as ordered if he is released.  The Sonoma County Superior

14    Court has issued bench warrants based on Arias-Ordonez's non-appearance <u>13 times</u>

15    between 2000 and 2006.  The Court issued bench warrants due to his non-appearance on

16    the following dates, all of which are confirmed in the court minutes: April 19, 2006,

17    March 1, 2006, January 18, 2006, December 19, 2005, November 2, 2005, February 16,

18    2005, September 3, 2003, October 17, 2002, September 24, 2002, April 29, 2002,

19    September 17, 2001, August 1, 2002, and April, 13, 2000.  Exhibit 4.  These failures to

20    appear do not include the failure to report to jail, that resulted in one of Arias-Ordonez's

21    probation revocations.

22    The Court should conclude that based on this evidence, no combination of

23    conditions short of detention will ensure that Arias-Ordonez appears in Court when he is

24    ordered to do so.

25

26

27

28

### III. ARIAS-ORDONEZ'S GUIDELINES RANGE IS 33-41 MONTHS.

At the last detention hearing, the Court ordered the parties to clarify what Arias-Ordonez's sentencing guidelines range would be if he were convicted, so that it could determine whether his due process rights might be implicated by an appeal that outlasted his sentence. The United States has calculated Arias-Ordonez's guidelines range as 33-41 months in the event he is convicted, as set forth below.

#### A. The Applicable Offense Level.

The base offense level for a conviction under 8 U.S.C. § 1326 is level 8, pursuant to Sentencing Guidelines §2L1.2(a). This offense level is subject to an 8-level enhancement if the defendant reentered after deportation following a conviction for an aggravated felony, or a 4-level enhancement if the defendant reentered after deportation following a conviction for a felony. U.S.S.G. §2L1.2(b)(1)(C) & (D).

The main issue relevant in calculating Arias-Ordonez's offense level is therefore whether his June 5, 2006 conviction for receipt of stolen property under California Penal Code § 496(a) is a felony or an aggravated felony.[1] Under 8 U.S.C. § 1101(a)(43)(G), receipt of stolen property is an aggravated felony if the term of imprisonment is at least one year. According to the statute and Ninth Circuit precedent, the reference to imprisonment in 8 U.S.C. § 1101(43)(G) includes a suspended sentence:

> Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment in whole or in part.

8 U.S.C. § 1101(a)(48)(B). See also *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1268-70 (9th Cir. 2001). The Ninth Circuit has also held that "imprisonment" for

---

[1] During the June 4 detention hearing, the Court suggested that this conviction might in fact be a misdemeanor, because the offense is a wobbler and Arias-Ordonez was sentenced to jail. However, the charging documents (supplied by Arias Ordonez at his Exhibit A), the waiver of rights, and the abstract of judgment (also at Exhibit A), show that he was convicted of a felony, not a misdemeanor. Arias-Ordonez does not appear to dispute this point.

USA'S SUPP. MEMO RE: DETENTION PENDING APPEAL
CR 07-0738 MMC

purposes of this definition, includes jail time imposed after a probation revocation. *United States v. Jimenez*, 258 F.3d 1120, 1125-26 (9th Cir. 2001).

In this case, Arias-Ordonez was initially sentenced to a six-month suspended sentence on June 5, 2006, with 139 days credit for time served. Exhibit 4 at 24. On August 18, 2006, Arias-Ordonez was in custody again on a probation violation, and remained in custody until October 2, 2006, when he was sentenced to another six months in prison for the probation violation, <u>in addition to any previous time served</u>. *Id*. at 25. Because Arias-Ordonez had already served six months before being sentenced for the probation violation (139 days + 45 days from August 18 to October 2), the additional six-month sentence for the probation violation resulted in a one-year term of imprisonment. Thus, the term of imprisonment for this offense was at least one year, and Arias-Ordonez is subject to the 8-level enhancement for an aggravated felony.

The applicable offense level for Arias-Ordonez is 16, subject to a possible 3-point reduction for acceptance of responsibility under U.S.S.G. §3E1.1.

**B.    The Applicable Criminal History Category.**

The United States has calculated Arias-Ordonez's applicable Criminal History Category as VI, based on the following criminal convictions and history:

| Court No. | Offense | Sentence | Points |
|-----------|---------|----------|--------|
| TCR 359967 | VC 14601.1(a) | 22 days jail* | 1    (§4A1.1(c)) |
| MCR 391520 | HS 11377(a) | 6 months jail | 2    (§4A1.1(b)) |
| TCR 408617 | VC 23152(b) | 6 months jail | 2    (§4A1.1(b)) |
| SCR 460738 | VC 14601.2(a) | 6 months jail | 2    (§4A1.1(b)) |
| SCR 479120 | PC 496(a) | 1 year jail* | 2    (§4A1.1(b)) |
| SCR 494163 | PC 148(a)(1) | 30 days jail | 1    (§4A1.1(c)) |

* Includes time imposed on revocation of probation, per U.S.S.G. §4A1.2(k)(1)

Arias-Ordonez is subject to an additional two-point enhancement to his criminal history category because he committed this offense while on probation, and another one-point enhancement because he committed this offense less than two years after his release

1   on a previous two-point sentence.  U.S.S.G. §4A1.1(d) & (e).

2        Adding these points together yields 13 criminal history points, resulting in a

3   Criminal History Category of VI.

4        The applicable sentencing guidelines range for a defendant whose Criminal

5   History Category is VI, and whose offense level is 13 (assuming a 3-point reduction for

6   acceptance of responsibility) is 33-41 months.  Because Arias-Ordonez faces a possible

7   sentence that is much longer than the time he might serve during the pendency of an

8   appeal, the Court should not be concerned that his incarceration raises issues of due

9   process.

10                               **CONCLUSION**

11       Arias-Ordonez is a habitual criminal who has shown little regard for his obligation

12  to appear in Court.  He recently supplied drugs and a semi-automatic shotgun to a gang

13  member who immediately used the gun to kill someone.  His home contains guns, live

14  ammunition, narcotics, and drug dealing paraphernalia.  He is a deportable alien who has

15  returned to this country after being removed nine times, and his family ties, whatever they

16  may be, have not put much of a brake in his criminal tendencies so far.

17       The Court should order defendant Noe Arias-Ordonez detained pending the United

18  States' appeal in this case.

19  DATED: June 13, 2008                    Respectfully Submitted,

20                                          JOSEPH P. RUSSONIELLO
                                            United States Attorney
21

22
                                            _____
23                                              /s/ Owen Martikan
                                            OWEN P. MARTIKAN
24                                          Assistant United States Attorney

25

26

27

28

USA'S SUPP. MEMO RE: DETENTION PENDING APPEAL
CR 07-0738 MMC
                                9